UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| IRON MOUNTAIN INCORPORATED; IRON MOUNTAIN INFORMATION MANAGEMENT, INC.; C. RICHARD REESE; JOHN F. KENNY, JR.; GARRY B. WATZKE; LARRY L. VARN; and CHARLES G. MOORE, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| THOMAS CARR, | ) ) | |
| Defendant | ) ) | |
| And | ) ) | Civil Action No. 05 10890 RCL |
| THOMAS CARR, | ) ) | |
| Counter-Plaintiff | ) ) | |
| v. | ) ) | |
| IRON MOUNTAIN INCORPORATED; IRON MOUNTAIN INFORMATION MANAGEMENT, INC.; C. RICHARD REESE; JOHN F. KENNY, JR.; GARRY B. WATZKE; LARRY L. VARN; and CHARLES G. MOORE, | ) ) ) ) ) ) ) | |
| Counter-Defendants. | ) ) | |

**ANSWER AND AFFIRMATIVE DEFENSES
TO DEFENDANTS' COUNTERCLAIMS**

Plaintiffs and counterclaim-defendants Iron Mountain Incorporated ("Iron Mountain"),

Iron Mountain Information Management, Inc. ("IMIM"), C. Richard Reese ("Reese"), Garry B.

Watzke ("Watzke"), and Larry L. Varn ("Varn" and collectively with the foregoing persons and

{B0409461; 3}

- 2 -

entities, the "Plaintiffs"), by their attorneys, Sullivan & Worcester LLP, hereby answer the Amended Counterclaims of Defendant Thomas Carr ("Carr"), dated May 20, 2005 (the "Counterclaims"), as follows:

"Facts Common to All Counts"

1. Deny the allegations in paragraph 1, except admit that on February 1, 2000, Iron Mountain Incorporated, formerly a Delaware corporation ("Old Iron Mountain"), was merged with and into Pierce Leahy Corp., a Pennsylvania corporation ("PLC") (the "Merger") and that, immediately thereafter, PLC changed its name to Iron Mountain Incorporated.

2. Deny the allegations in paragraph 2, except admit that (a) J. Peter Pierce ("Pierce") was elected to the Board of Directors of Iron Mountain in connection with and as a result of the Merger, and (b) Pierce was appointed as President of Iron Mountain and, also, as President, Chief Operating Officer and the most senior officer of Iron Mountain's paper records management operations operating in the Americas, *i.e.*, Iron Mountain Records Management, Inc. (now known as IMIM).

3. Deny the allegations in paragraph 3, except admit that (a) on or about June 30, 2000, Pierce's employment with Iron Mountain and IMIM was terminated without cause, and (b) Pierce remained a member of Iron Mountain's Board of Directors until his resignation on December 23, 2002.

4. Deny the allegations in paragraph 4, except admit that in connection with and as a condition to the Merger, Pierce and PLC (now Iron Mountain) entered into a written Employment Agreement, which contained certain non-competition and other covenants and the terms of which speaks for itself.

5. Upon information and belief, admitted.

{B0409461; 3}

6. Deny the allegations in paragraph 6, except admit (a) upon information and belief, that commencing sometime in the middle of 2000 Pierce directly and indirectly, including though the use of Logisteq, managed, engaged in, participated in, and provide advice to, Sequedex LLC ("Sequedex"), a former IMIM competitor, and (b) that evidence exists to show that Logisteq expended or incurred substantial costs in aid of Sequedex.

7. Deny the allegations in paragraph 7, except admit that (a) on April 28, 2002, Iron Mountain filed a complaint against Pierce in the New Jersey Superior Court, Middlesex County, Chancery Division, alleging, *inter alia*, that Pierce had violated his written covenants with Iron Mountain and his fiduciary obligations to Iron Mountain and its stockholders; (b) the action was stayed pending completion of a pending arbitration proceeding (the "Pierce Arbitration"); and (c) the arbitrator ruled that Iron Mountain did not introduce sufficient evidence that Pierce had violated his legal obligations to Iron Mountain and its stockholders.

8. Admitted.

9. Deny the allegations in paragraph 9, except admit that Transportation Concepts of NJ, Inc. or an affiliated entity ("TC") became a tenant of Iron Mountain at IMIM's Freehold, New Jersey, records center and that neither it nor Logisteq informed, and for a time secreted from, Iron Mountain that Logisteq had succeeded to the rights and obligations of TC.

10. Deny the allegations in paragraph 10 except admit that, on or about February 20, 2001, Iron Mountain, under the signature of Watzke, its General Counsel, sent a letter to Carr and TC advising that Iron Mountain was exercising its option under the lease to terminate TC's tenancy effective March 31, 2001, which letter speaks for itself.

