UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| IRON MOUNTAIN INCORPORATED; IRON MOUNTAIN INFORMATION MANAGEMENT, INC.; C. RICHARD REESE; JOHN F. KENNY, JR.; GARRY B. WATZKE; LARRY L. VARN; and CHARLES G. MOORE, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| THOMAS CARR, | ) ) | Civil Action No. 05 10890 RCL |
| Defendants. | ) ) | |
| and | ) ) | |
| THOMAS CARR, | ) ) | |
| Counterclaim-Plaintiff, | ) ) | |
| v. | ) ) | |
| IRON MOUNTAIN INCORPORATED; IRON MOUNTAIN INFORMATION MANAGEMENT, INC.; C. RICHARD REESE; JOHN F. KENNY, JR.; GARRY B. WATZKE; LARRY L. VARN; and CHARLES G. MOORE, | ) ) ) ) ) ) ) ) | |
| Counterclaim-Defendants. | ) ) | |

**COUNTERCLAIM-DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS COUNTERCLAIM-PLAINTIFF'S
FRAUDULENT MISREPRESENTATION CLAIM**

Counterclaim-Defendants Iron Mountain Incorporated ("Iron Mountain"), Iron Mountain

Information Management, Inc. ("IMIM"), C. Richard Reese ("Reese"), John F. Kenny, Jr.

("Kenny"), Garry B. Watzke ("Watzke"), Larry L. Varn ("Varn") and Charles G. Moore

{B0410929; 2}

("Moore" and collectively with the foregoing persons and entities, the "Plaintiffs") have moved under Fed. R. Civ. P. 12(b)(6) to dismiss the fraudulent misrepresentation claim (Count II) contained in the First Amended Counterclaim (the "Counterclaim" or "Ctrclms.") of defendant and Counterclaim-Plaintiff Thomas Carr ("Carr") for failure to state a claim upon which relief can be granted. This memorandum is respectfully submitted in support of that motion.

Stripped to the essentials, all of the alleged "representations" set forth in the Counterclaim are promissory and forward-looking in nature. As a matter of law, such representations do not support a fraudulent misrepresentation claim. Additionally, Carr has not even alleged that he actually relied on any alleged representations, let alone reasonably so; nor has he alleged specific facts, as Fed. R. Civ. P. 9(b) plainly requires, indicating an intent to deceive. Accordingly, the Counterclaim falls short of setting forth a legally-cognizable claim for fraudulent misrepresentation, and Count II should be dismissed against all of the Counterclaim-Defendants.

**Background**

This story has its genesis in a corporate transaction that occurred over five years ago. In February 2000, Iron Mountain, the world's leader in outsourced records and information management services (RIMS), acquired Pierce Leahy Corp ("PLC"), also a leader in the RIMS industry. See Ctrclm., ¶ 1. The transaction was structured as a reverse merger (the "Merger") in which Iron Mountain was merged with and into PLC and, immediately thereafter, PLC changed its name to Iron Mountain. See id. Following the Merger, J. Peter Pierce ("Pierce"), the head of PLC prior to the Merger, was elected to the Board of Directors of Iron Mountain. See id. Pierce was also appointed President and Chief Operating Officer of Iron Mountain Records Management, Inc. (now known as IMIM). See id. In connection with and as a condition to the

Merger, Pierce and PLC (now Iron Mountain) entered into a written employment agreement, which contained certain covenants including a covenant not to directly or indirectly compete against Iron Mountain.  See Ctrclm., ¶ 4.

Pierce remained employed by Iron Mountain until June 30, 2000, at which time his employment was terminated without cause.  See Ctrclm., ¶ 3.  However, Pierce remained a member of Iron Mountain's Board of Directors until his resignation on December 23, 2002.  See id.

In early 2001, Carr and Pierce entered into an agreement to form a transportation company known as Logisteq, LLC ("Logisteq"), based in Freehold, New Jersey, that succeeded to former businesses owned and operated by Carr.  At the conclusion of the transaction, Pioneer Capital, L.P., which Pierce controls, and Transportation Concepts of NJ, Inc., which Carr controlled, owned 51% and 49%, respectively, of Logisteq.  See Ctrclm., ¶ 5.[1]  Carr alleges that Pierce also formed a company known as Sequedex LLC ("Sequedex"), an IMIM competitor in the RIMS industry, to compete surreptitiously with Iron Mountain and that "in so doing 'posted' significant costs including payroll, etc. expended to operate Sequedex on the books of Logisteq."  See Ctrclm., ¶ 6.

