UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IRON MOUNTAIN INCORPORATED; et al.,<br><br>     Plaintiffs,<br><br>v.<br><br>THOMAS CARR,<br><br>     Defendant<br><br>And<br><br>THOMAS CARR,<br><br>     Counter-Plaintiff<br><br>v.<br><br>IRON MOUNTAIN INCORPORATED; IRON MOUNTAIN INFORMATION MANAGEMENT, INC.; C. RICHARD REESE; JOHN F. KENNY, JR.; GARRY B. WATZKE; LARRY L. VARN; AND CHARLES G. MOORE,<br><br>     Counter-Defendants | Civil Action No.<br><br>05 10890 RCL |

### DEFENDANT'S AND COUNTER-PLAINTIFF'S MEMORANDUM OF REASONS AND CITATIONS OF AUTHORITY IN SUPPORT OF HIS CONSOLIDATED OPPOSITION TO COUNTER-DEFENDANTS' MOTIONS TO DISMISS

Thomas Carr, Defendant and Counter-Plaintiff in the above-captioned proceedings, herewith provides for the Court's review the following Consolidated Memorandum of Reasons and Citations of Authority in Support of his Consolidated Opposition to Counter-Defendants' Motions to Dismiss and states:

1

3870760v1

Plaintiffs and Counter-Defendants argue that the 'promissory' nature of the false representations is a deficiency which requires the dismissal of Count II.

The promises and other statements of consideration made by the Counter-Defendants are specifically set forth, in detail, in paragraphs 18, 19, 20, 21, 23, 24, 28, 29 and 30. A plain reading of these averments will, we respectfully contend, lead to the conclusion that they constitute a statement of present consideration to be delivered and otherwise executed as a contractual obligation due and owing in return for Carr's cooperation, including the filing of an action against Peter Pierce. However, if they are considered promissory, Massachusetts law nonetheless dictates a denial of Plaintiffs' and Counter-Defendants' motions to dismiss.

While it is the general rule that a statement that is promissory in nature cannot serve as the basis for a cause of action based on fraud, Massachusetts law recognizes two important exceptions. First, a promissory statement can be actionable as fraud where the parties to the transaction are not on equal footing but where one has or is in a position where he should have superior knowledge concerning the matters to which the misrepresentations relate. Second, a promise relating to a future event may also constitute actionable fraud when made without intention of performance.

"Although as a general rule representations as to future events are not actionable, an exception has been recognized 'where the parties to the transaction are not on equal footing but where one has or is in a position where he should have superior knowledge concerning the matters to which the misrepresentations relate.'" *Cellucci v. Sun Oil Co.*, 320 N.E.2d 919 (Mass. Ct. App. 1974), *aff'd* 331 N.E.2d 813 (1975). In *Cellucci*, the plaintiff sued defendant Sunco seeking specific performance of a contract for the sale of

real estate by the plaintiff. After the plaintiff seller had agreed to sell the real estate to Sunco, a Sunco representative told the seller the deal was "all set" and that acceptance of the offer at Sunco's offices would be a mere formality. The plaintiff sued for specific performance and prevailed with the court noting that to the extent the representation was related to future events, those events were within the exclusive control of Sunco.

> Furthermore, a prediction that Sunco will sign a contract is not like a prediction as to the weather. It lies within the entire and exclusive control of Sunco. Representations regarding the internal processes of Sunco and the likelihood of its acceptance did not exceed any apparent limitations of [the agent's] authority. Sunco is liable for the fraudulent representations of [its agent] in doing the business which Sunco entrusted to him.

*Id.* Although the *Cellucci* case involved causes of action for breach of contract and estoppel, the court's holding applies equally to an action for deceit or fraud. *Liberty Leather Corp. v. Callum*, 653 F.2d 694 (1st Cir. 1981).

Following *Cellucci*, the District Court for the District of Massachusetts has repeatedly found representations actionable where the representing party has superior knowledge concerning the matters to which the representations relate. For example, in *Masso v. UPS*, the court found that a cause of action existed for negligent misrepresentation existed where UPS represented to an employee that he would not be

3870760v1

terminated for installing copyrighted software on the home computers of UPS executives but then was subsequently fired. 884 F. Supp. 610 (D. Mass. 1995). "Similar to *Cellucci*, this case involves a business transaction with the knowledge regarding Masso's continued employment at UPS presumably within the control of Masso's direct superiors." *Id.*

Similarly, in *Della Croce v. General Elec. Co.*, the court found that certain statements about an employee's advancement potential within the company were actionable on a theory of fraud. Civ. A. No. 83-238-G, 1988 WL 6582 (Jan. 7 1988).

> The representations at issue in this case were made by Milley in his capacity as manager of the Engineering Support Division, in the context of encouraging the plaintiff to accept a job under his supervision which he himself had created. Milley was certainly better able than the plaintiff to evaluate the potential benefits of the analyst position, and the plaintiff was thus entitled to rely on his representations. Moreover, Milley was in a position to exercise considerable control over the future conditions of the plaintiff's employment as an analyst. His statements concerning that job are thus actionable if he knowingly misrepresented either the potential benefits of the job or his

4

3870760v1

> own intention to provide them, and the plaintiff relied on those representations to her detriment.

*Id.*

In *Learning Express, Inc. v. Ray-Matt Enterprises, Inc.*, the court addressed fraudulent misrepresentations of a promissory nature in the context of a franchise arrangement and found the following statements were actionable:

> Moore stated that "he *would be able* to provide the necessary support to allow the Hanrattys to establish a Learning Express franchise retail store in New Jersey and to make it a success."
>
> - Moore allegedly "assured the Hanrattys that he *would be able* to assist in selecting a location that would support a Learning Express Franchise."
> - Diminico similarly stated that "Moore was experience and *was able* to assist [the Hanrattys] in finding an appropriate location, as well as provide them with the training and knowledge necessary to open and successfully operate a Learning Express franchise."

*Learning Express, Inc.*, 74 F. Supp. 2d 79, 85 (D. Mass. 1999).

In the present case, the representations made by Iron Mountain and its agents clearly involved matters which were exclusively within the control of Iron Mountain. Accordingly, to the extent that the representations were promissory in nature they fall within the well-recognized exception under Massachusetts law.

June 9, 2005

        Respectfully submitted,

        By his attorneys,

        _____
        Read K. McCaffrey (pro hac vice)
        PATTON BOGGS, LLP
        2550 M Street, NW
        Washington, DC 20005
        (202) 457-5243
        rmcccaffrey@pattonboggs.com

        Kathleen C. Stone
        BBO #481920
        Looney, Cohen, Reagan & Aisenberg LLP
        109 State Street
        Boston, MA 02109
        617-371-1050