11. Deny the allegations in paragraph 11, except admit that Carr sent a letter to Watzke on or about February 28, 2001, which letter speaks for itself.

- 4 -

12. Deny the allegations in paragraph 12, except admit that Iron Mountain, principally through Mr. Watzke, engaged in certain communications with Carr during the spring and summer of 2001 regarding TC's tenancy at IMIM's Freehold, New Jersey, records center.

13. Deny the allegations in paragraph 13.

14. Deny the allegations in paragraph 14.

15. Deny the allegations in paragraph 15.

16. Deny the allegations in paragraph 16, except admit (a) upon information and belief, that James Neebling ("Neebling") is the President of Systrans Freight Systems, Inc. ("Systrans"), (b) that Arthur Peslak ("Peslak") is or was legal counsel to Carr in respect to certain of Carr's non-criminal matters, (c) that from time to time, certain of the Plaintiffs met with or had telephone conversations with Carr, Neebling, and/or Peslak and that certain of these meetings or telephone conversations occurred in or about March and April 2002 and in or about July and September 2003.

17. Deny the allegations in paragraph 17 and respond to the subparagraphs thereof as follows:

    17.1. Deny the allegations in paragraph 17.1, except admit that, in or about April, 2002, Iron Mountain, at Carr's request, made an advance to Carr's counsel in the amount of $50,000 to be applied towards Mr. Carr's legal expenses in connection with litigation that Carr had initiated against Pierce in order to attempt to ensure that there was a full airing of information and a complete evidentiary presentation of facts that were also relevant to the Pierce Arbitration.

    17.2. Deny the allegations in paragraph 17.2.

{B0409461; 3}

17.3. Deny the allegations in paragraph 17.3.

17.4. Deny the allegations in paragraph 17.4.

17.5. Deny the allegations in paragraph 17.5.

18. Deny the allegations in paragraph 18, except admit that Watzke and Kenny attended a luncheon meeting on or about March 13, 2002, at the Casa Dante restaurant in Jersey City, New Jersey, and that Carr, Neebling, Peslak and others were in attendance.

19. Deny the allegations in paragraph 19, except admit that Carr and Neebling met with several Iron Mountain executives, including Kenny, Reese and Watzke, on or about March 26, 2002, at IRM's corporate headquarters in Boston, Massachusetts.

20. Deny the allegations in paragraph 20.

21. Deny the allegations in paragraph 21, except admit that (a) on April 9, 2002, Reese, Kenny and Varn attended a dinner meeting with Carr, Neebling and Peslak at Giambelli's, a restaurant on East 50th Street in New York, New York, (b) Reese, on behalf of Iron Mountain, undertook, in response to a request from Carr, to make an advance of $50,000 to Peslak to help defray Carr's legal expenses in his litigation with Pierce so as to ensure a full airing and evidentiary presentation of the issues in that case that were also common to issues in the Pierce Arbitration, and (c) Sullivan & Worcester LLP, upon Varn's instruction, caused the advance to be made to Peslak's trust account via wire shortly thereafter.

22. Deny the allegations in paragraph 22, except admit that during July 2003 Watzke telephoned Peslak and that the subject of Peslak's invoices to Carr for representation of Carr in his litigation with Pierce was addressed during that conversation.

23. Deny the allegations in paragraph 23, except admit that Varn and Moore had a social dinner with Carr and Neebling at Gallagher's Restaurant on West 52nd Street in New York City in or about September, 2003.

24. Deny the allegations in paragraph 24 and specifically deny that any of the Plaintiffs made or undertook any unperformed promises or contractual obligations to Carr.

25. Deny the allegations in paragraph 25.

26. Deny the allegations in paragraph 26, except admit that certain of the Plaintiffs had various communications with Carr, Peslak and Neebling during the period from the fall of 2003 until the early months of 2005.

27. Deny the allegations in paragraph 27, except admit that Varn and Watzke attended a meeting with Carr's lead counsel in this action, in Boston, on February 23, 2005, principally to hear Carr's counsel's explanation as to how, in his view, Carr might be of assistance to Iron Mountain in its ongoing disputes with Pierce and Carr's plans to initiate additional litigation against Pierce related to the demise of Logisteq.

28. Deny the allegations in paragraph 28, except admit that Watzke and Varn received a letter, dated February 25, 2005, from Carr's counsel in this action and that the letter speaks for itself.

29. Deny the allegations in paragraph 29, except admit that Watzke and Varn received a letter, dated April 7, 2005, from Carr's counsel in this action and that the letter speaks for itself.

30. Deny the allegations in paragraph 30, except admit that Watzke spoke by telephone with counsel to Carr on or about April 19, 2005, and advised him that Varn was out of the country until at least April 25, 2005.