In late March, 2002, Iron Mountain and IMIM filed a complaint against Pierce (the "Pierce Litigation") alleging, *inter alia*, that Pierce, by aiding Sequedex, had violated his written covenants with Iron Mountain and his fiduciary obligations to Iron Mountain and its stockholders.  See Ctrclm., ¶ 7.  The Pierce Litigation was stayed pending completion of a then pending arbitration proceeding (the "Pierce Arbitration").  See id.

---

[1] One of the consequences of the Merger was that Logisteq, whose predecessor in interest (a Carr-controlled entity) had been a tenant of PLC, became a tenant of Iron Mountain at its Freehold, New Jersey, facility.

-3-

Carr often claimed (as he does in the Counterclaim) to have evidence of Pierce's contractual and fiduciary breaches and, over a course of several months, regaled Iron Mountain executives and other representatives, including its principal outside counsel in connection with the Pierce Litigation and Pierce Arbitration, with stories regarding this supposed evidence. See Ctrclm., ¶¶ 6, 17.

Carr now alleges, in the Counterclaim, that certain Iron Mountain executives or agents made promises of future conduct to Carr and that these promises were not performed. See Ctrclm., ¶¶ 17 – 23. Carr does not allege that these promises (which appear to involve a value of tens of millions of dollars), apparently made on behalf of Iron Mountain (NYSE: IRM), were ever evidenced by a written agreement or confirmed by a single item of correspondence. For example, the Plaintiffs allegedly made the following oral promises, ostensibly to secure Carr's assistance in connection with the then-forthcoming Pierce Arbitration:

- Iron Mountain would supply a transportation company owned by Carr's friend, James Neebling ("Neebling") with $50 million$^2$ per year in courier business (see Ctrclm., ¶¶ 17.4, 19);

- Iron Mountain would provide $5 million for Carr to buy a transportation company in which he owned a 49% share, *i.e.*, Logisteq (see Ctrclm., ¶¶ 17.2, 19);

- Iron Mountain would pay Carr $2 million to allow him to satisfy obligations (or get more business, depending on which paragraph Carr wishes to follow) (see Ctrclm., ¶¶ 17.5, 23);

---

$^2$ Paragraph 17.4 alleges that Iron Mountain promised "$50 million per year in courier business" and paragraph 19 states that Iron Mountain promised "$25 million in courier business."

- Iron Mountain would fund Carr's lawsuit against Pierce with the amount totaling over $200,000 (see Ctrclm., ¶¶ 17.1, 18); and

- Iron Mountain would hire Carr (see Ctrclm., ¶¶ 17.3, 20).

Carr alleges, albeit only in a conclusory manner, that (all of) the Plaintiffs had no intention of fulfilling these wholly undocumented promises. See Ctrclm., ¶¶ 24, 42. Specifically, Carr alleges, in paragraphs 24 and 42 of the Counterclaim, that

> [a]ll of the aforementioned contractual obligations and promises which the Counter-Defendants presented to Carr were made with absolutely no intention of fulfilling or otherwise satisfying said obligations.

and

> At the time the representations set forth in the foregoing Paragraph were made to Carr, Iron Mountain and the other Counter-Defendants knew that they were false, knew that they had no intention of fulfilling said obligations and/or promises and knew that Carr would rely on their representations to his detriment.

Ctrclm., ¶¶ 24, 42. These allegations are made with regard to the Plaintiffs as a whole and do not specify the purported knowledge of any particular entity or individual. See id.

On several occasions, Carr, in person and in writing, as well as through his counsel, accused Iron Mountain and certain of the individual plaintiffs of making and not satisfying various promises. See Ctrclm., ¶¶ 25-32. Faced with Carr's unfounded allegations, the Plaintiffs initiated this action for a binding declaration and judgment that none of them has any legal obligations to Carr.

### Argument

A complaint may, and should, be dismissed for failure to state a claim if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The allegations in the

Counterclaim are woefully insufficient, as a matter of law, to sustain a claim for fraudulent misrepresentation. Additionally, certain elements are not pleaded with the level of particularity required by Fed. R. Civ. P. 9(b). There is thus no reason for either the Court or any of the parties to waste any additional time or resources on Carr's feeble attempt to state a claim for fraudulent misrepresentation, and that claim should be dismissed.