31. Deny the allegations in paragraph 31, except admit that Varn sent an email to counsel to Carr on or about April 27, 2005, advising him in material part that:

> I am leaving the office this morning to resume a trial in Barnstable, which will consume the rest of this week. We won't finish the case this week but at this point I don't know if there is going to be a hiatus or whether we'll resume right away after the weekend. I will make it a priority to review matters with Iron Mountain as soon as I am off that trial.

32. Deny the allegations in paragraph 32, except admit that Varn and Watzke received a letter, dated May 1, 2005, from counsel to Carr, and that such letter speaks for itself.

33. Deny the allegations in paragraph 33, except admit that Plaintiffs commenced this action by filing a complaint on May 2, 2005.

"Count I
(Breach of Contract)"

34. In response to paragraph 34 of the Counterclaims, the Plaintiffs incorporate as if set forth in full herein their responses to paragraphs 1 through and including 33 thereof.

35. Deny the allegations in paragraph 35.

36. Deny the allegations in paragraph 36 and specifically deny that any oral contract exists or ever existed between Carr on the one hand, and any of the Plaintiffs on the other.

37. Deny the allegations in paragraph 37 and specifically deny that any oral contract exists or ever existed between Carr on the one hand, and Iron Mountain or any of the other Plaintiffs on the other.

38. Deny the allegations in paragraph 38.

"Count II
(Fraudulent Misrepresentation)"

39. In response to paragraph 39 of the Counterclaims, the Plaintiffs incorporate as if set forth in full herein their responses to paragraphs 1 through and including 38 thereof.

{B0409461; 3}

40. Deny the allegations in paragraph 40.

41. Deny the allegations in paragraph 41.

42. Deny the allegations in paragraph 42.

43. Deny the allegations in paragraph 43.

44. Deny the allegations in paragraph 44.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

The Counterclaims fail in various ways to state a claim upon which relief may be granted.

### Second Affirmative Defense

The Counterclaims are barred by the applicable Statute of Limitations.

### Third Affirmative Defense

The Counterclaims are barred by the failure of consideration.

### Fourth Affirmative Defense

The Plaintiffs have satisfied any and all obligations owed to Carr.

### Fifth Affirmative Defense

Certain of the claims related to the alleged breach of contract are barred by the existence of a subsequent written agreement.

### Sixth Affirmative Defense

The Counterclaims are barred because, if there are any agreements, there was a failure of consideration.

### Seventh Affirmative Defense

Carr has waived, in whole or in part, certain of his claims against Iron Mountain.

### Eighth Affirmative Defense

Carr is estopped by his statements and conduct or that of others for whose conduct he is responsible from pursuing any of the claims set forth in the Counterclaims.

### Ninth Affirmative Defense

Count II of the Counterclaims is barred by Carr's material misrepresentations of fact to Iron Mountain and the other Plaintiffs.

### Tenth Affirmative Defense

Carr has failed to mitigate his alleged damages.

### Eleventh Affirmative Defense

Count II of the Counterclaims is barred by Carr's failure to plead fraud with particularity.

### Twelfth Affirmative Defense

Count II of the Counterclaims is barred by the promissory nature of the alleged representations.

### Prayers for Relief

**WHEREFORE**, the Plaintiffs requests that this Court:

1.  Dismiss the Counterclaims in their entirety, with prejudice to the rebringing thereof;

2.  Award Plaintiffs their costs and expenses of action, including reasonable attorneys' fees and disbursements; and

3.  Award to Plaintiffs such relief against Carr as is just.

**IRON MOUNTAIN INCORPORATED; IRON MOUNTAIN INFORMATION MANAGEMENT, INC.; C. RICHARD REESE; JOHN F. KENNY, JR.; GARRY B. WATZKE; LARRY L. VARN; and CHARLES G. MOORE**

By their attorneys,

May 31, 2005

/s/     Samual A. Miller
Ira K. Gross (BBO #212720)
*igross@sandw.com*
Samual A. Miller (BBO #648568)
*smiller@sandw.com*
SULLIVAN & WORCESTER LLP
One Post Office Square
Boston, Massachusetts  02109
(617) 338-2800

- 10 -

{B0409461; 3}

## CERTIFICATE OF SERVICE

      I hereby certify that I have on this 31st day of May, 2005, served on counsel listed below, by first class mail (unless counsel receives electronic service by the Court), a true and correct copy of the foregoing **Answer and Affirmative Defenses**.

Kathleen C. Stone
Looney, Cohen, Reagan & Aisenberg LLP
109 State Street
2nd Floor
Boston, Massachusetts 02109


Read K. McCaffrey, Esq.
Patton Boggs LLP
2550 M Street, NW
Washington, DC  20037

                                                /s/ Samual A. Miller
                                                Samual A. Miller