### A. Carr Has Not Pleaded the Required Elements for a Fraudulent Misrepresentation Claim

Fraudulent misrepresentation claims are the same as fraud and deceit claims and require the same elements and have the same pleading standards. See, e.g., Blacksmith Invs., LLC v. Cives Steel Co., No. 04-10369-NG, 2005 U.S. Dist. LEXIS 7916, at *5 (D. Mass Jan. 27, 2005). For a claim of fraudulent misrepresentation to have any vitality, therefore, there must be allegations of : (1) a false representation of a material fact, (2) made with the knowledge of its falsity, (3) for the purpose of inducing action thereon, (4) with resulting actual reliance, and (5) the claimant's detriment. See Livingstone Flomeh-Mawutor v. Banknorth, N.A., 350 F. Supp. 2d 314, 319 (D. Mass. 2004) (dismissing fraud action because the representations were either not false or did not induce detrimental reliance). The allegations in Carr's Counterclaim do not even come close to satisfying two of these required elements. First, all of the representations alleged by Carr are promissory and forward-looking in character, and thus cannot support a fraud claim. Additionally, the Counterclaim does not contain any allegations, let alone one grounded in fact, that Carr actually relied, at all or in any way, on any representations made by Iron Mountain or any of its representatives. Accordingly, Carr's fraudulent misrepresentation claim should be dismissed, in its entirety, against all of the Plaintiffs, for failure to state a claim upon which relief can be granted.

         1.    <u>Carr Has Not Alleged that He Relied to his Detriment, Reasonably or Otherwise, upon any Alleged "Promises" made by any of the Plaintiffs</u>.

Starkly absent from Carr's Counterclaim is any allegation that Carr actually relied, in any way, upon any of the Plaintiffs' alleged statements, promises or representations. The lack of that critical element scuttles the fraudulent misrepresentation claim. Black letter law firmly establishes that "[r]eliance is an element of actionable fraud." <u>Nei v. Burley</u>, 388 Mass. 307, 311, 446 N.E.2d 674, 677 (1983) (dismissing the fraud element because there was no reliance on the alleged representation); see also <u>Carroll v. Xerox Corp.</u>, 294 F.3d 231, 243 (1st Cir. 2001) ("[t]o state a claim for fraud or misrepresentation, [plaintiff] must allege, *inter alia*, that he reasonably relied upon a representation of the defendant to his detriment"); <u>Russell v. Cooley Dickenson Hosp., Inc.</u>, 437 Mass. 443, 459, 772 N.E. 2d 1054, 1066 (2002) ("[t]he plaintiff does not state that she took any action or forwent any action in reliance on any statement the [defendant] may have made"). In the Counterclaim, Carr has failed to identify a single action he took, or forwent, as a result of the Plaintiffs' alleged promises. Indeed, the Counterclaim does not contain even a conclusory statement regarding Carr's reliance, much less any particular facts regarding the detriment Carr incurred as a result of any such reliance. Without actual reliance on a representation by the Plaintiffs, there is no claim for fraudulent misrepresentation and thus the Court should dismiss this claim.

         2.    <u>The "Representations" Alleged in the Counterclaim are Promises and Therefore are Not Actionable</u>.

Each and every one of the alleged misrepresentations set forth in Carr's Counterclaim is promissory only and thus is not actionable as a fraudulent misrepresentation. Generally, "'false statements of opinion, of conditions to exist in the future, or ***of matters promissory in nature are not actionable***.'" <u>Blacksmith Invs., LLC v. Cives Steel Co.</u>, No. 04-10369-NG, 2005 U.S. Dist. LEXIS 7916, at *17 (dismissing the fraud action due to a failure to allege fraud with

particularity), quoting Yerid v. Mason, 341 Mass. 527, 530, 170 N.E. 2d 718, 720 (1960) (emphasis added). In Blacksmith Investments, the plaintiff alleged that the defendant made promises to pay a third party (in which payment the plaintiff allegedly had an interest) upon completion of that third party's work. The plaintiff in Blacksmith Investments further alleged that the defendant led the third party to believe that upon completion of its work the third party would be paid. The Court dismissed the fraud-related claims, holding that the claims rested upon promises of future conduct and were therefore not actionable. Blacksmith Invs., LLC, 2005 U.S. Dist. LEXIS 7916, at *5-6.

As in Blacksmith Investments, all of the Plaintiffs' alleged representations, even if believed, are promissory statements. For example, Carr alleges that "Iron Mountain *would fund*… Iron Mountain *would hire*…Iron Mountain *would retain*…Varn…*promised*…" See Ctrclm., ¶¶ 18, 19, 20, 23. These alleged statements are not statements of fact, but oral promises of future performance. Accordingly, since the alleged promises are not actionable under a claim for fraudulent misrepresentation, that claim should be dismissed.

      **B.**      **The Counterclaim Does Not Satisfy the Particularity Requirements of Rule 9(b).**

The Counterclaims do not set forth the circumstances of the Plaintiffs' knowledge of their representations' alleged falsity with particularity, and Count II should accordingly be dismissed. The Federal Rules of Civil Procedure require "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). The requirement that supporting facts be pleaded applies even when the fraud relates to matters particularly within the knowledge of the opposing party. See Maldonado v. Dominguez, 137 F.3d 1, 9 (1st Cir. 1998) ("Courts have uniformly held inadequate a complaint's general averment of the defendant's 'knowledge' of material falsity unless the complaint also sets forth

specific facts that make it reasonable to believe that defendant knew that a statement was false or misleading"); see generally DiLeo v. Ernst & Young, 901 F.2d 624, 629 (7th Cir. 1990) ("[a]lthough Rule 9(b) does not require 'particularity' with respect to the defendants' mental state, the complaint still must afford a basis for believing that plaintiffs could prove scienter").  Thus, for promissory statements to satisfy the requirements of fraudulent misrepresentation, Carr must allege supporting facts showing that the statements were false when made, as an intention not to perform in the future cannot be established merely by the promise's subsequent non-performance.  See Blacksmith Invs., 2005 U.S. Dist. LEXIS 7916 at *6.  The restriction on promissory statements makes sense.  Without this added element, every breach of contract action would simultaneously become an action for fraud.

In this case, the Counterclaims merely allege the circumstances of the Plaintiffs' knowledge of the promises' falsity in the most conclusory fashion.  See Ctrclm., ¶ 24 and 42.  Under well-established law in the First Circuit (and elsewhere), Carr's conclusory pleading technique is not sufficient in the context of a fraudulent misrepresentation claim.  Accordingly, Carr does not have an actionable fraudulent misrepresentation claim and Count II of the First Amended Counterclaim should be dismissed.

Finally, Carr's "group pleading" technique regarding the alleged knowledge of all of the Plaintiffs is not sufficient under Fed. R. Civ. P. 9(b).  Courts have held that if a fraud claim involves multiple defending parties, a claimant usually may not group all claimed wrongdoers together in a single set of allegations; rather, the claimant must make specific and separate allegations against each defendant.  See Bio-Vita, Ltd. v. Rausch, 759 F. Supp. 33, 37-38 (dismissing the common-law fraud claim due to lack of particularity); see generally 2 Moore's Federal Practice, § 9.03[1][f] (Matthew Bender 3d ed.) ("the claimant must make specific and

separate allegations against each defendant."). As seen above, paragraphs 24 and 42 group the Plaintiffs together and do not allege specific and separate allegations against each of the Plaintiffs. Accordingly, Count II of the Counterclaims does not give sufficient notice of the fraudulent misrepresentation claims against the Plaintiffs and should be dismissed.

## CONCLUSION

For the foregoing reasons, the Plaintiffs respectfully requests that this Court enter an order dismissing Count II of the Counterclaims with prejudice.

Respectfully submitted,

**IRON MOUNTAIN INCORPORATED; IRON MOUNTAIN INFORMATION MANAGEMENT, INC.; C. RICHARD REESE; JOHN F. KENNY, JR.; GARRY B. WATZKE; LARRY L. VARN; and CHARLES G. MOORE**

By their attorneys,

May 31, 2005

/s/    Samual Miller
Ira K. Gross (BBO #212720)
*igross@sandw.com*
Samual A. Miller (BBO #648568)
*smiller@sandw.com*
SULLIVAN & WORCESTER LLP
One Post Office Square
Boston, Massachusetts  02109
(617) 338-2800

{B0410929; 2}

-11-

## CERTIFICATE OF SERVICE

    I hereby certify that I have on this 31st day of May, 2005, served on counsel listed below, by first class mail (unless counsel receives electronic service by the Court), a true and correct copy of the foregoing **Counterclaim-Defendants' Memorandum of Law in Support of Motion to Dismiss Counterclaim-Plaintiff's Fraudulent Misrepresentation Claim.**

Kathleen C. Stone
Looney, Cohen, Reagan & Aisenberg LLP
109 State Street
2nd Floor
Boston, Massachusetts 02109

Read K. McCaffrey, Esq.
Patton Boggs LLP
2550 M Street, NW
Washington, DC  20037

                                                    /s/ Samual A. Miller
                                                  Samual A. Miller