Iron Mountain, et al. v. Carr & Carr v. Iron Mountain, et al.
Civil Action No. 05-10890 RCL
U.S.D.C. Massachusetts

# Exhibit 1

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| IRON MOUNTAIN INCORPORATED; et al. | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| THOMAS CARR, | ) ) | |
| Defendant | ) ) | |
| And | ) ) | Civil Action No. |
| THOMAS CARR, | ) ) | 05 10890 RCL |
| Counter-Plaintiff | ) ) | |
| v. | ) ) | |
| IRON MOUNTAIN INCORPORATED; IRON MOUNTAIN INFORMATION MANAGEMENT, INC.; C. RICHARD REESE; JOHN F. KENNY, JR.; GARRY B. WATZKE; LARRY L. VARN; AND CHARLES G. MOORE, | ) ) ) ) ) ) ) | |
| Counter-Defendants | ) ) ) | |

## DEFENDANT'S AND COUNTER-PLAINTIFF'S SECOND AMENDED COUNTER-CLAIM

Thomas Carr, Defendant and Counter-Plaintiff in the above-captioned proceedings herewith Amends the Defendant's and Counter-Plaintiff's First Amended Counter-Claim filed previously herein against the Plaintiffs and Counter-Defendants and states:

1

3870374v1

## Facts Common To All Counts

1. Prior to January 2001, Iron Mountain Incorporated (Iron Mountain) and Iron Mountain Information Management, Inc. (IMIM), hereinafter referred to as Iron Mountain, merged with and/or acquired a competitor known as Pierce Leahy, Inc., the resulting company being known as Iron Mountain.

2. Following the aforementioned transaction, J. Peter Pierce, ("Pierce") was elected to the Board of Directors of Iron Mountain and also was appointed president of the new company.

3. Sometime following the aforementioned merger and/or acquisition, Pierce had a falling out with Iron Mountain and, upon information and belief, was fired as the new company's president, but remained on its Board of Directors.

4. Upon information and belief, Pierce had signed a form of non-compete agreement as part of the aforementioned commercial transaction.

5. On or about January 15, 2001, Thomas Carr, ("Carr") and Pierce entered into an agreement to form a transportation company known as Logisteq, LLC ("Logisteq"), at the conclusion of which transaction, a Pierce controlled entity, Pioneer Capital, L.P., and a Carr controlled entity, Transportation Concepts of New Jersey, Inc. owned Logisteq 51% and 49%, respectively.

6. In the months which followed the formation of Logisteq, Pierce, on his own, formed a company known as Sequedex which, on information and belief, he used surreptitiously to compete with Iron Mountain and in so doing 'posted' significant costs including payroll, etc. expended to operate Sequedex on the books of Logisteq.

3870374v1

7.   At a time material to these proceedings, Iron Mountain filed suit against Pierce for, on information and belief, a breach of the merger/acquisition contract described in Paragraph 1 above, (a violation of the non-compete portion thereof), which action was placed before an arbiter who ultimately decided the action in favor of Pierce.

8.   The proceedings described in the foregoing Paragraph are currently on appeal.

9.   One result of the merger/acquisition discussed in Paragraph 1 above was that Logisteq, became a tenant of Iron Mountain.

10.  On information and belief, because of the activities of Pierce and Sequedex, Iron Mountain sent a letter to Carr signed by Counter-Defendant Watzke that Logisteq and Carr as well as Carr businesses were being evicted from property now owned by Iron Mountain.

11.  Mr. Carr protested in writing to Mr. Watzke.

12.  In August 2001 a senior 'entourage' from Iron Mountain, including its President, General Counsel and Chief Financial Officer, came to New Jersey and met with Mr. Carr and revealed at that time, for the first time, their true agenda, which was a discussion of what they believed were unlawful acts being committed by Pierce.

13.  At the meeting in August 2001 described above, Iron Mountain, through its senior management and counsel, stated that if Mr. Carr would assist Iron Mountain in confirming what it already suspected and/or knew about the activities of Pierce, and would otherwise assist and support Iron Mountain against Pierce for his violation of the non-compete agreement, that Iron Mountain would compensate

Mr. Carr in various ways which they, Iron Mountain, were confident Mr. Carr would find acceptable.

14. On information and belief, if Iron Mountain were to succeed in its claim against Pierce alleging a breach of the non-compete agreement, Iron Mountain would stand to recoup the total purchase price for its acquisition of Pierce's company of $1.2 Billion.

15. Thereafter, in a series of meetings involving the Counter-Defendants, meetings were arranged with Mr. Carr and his counsel Mr. Peslak and his friend James Neebling, principal of Systrans Freight, Inc., (hereinafter "Systrans") several of which occurred on March 19, 2002 in New Jersey, March 26, 2002 in Boston, April 2, 2002 by telephone conference, April 9, 2002 in New York, July 16, 2003 by telephone conference and September 2003 in New York.

16. During one or more of the aforesaid meetings, both in person and by telephone, wherein the participants included the Counter-Defendants and Mr. Carr, his counsel, Mr. Peslak and his friend Mr. Neebling, in consideration for information being supplied by Mr. Carr and/or confirmations being provided by Mr. Carr, including but not limited to Mr. Carr's cooperation in the aforementioned Iron Mountain/Pierce litigation, one or more of the Counter-Defendants promised (as particularized in paragraphs 17-24 and 28-29):

16.1 The funding of Carr's lawsuit against Pierce, of which accumulated fees and disbursements of nearly $200,000, the sum of $50,000 has been paid by Iron Mountain to Carr's attorney, Mr. Peslak;

3870374v1

16.2    The provision of the sum of $5 Million to allow Carr to buy back Pioneer

Capital/Pierce's 51% share of Logisteq;

16.3    To hire Carr as a transportation consultant at wages equal to those paid by

Logisteq, plus full benefits;

16.4    To ensure the transportation company owned by Mr. Neebling, (which had

been capitalized as a start up by Mr. Carr) would receive nearly $50

Million per year in courier business;

16.5    The payment of $2 Million directly to Mr. Carr as an interim measure to

allow him to satisfy certain obligations in the wake of Pierce's wasting of

Logisteq.

16.6    The provision of assurances to Mr. Carr's creditor, Mr. Paul Schwarz, that

Iron Mountain would provide sufficient funds and revenues to Carr to

enable Mr. Schwartz to conclude that Mr. Carr was a good candidate to

whom a loan of moneys could be made; and

16.7    The provision of assurances that in the event that any negative financial

effects befell Mr. Carr, his family or his businesses as a result of his

cooperation with Iron Mountain in their disputes with Mr. Pierce, that Iron

Mountain would, in essence, indemnify Mr. Carr and his family and

businesses against any such negative effects.

17.    Concurrently in the spring of 2002, Iron Mountain began encouraging Carr to file

a lawsuit against Pierce on behalf of Systans to coincide with the action that Iron

Mountain was planning to also file against Pierce.   With the intent of

orchestrating simultaneous lawsuits against Pierce, Iron Mountain actively sought

to coerce and facilitate Carr's participation by agreeing to fund Carr's lawsuit, including legal fees and costs, as well as drafting the complaint for Carr to file.

18.    On March 19, 2002, Carr, Neebling and Peslak attended a meeting in Casa Dante, New Jersey with the general counsel of Iron Mountain, Garry Watzke. Mr. Watzke, individually and as an agent of Iron Mountain and acting with such authority, stated that, in return for Mr. Carr's cooperation in the Iron Mountain/Pierce litigation, Iron Mountain would fund Mr. Carr's lawsuit against Mr. Pierce and employ Mr. Carr in the event that Mr. Pierce locked him out of Logisteq.

19.    On March 26, 2002, Carr and Neebling met with John F. Kenny, Richard Reese and Watzke at Iron Mountain's corporate headquarters in Boston, Massachusetts. Individually as well as acting as an agent of Iron Mountain and with such authority, Reese offered $5 million to Carr to use to buy out Pierce's share of Logisteq. Also, at this meeting Reese further promised that Iron Mountain would hire Carr as a transportation consultant and provide $25 million in courier business to Systrans, Inc. Finally, Counter-Defendant Kenny advised that courier business revenues of $45 Million would be paid to Systrans, Inc. each year for a period of five years in return for the cooperation of Carr and Systrans as described above.

20.    On April 2, 2002 Carr and Peslak participated in a conference call to Watzke. During this call, Watzke, individually and acting within the scope of his authority as general counsel, promised that Iron Mountain would pay for Carr's attorneys'

fees in his suit against Pierce. During this call, Watzke also promised Carr that Iron Mountain would retain Carr in a consulting position.

21. On April 9, 2002 at a private residence in New York, New York, Carr, Neebling and Peslak met with Larry L. Varn, Richard Reese and John F. Kenny. At this meeting, Varn, individually, as a partner in the Boston firm of Sullivan and Worcester and acting as an agent of Iron Mountain and within the scope of his authority as its attorney, promised that Iron Mountain would wire a $50,000 retainer to Arthur Peslak, Mr. Carr's counsel in disputes involving Pierce. That transaction was completed two days later.

22. Carr initially voiced reluctance in joining Iron Mountain's campaign against Pierce and expressed significant concerns about the negative effects of any such action on his business and family.

23. As consideration for Carr's involvement in Iron Mountain's coordinated efforts against Pierce, Kenny called Carr and promised that, in exchange for his participation, Iron Mountain would fund Carr's lawsuit, including paying all legal fees and costs. In addition, Kenny also promised that in exchange for Carr's participation, Iron Mountain would provide business to Systrans in excess of $45 million dollars, hire Carr as a consultant with the same salary and benefits that he was currently making, and repay any debt that Carr incurred in the process as guarantor of certain obligations.

24. In addition to expressing these promises to Carr, Kenny also made the same promises to Carr's wife Judy in a separate telephone conversation with her which occurred in April of 2002. Mr. Kenny called Mrs. Carr while she and her family

7

were on vacation in California. In response to her concerns about the negative effects that Carr's involvement with Iron Mountain in its claims against Pierce would have on her family, Kenny specifically affirmed each of the foregoing promises to Mrs. Carr and advised her that any and all negative financial fall out resulting from her husband's filing a complaint against Pierce and/or his other cooperation with Iron Mountain would be taken care of by Iron Mountain.

25.    Carr eventually acquiesced and agreed to participate in Iron Mountain's efforts against Pierce. Upon receiving Carr's acceptance, Iron Mountain had a courier deliver a copy of the drafted complaint to Carr while he was on vacation with his family in California. Carr signed the complaint and Iron Mountain coordinated the filing of the action.

26.    During the ensuing months, Carr and Neebling on behalf of Systrans cooperated completely with the Counter-Defendants, met with witnesses, reviewed and checked out commercial transactions involving Pierce and Pierce-related companies, and turned over documents and other materials to various of the Counter-Defendants. This cooperation involved extensive travel at the request of several of the Counter-Defendants.

27.    In direct and full reliance on the aforementioned promises of consideration, Carr continued to cooperate with the Counter-Defendants, as they had requested and, as a result of his reliance, he lost his businesses and was shackled with debt which several of the Counter-Defendants, as described above, had promised to allay by providing sufficient income to Carr to allow him to comfortably handle the debt.

3870374v1

28. During a July 16, 2003 telephone conference as mentioned above, Counter-Defendant Watzke, when asked by Carr's counsel Arthur Peslak why Iron Mountain and the other Counter-Defendants had not fulfilled their obligations and promises as set forth in Paragraphs 16.1 through 16.7 and further described in paragraphs 17 through 24, Mr. Watzke stated, individually and in his capacity as general counsel for Iron Mountain, "Once the arbitration (of the lawsuit as between Iron Mountain and Pierce) had been concluded, (the resolution of the appeal), Counter-Defendant Reese would meet with Carr and Mr. Peslak to discuss the fulfillment of Iron Mountain's promises to Carr."

29. Soon after the events set forth in paragraph 28, Counter-Defendant Moore told Carr, in a telephone conversation, the same assurances which had been conveyed by Watzke to Peslak on July 16, 2003. This was consistent with Moore's role as the prime contact with Mr. Carr as designated by Iron Mountain and the individual Plaintiffs and Counter-Defendants. Mr. Moore would frequently, in conversations with Mr. Carr, restate and otherwise affirm statements of consideration previously made by Mr. Watzke, Mr. Kenny, Mr. Varn, and Mr. Reese.

30. In approximately September 2003, Carr and Neebling attended a meeting with Varn and Charles G. Moore in New York, New York. At this meeting, Varn, individually, as a partner at the Boston law firm Sullivan and Worcester and acting as an agent of Iron Mountain and within the scope of his authority, promised $2 million dollars for Carr to use to pay off certain debts incurred during the preceding year or two.

9

31.   In addition, Varn called Paul Schwartz, a person to whom Carr owed money, to advise him that Iron Mountain was in the process of setting up a very lucrative business relationship with Carr and that Carr therefore was a good credit risk to whom Mr. Schwartz should loan additional moneys.

32.   All of the aforementioned contractual obligations and promises which the Counter-Defendants presented to Carr were made with absolutely no intention of fulfilling or otherwise satisfying said obligations.

33.   Despite repeated requests from Carr and his New Jersey counsel Arthur Peslak as well as his friend James Neebling, for the period beginning in the fall of 2003 through the early months of 2005 the Counter-Defendants remained incapable of or unwilling to fulfill the aforementioned promises, continuing to use as an excuse the pendancy of the Iron Mountain versus Pierce arbitration appeal.

34.   In hindsight, because there is no arguable relationship between the fulfillment of Iron Mountain's contractual obligations to Mr. Carr and the ultimate termination of Iron Mountain's appeal of the Iron Mountain vs. Pierce arbitration decision, it is now readily apparent that at the time Iron Mountain described the consideration it would pay to Carr in return for Carr's cooperation, including Carr's filing of a lawsuit against Pierce, as coordinated by Iron Mountain, Iron Mountain through the aforementioned officers, agent and outside counsel had absolutely no intention of following through on said considerations and knew that statements regarding said considerations were false, when made.

35.   As a direct result of Carr's cooperation with Iron Mountain including his filing of a complaint against Pierce, orchestrated by Iron Mountain, Pierce wasted the

3870374v1

business of which Carr was a 49% owner and left Carr shackled with debt and a loss of his source of income.

36. Carr however believed that Iron Mountain would make good on his statements of consideration of employment, business and indemnification and when Carr demanded satisfaction from Iron Mountain, he was met with silence and/or denial.

37. As a direct result of his reliance on the false statements of Iron Mountain, Carr has lost his business and his source of personal income and is faced with significant debt.

38. In February 2005, Carr's counsel met with Counter-Defendants Watzke and Varn to discuss Mr. Carr's claims that the obligations and promises to him remained unfulfilled.

39. On February 25, 2005 a letter was written to Counter-Defendants Watzke and Varn summarizing the events of the earlier meeting and the claims made therein.

40. On April 7, 2005, as a culmination of some brief interim correspondence, undersigned counsel suggested a meeting with several of the Counter-Defendants to discuss an amicable resolution of the Carr claim.

41. On April 19, 2005, Counter-Defendant Watzke advised that a few more days would be required to respond to counsel's request for a meeting due to the unavailability of Mr. Varn.

42. Thereafter, undersigned counsel received an e-mail from Counter-Defendant Varn stating that he was in trial in Barnstable and would not be able to turn his attentions to responding to the request for a meeting until some time late in the week of May 2.

11

43.     Finally, on May 1, 2005, counsel again corresponded with Counter-Defendants Watzke and Varn to advise that patience in awaiting a response to a letter dated April 7, 2005 to convene a meeting to amicably resolve Carr's claims was patience which was indeed waning and specific dates for a meeting were then suggested.

44.     The response to the foregoing was the filing and delivering of the instant Complaint.

## Count I

## (Breach of Contract)

45.     Incorporated by reference are all allegations as set forth in Paragraphs 1 through 44 as if repeated herein.

46.     The transactions as between Iron Mountain and the other Counter-Defendants and Carr do constitute a binding oral contract supported by adequate consideration.

47.     Carr has performed all of his obligations pursuant to the terms and conditions of the aforementioned oral contract.

48.     Iron Mountain and the other Counter-Defendants' failure to perform promises and obligations pursuant to the aforementioned oral contract as described above does constitute a breach of said oral contract.

49.     As the direct and proximate result of the aforementioned breach by the Counter-defendants, Carr has been damaged.

WHEREFORE, the Counter-Plaintiff Carr demands judgment against the Counter-Defendants in the amount of $20 Million plus interest, attorneys' fees and costs.

3870374v1

**Count II**

**(Against Counter-Defendants Varn, Watzke, Reese, Kenny and Moore)**

**(Fraudulent Misrepresentation)**

50. Incorporated by reference are all allegations as set forth in Paragraphs 1 through 44 as if repeated herein.

51. Iron Mountain and the other Counter-Defendants received from Carr as well as his counsel, Mr. Peslak, and his friend, Mr. Neebling, critical information known to Carr, confirmation of which information was required by the Counter-Defendants in the prosecution of their claims against Pierce as well as Carr's complete cooperation in filing a separate action against Pierce.

52. The Counter-Defendants explained to Carr that the consideration for the information and cooperation described herein would include the consideration described in Paragraphs 16.1 through 16.7, 17 through 24 and 28 through 30 above.

53. At the time the representations set forth in the foregoing Paragraph were made to Carr, the Counter-Defendants knew that they were false, knew that they had no intention of fulfilling said obligations and/or promises and knew that Carr would rely on their representations to his detriment.

54. The actions of Iron Mountain and the other Counter-Defendants as described above do constitute a fraudulent misrepresentation.

55. That, as more fully explained above, Carr did in fact rely on the aforementioned false statements, not knowing them to be false, to his detriment in that he suffered massive business losses and faced mounting debt all of which, he believed, would

13

3870374v1

be comfortably off-set by the aforementioned representations of considerations. They were not.

56.   As the direct and proximate result of Iron Mountain's and the other Counter-Defendants' fraudulent misrepresentations, Carr has been damaged.

WHEREFORE, Carr demands judgment for compensatory damages against the Counter-Defendants in the amount of $20 Million, plus interest, attorneys' fees and costs.


June 9, 2005

Respectfully submitted,


By his attorneys,


_____
Read K. McCaffrey (pro hac vice)
PATTON BOGGS, LLP
2550 M Street, NW
Washington, DC 20005
(202) 457-5243
rmcccaffrey@pattonboggs.com


Kathleen C. Stone
BBO #481920
Looney, Cohen, Reagan & Aisenberg LLP
109 State Street
Boston, MA 02109
617-371-1050

3870374v1

Iron Mountain, et al. v. Carr & Carr v. Iron Mountain, et al.
Civil Action No. 05-10890 RCL
U.S.D.C. Massachusetts

# Exhibit 2

# UNITED STATES DISTRICT COURT

## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IRON MOUNTAIN INCORPORATED; et al. | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| THOMAS CARR, | ) ) |
| Defendant | ) ) |
| And | ) ) |
| THOMAS CARR, | ) ) |
| Counter-Plaintiff | ) ) |
| v. | ) ) |
| IRON MOUNTAIN INCORPORATED; IRON MOUNTAIN INFORMATION MANAGEMENT, INC.; C. RICHARD REESE; JOHN F. KENNY, JR.; GARRY B. WATZKE; LARRY L. VARN; AND CHARLES G. MOORE, | ) ) ) ) ) ) ) ) |
| Counter-Defendants | ) ) ) |

Civil Action No.

05 10890 RCL

## DECLARATION OF JAMES NEEBLING

I, James Neebling, upon personal knowledge and observation, hereby affirm as follows:

1.      I am a resident of the State of New Jersey and am over the age of 18 and if called to testify I would be prepared to testify to the following information based upon my own personal knowledge.

1

2.    I am the principal owner of Systrans Freight Systems, Inc., which was sued by Iron Mountain on May 13, 2005, in this Court in an action styled: *Iron Mountain Information Management Inc. v. Systrans Freight Systems, Inc.*, Civil Action # 05cv10999 MLW (the "Systrans case"). Like Mr. Carr in this Action, I filed counterclaims against Iron Mountain and I have joined Mr. Carr, both before Your Honor and before Judge Wolf, in moving the Court to consolidate the Systrans case with this matter.

3.    I was present at most if not all of the meetings that are set forth in Carr's counterclaim in this Action as well those counterclaims I filed against Iron Mountain in the Systrans case

4.    In addition, I personally was a party to several communications with the counter-Defendants in this Action pertaining to the promises at issue in this case as well as those same promises that are implicated in the Systrans case.

5.    Specifically, in connection with this case, the counter-defendants sought and received both Carr's and my cooperation in assisting Iron Mountain's litigation team prepare Iron Mountain's lawsuit against Peter Pierce ("Pierce") in exchange for the promises outlined in the respective counterclaims in this and the Systrans case.

6.    Larry Varn ("Varn"), a senior partner at the firm of Sullivan & Worcester, led the litigation efforts against Pierce including the litigation team staffed with lawyers from S&W and the law firm Morgan Lewis.

7.    Also part of Varn's litigation team was a private investigator hired by S&W, Charlie Moore ("Morre"). As explained to me by Varn, Moore was tasked primarily with "digging up as

much dirt on Pierce as possible" and Varn and Moore specifically sought my assistance in this regard.

8.      In connection with those efforts, Varn approached both Carr and myself soliciting our assistance to aid his litigation team prepare Iron Mountain's case against Pierce.

9.      Beginning in August 2001, Carr and I were first approached by senior executives at Iron Mountain to participate in a series of meetings to discuss what assistance Carr and I could provide Iron Mountain and its litigation team in its legal actions against Pierce.  Those executives were: Gary Watzke, general counsel for Iron Mountain; John Kenny, chief financial officer for Iron Mountain; and Iron Mountain's CEO Richard Reese.

10.      As set forth in both Carr's and Systran's respective counterclaims, throughout these meetings the above-named counter-Defendants made a series of promises to both Carr and myself amounting to millions of dollars in cash and contracts for Carr and Systrans.

11.      In addition to the above-referenced meetings, S&W's litigation team initiated or participated in literally hundreds of communications (electronic mail, telephone, and in person meetings) with Carr and myself over the years to which Iron Mountain was not privy.

12.      In particular, Varn expressed to Carr and me that he was concerned that we were having too much direct contact with Gary Watzke and he further directed us instead to use Moore as conduit for communicating with Iron Mountain.  Moore and Varn told me that Moore was hired by S&W and not by Iron Mountain.

13.      During these communications with Moore, Moore personally promised both Carr and me that funds would be paid to Carr and that Systrans would receive significant contracts in

3

exchange for our continued assistance in helping S&W's litigation team prepare Iron Mountain's case.

14.    In addition to the meetings described above, Varn also met separately with Carr and me on several occasions in which he reaffirmed that we would be compensated for our efforts in assisting with S&W's investigation of Pierce.

15.    Also present at many of these meetings was another S&W attorney, Samuel Miller ("Miller"). Miller was a key participant in S&W's preparation of Iron Mountain's case and would contact me regularly regarding my efforts to advance the investigation of Pierce. Miller's name appears on pleadings S&W filed in support of their representation of Iron Mountain against Pierce. Miller attended at least one dinner in New York that included, at least, Varn, Carr, and myself. It became my understanding over the years that Miller worked closely with Varn and seemed in my judgment to be fully apprised of the communications and promises that that Varn had with Carr and me.

16.    In one meeting at a restaurant in New York that included Varn, Carr, myself and Arthur Peslak ("Peslak"), an attorney for Carr, Varn promised to Carr and me that S&W would pay at least $50,000.00 of legal fees to Peslak for legal fees and expenses owed by Carr and me. Peslak, Carr, Varn, and Moore all told me that S&W did in fact pay Peslak $50,000 in partial fulfillment of Varn's promise.

17.    During the time in which Carr and I were assisting with S&W's investigation of Pierce, we had complete access to all aspects of the Pierce litigation, including confidential information, and we were routinely asked for our input and advice regarding this information. At no point did Varn, Miller, Moore, attorneys for Morgan Lewis, or anyone from S&W ask me to sign a

4

confidentiality or non-disclosure agreement. I believe that all of those people (Varn, Miller, Moore, attorneys for Morgan Lewis, and S&W) knew that I was being provided with confidential proprietary business information that I would otherwise not be able to access.

18.    For example, Varn sent me Pierce's motion for summary judgment to review. In a separate email, Varn later sent me Iron Mountain's draft opposition to Pierce's motion for summary judgment along with eight attachments. Varn specifically instructed me to review the attachments to Iron Mountain's opposition that included documents produced that were clearly marked confidential and provided by third parties to the dispute. Varn also provided to me other confidential information to which non-parties to the Pierce litigation were not supposed to be privy to. This information contained proprietary business information pertaining to a third party to the suit. Systrans is in the freight and trucking business and the confidential information that Varn told me to review pertained to the confidential financing of another trucking business called, Sequedex. There is no possible way that I would have been privy to Sequedex's efforts to raise capital, the identity of the people from who the company was seeking the capital, without Varn's provision of this information to me.

19.    As I understood it, the purpose in providing these documents to Carr and me was to educate us as to S&W's strategy and theories concerning the Pierce case in furtherance of our continued efforts to assist them in it.

20.    In addition, Varn and Miller contacted Peslak and me concerning a deposition of a significant witness in the Pierce case to ask us for assistance in preparing questions for that deposition. While this may seem strange for two lawyers to contact me, a non-layer and non-party, this was the type of communication that I routinely received from S&W.

5

I declare under the penalty of perjury 28 USC § 1746 that the foregoing information is true and correct to the best of my recollection.

7/15/05
Date

James Neebling

3878832v1

Iron Mountain, et al. v. Carr & Carr v. Iron Mountain, et al.
Civil Action No. 05-10890 RCL
U.S.D.C. Massachusetts

# Exhibit 3

# Jim Neebling

| | |
|---|---|
| From: | Varn, Larry [lvarn@sandw.com] |
| Sent: | Monday, January 20, 2003 8:55 AM |
| To: | Jim Neebling |
| Subject: | 1/29 |
| | |
| Importance: | High |

Jim,

I'll be in NJ next week.  Are you guys free for dinner 1/29?

Larry L. Varn
Sullivan & Worcester LLP
One Post Office Square
Boston, Massachusetts 02109
(617) 338-2965
lv@sandw.com

C0001

Jim Neebling

**From:** Varn, Larry [lvarn@sandw.com]
**Sent:** Tuesday, March 04, 2003 5:48 PM
**To:** 'apeslak@aol.com'
**Cc:** Miller, Samual; Jim Neebling
**Subject:** Haslon

I am taking Haslon's deposition on Thursday. Do you or Tom have any ideas for questions?

Are you joining us for dinner tomorrow night?  Is someplace on the west side of Manhattan near one of the tunnels to NJ okay?

Regards,

Larry L. Varn
Sullivan & Worcester LLP
One Post Office Square
Boston, Massachusetts 02109
(617) 338-2965
llv@sandw.com
---------------------------
Sent from my BlackBerry

C0002

Jim Neebling

| | |
|---|---|
| From: | Varn, Larry [lvarn@sandw.com] |
| Sent: | Monday, March 10, 2003 3:15 PM |
| To: | Jim Neebling |
| Subject: | Our Project |
| | |
| Importance: | High |

It looks like I will be in NJ again this Wednesday night.  I wonder if it make sense to take Tony D'Angelis out to dinner to follow up on the meeting I had with him about a month ago.

Larry L. Varn
Sullivan & Worcester LLP
One Post Office Square
Boston, Massachusetts 02109
(617) 338-2965
llv@sandw.com

C0003

**Jim Neebling**

From:  Varn, Larry [lvarn@sandw.com]
Sent:  Monday, March 31, 2003 5:55 PM
To:    Jim Neebling

Jim,

I can't come to NJ this week -- too many things in Boston.

Are you around next week?


Larry L. Varn
Sullivan & Worcester LLP
One Post Office Square
Boston, Massachusetts 02109
(617) 338-2965
llv@sandw.com
--------------------------
Sent from my BlackBerry

C0004

Jim Neebling

From:     Varn, Larry [lvarn@sandw.com]
Sent:     Monday, April 14, 2003 7:38 AM
To:       Jim Neebling
Subject:  Re: Systrans

Jim,

I can't open the attachment on the road but I am trying to reach you by phone. Please call me on cell.

Larry L. Varn
Sullivan & Worcester LLP
One Post Office Square
Boston, Massachusetts 02109
(617) 338-2965
llv@sandw.com
-----------------------
Sent from my BlackBerry


-----Original Message-----
From: JIM NEEBLING <JIMNEEBLING@systransfreight.com>
To: Larry L. Varn <lvarn@sandw.com>
Sent: Mon Apr 14 07:35:58 2003
Subject: Systrans

Larry

As per our conversation last week, I have attached a review of our situation.  Please let me know if we have a meeting with Richard.  We need your help!

Jim

**C0005**

**Jim Neebling**

| | |
|---|---|
| **From:** | Varn, Larry [lvarn@sandw.com] |
| **Sent:** | Sunday, May 04, 2003 5:35 AM |
| **To:** | Jim Neebling |
| **Subject:** | RE: |
| **Importance:** | High |

Jim,

Just curious.  Did you ever get the other records from Tony D?

If Vinny is available, I could possibly come to New Jersey Wednesday night and also meet Thursday morning.  Unfortunately, after thi week my schedule goes truly berserk for about three weeks.

Can you give me a call on Monday sometime?

Larry L. Varn
Sullivan & Worcester LLP
One Post Office Square
Boston, Massachusetts 02109
(617) 338-2965
llv@sandw.com

> -----Original Message-----
> From:      Jim Neebling [SMTP:jimneebling@systransfreight.com]
> Sent:      Wednesday, April 02, 2003 8:07 AM
> To: 'Varn, Larry'
> Subject:   RE:
> 
> I HOPE YOU ARE FEELING BETTER!   I SPOKE WITH TONY D, HE IS SUPPOSE TO
> BRING THE DOCUMENTS TO OUR DISPATCHER THIS AFTERNOON.  I SPOKE WITH
> KERRI IN OUR OFFICE, SHE SAID THE TRAILER CONTAINS A/P, A/R, PAYROLL,
> AND CORPORATE FILES.   THERE IS A CHANCE THE RECORDS ARE ON ONE OF THE
> 21 TRAILERS WE TOOK OVER FROM CAC LEASING.   I WILL KNOW THIS
> AFTERNOON.  IF SO, WE WILL MOVE THE TRAILER TO THE DOCK IN THE SPACE
> THAT WE RENT FROM I.M. FOR OUR REVIEW AND INVENTORY.
> 
> I WILL BE IN THE OFFICE UNTIL 11AM.  732-295-9914
> 
> JIMMY
> 
> -----Original Message-----
> From: Varn, Larry [mailto:lvarn@sandw.com]
> Sent: Monday, March 31, 2003 5:55 PM
> To: jimneebling@systransfreight.com'
> Subject:
> 
> Jim,
> 
> I can come to NJ this week -- too many things in Boston.
> 
> Are you around next week?
> 
> 
> 
> Larry L. Varn
> Sullivan & Worcester LLP
> One Post Office Square
> Boston, Massachusetts 02109
> (617) 338-2965
> llv@sandw.com

**C0006**

**Jim Neebling**

| | |
|---|---|
| From: | Varn, Larry [lvarn@sandw.com] |
| Sent: | Monday, May 19, 2003 6:33 AM |
| To: | 'apeslak@aol.com'; Jim Neebling |
| Subject: | Wed nite |

I am staying Wednesday night at the Hyatt in Princeton. A dinner meeting I had scheduled has been moved to breakfast on Thursday. Are either or both of you (and Tom) available for dinner on Wed.?


Larry L. Varn
Sullivan & Worcester LLP
One Post Office Square
Boston, Massachusetts 02109
(617) 338-2965
llv@sandw.com
----------------------------
Sent from my BlackBerry

C0007

Jim Neebling

**From:** Varn, Larry [lvarn@sandw.com]
**Sent:** Tuesday, June 10, 2003 10:41 AM
**To:** Jim Neebling
**Subject:** Dinner

Jim,

Winnie just called to suggest dinner at Stony Hill at 6 pm and sugested you and I coordinate.

I am in 2 depositions today in Woodbridge but should be done by 4 pm. Cell phone will be off and on during the day.

I'm staying at the Somerset Marriott this trip.

Larry L. Varn
Sullivan & Worcester LLP
One Post Office Square
Boston, Massachusetts 02109
(617) 338-2965
lvarn@sandw.com
--------------------
Sent from my BlackBerry

C0008

**Jim Neebling**

| | |
|---|---|
| From: | Varn, Larry [lvarn@sandw.com] |
| Sent: | Friday, June 20, 2003 3:55 PM |
| To: | Jim Neebling |
| Subject: | FW: scan |

Larry L. Varn
Sullivan & Worcester LLP
One Post Office Square
Boston, Massachusetts 02109
(617) 338-2965
llv@sandw.com

-----Original Message-----

| | |
|---|---|
| From: | SCANPC [SMTP:support@sandw.com] |
| Sent: | Friday, June 20, 2003 8:25 AM |
| To: | LLV |
| Subject: | scan |

Please open the attached document.
This document was sent to you using an HP Digital Sender.

| | |
|---|---|
| Digital Sender Model: | HP 9100C |
| Digital Sender Name: | 197.7.10.30 |
| Document type: | B/W Document |
| Number of pages: | 58 |
| Sent by: | SCANPC <support@sandw.com> |
| Attachment File Format: | Adobe PDF |

To view this document you need to use the Adobe Acrobat Reader.
For more information on the HP Digital Sender, Adobe Circulate,
or a free copy of the Acrobat reader please visit:



scan.pdf (2 MB)

http://www.digitalsender.hp.com/reader-en

C0009

43

Jim Neebling

Varn, Larry [lvarn@sandw.com]
Friday, June 20, 2003 3:56 PM
Jim Neebling
Pierce's motion

Pierce's MS).pdf (8
MB)

**C0010**

Varn, Larry [lvarn@sandw.com]
Thursday, June 26, 2003 9:03 AM
Jim Neebling
Fw: Iron Mountain's Opposition to Pierce's Motion for Summary Judgment


Opp. Ex. A
.0189713).PDF (5 M


Opp. Ex. B
0189714).PDF (39


Opp. Ex. C
0189715).PDF (60


Opp. Ex. D
0189716).PDF (512


Opp. Ex. E
0189717).PDF (306


Opp. Ex. F
0189720).PDF (72


Opp. Ex. G
0189721).PDF (26

Opp. Ex. H
0189722).PDF (127

        See attachments.

Larry L. Varn
Sullivan & Worcester LLP
One Post Office Square
Boston, Massachusetts 02109
(617) 338-2965
lvarn@sandw.com
----------------------
Sent from my BlackBerry


-----Original Message-----
From: do Couto, Cynthia <cdocouto@sandw.com>
To: Doreen Davis (E-mail) <dsdavis@morganlewis.com>;
Varn, Larry <lvarn@sandw.com>; Matlack, William <wmatlack@sandw.com>; Miller, Samual
<smiller@sandw.com>; Jacobson, Beth <bjacobson@sandw.com>
Sent: Tue Jun 24 17:30:40 2003
Subject: Iron Mountain's Opposition to Pierce's Motion for Summary Judgment

Pursuant to Beth Jacobson's request, attached please find Iron Mountain's Opposition to
Pierce's Motion for Summary Judgment, which is ready for your signature.  I am sending the
opposition to you in "Word format".

I am also attaching Exhibits A through H (clearly labeled in this email), which I have
also listed below for ease of reference, which should be attached directly to our
opposition, all bound together.  We would appreciate it if you would put this together and
hand deliver it to Cozen in the late afternoon.  Please send Beth a copy of the final
version.

Ex. A Deposition Transcript of deposition of Bob Miller

Ex. B Order as to Scope of Arbitration

Ex. C Pertinent Portions of Transcript of May 14 hearing

Ex. D Employment Agreement between Telespectrum and Goldschmidt

Ex. E Affidavit of Arturo Soto

Ex. F Exhibit C-8 (letter from Gold to Hayden)

Ex. G Exhibit C-67 "Deal Information" Sheet

Ex. H Affidavit of Vincent Brana

                                                        **C0011**

                            40

Jim Neebling

From: Varn, Larry [lvarn@sandw.com]
Sent: Monday, June 30, 2003 9:28 AM
To: Jim Neebling
Subject: Today

Are we on for 4 pm today?

Larry L. Varn
Sullivan & Worcester LLP
One Post Office Square
Boston, Massachusetts 02109
(617) 338-2965
llv@sandw.com
--------------------------
Sent from my BlackBerry

C0012

39

Larry <lvarn@sandw.com>
Jul 01 18:14:05 2003
RE: Teleconference

be bringing a guest also!    7pm is fine   how about chart house?
our friends interested in meeting  Jimmy "The Trailer"Neebling ?

ebling
ent
ns Freight Systems Inc.
732-295-9914
732-295-9980
732-684-4008
//www.systransfreight.com


Original Message-----
Varn, Larry [mailto:lvarn@sandw.com]
Tuesday, July 01, 2003 6:09 PM
Jim Neebling
: Re: Teleconference


for big dinner party in Philly tomorrow?  How is 7 pm?  Friends here want to meet




L. Varn
van & Worcester LLP
ost Office Square
Massachusetts 02109
338-2965
andw.com
-----------------
nt from my BlackBerry


Original Message-----
From: Jim Neebling <jimneebling@systransfreight.com>
To: Varn, Larry <lvarn@sandw.com>
Sent: Tue Jul 01 18:05:55 2003
Subject: FW: Teleconference


Jim Neebling
President
Systrans Freight Systems Inc.
Phone: 732-295-9914
732-295-9980
732-684-4008
http://www.systransfreight.com <http://www.systransfreight.com/>


Original Message-----
From: Gary L. Mason, Esq. [mailto:glm@kmrslaw.com]
Monday, June 30, 2003 4:48 PM
Carol Green; 'ART PESLAK'; 'Varn, Larry'
Jim Neebling
Subject: Re: Teleconference

ct info for Gary Mason:

C0013

33

**Jim Neebling**

From:        Varn, Larry [lvarn@sandw.com]
Sent:        Tuesday, July 01, 2003 6:18 PM
To:          Jim Neebling
Subject:     Re: Teleconference

Our friends are suggesting Jake's Firehouse. Yes, they want to meet "the Trailer"; they
are our Phlly counsel so all is well. Does your quest have the initials "TC"?


Larry L. Varn
Sullivan & Worcester LLP
One Post Office Square
Boston, Massachusetts 02109
(617) 338-2965
llv@sandw.com
-------------------------
Sent from my BlackBerry


-----Original Message-----
From: Jim Neebling <jimneebling@systransfreight.com>
To: Varn, Larry <lvarn@sandw.com>
Sent: Tue Jul 01 18:14:05 2003
Subject: RE: Teleconference

I will be bringing a guest also!   7pm is fine   how about chart house?
Are your friends interested in meeting  Jimmy "The Trailer"Neebling ?

Jim Neebling
President
Systrans Freight Systems Inc.
Phone:732-295-9914
Fax: 732-295-9980
Cell: 732-684-4008
http://www.systransfreight.com


-----Original Message-----
From: Varn, Larry [mailto:lvarn@sandw.com]
Sent: Tuesday, July 01, 2003 6:09 PM
To: Jim Neebling
Subject: Re: Teleconference

Got it.

Ready for big dinner party in Philly tomorrow?  How is 7 pm?  Friends here want to meet
you.


Larry L. Varn
Sullivan & Worcester LLP
One Post Office Square
Boston, Massachusetts 02109
(617) 338-2965
llv@sandw.com
-------------------------

C0014

35

Jim Neebling

| | |
|---|---|
| From: | Varn, Larry [lvarn@sandw.com] |
| Sent: | Wednesday, July 02, 2003 10:31 AM |
| To: | Jim Neebling |
| Subject: | Fw: Jack's Firehouse |

See below. See you around 7 pm.

Larry L. Varn
Sullivan & Worcester LLP
One Post Office Square
Boston, Massachusetts 02109
(617) 338-2965
llv@sandw.com
----------------------------
Sent from my BlackBerry

-----Original Message-----
From: dsdavis@morganlewis.com <dsdavis@morganlewis.com>
To: lvarn@sandw.com <lvarn@sandw.com>
Sent: Wed Jul 02 09:06:33 2003
Subject: Fw: Jack's Firehouse

Here's address of restaurant.  Reservation is at 7pm in the name of Davis.

----------------------------
Sent from my BlackBerry Wireless Handheld


    From: Jennie Sacca
    Sent: 07/02/2003 08:44 AM
    To: Doreen S. Davis/PH/MLBLaw@MorganLewis
    Subject: Jack's Firehouse


Jack's Firehouse
2130 Fairmount Ave
Philadelphia, PA  19130
215-232-9000




Jennie Sacca
Morgan Lewis & Bockius
1701 Market Street
Philadelphia, PA  19103
(215) 963-4893
Fax: (215) 963-5001

C0015

**Jim Neebling**

From:          Varn, Larry [lvarn@sandw.com]
Sent:          Wednesday, July 09, 2003 6:58 AM
To:            Jim Neebling

Let's talk again this morning.

Larry L. Varn
Sullivan & Worcester LLP
One Post Office Square
Boston, Massachusetts 02109
(617) 338-2965
FAX: (617) 338-2880
lvarn@sandw.com
www.sandw.com

NOTE: Effective June 23, 2003, my only email address is "lvarn@sandw.com".  The former address, "llv@sandw.com", will no longer work.

C0016

**Jim Neebling**

From:       Varn, Larry [lvarn@sandw.com]
Sent:       Friday, July 11, 2003 3:13 PM
To:         Jim Neebling
Subject:    Re: Pierce

The subpoenas are from me so just a formality.


L. Varn
Sullivan & Worcester LLP
One Post Office Square
Boston, Massachusetts 02109
(617) 338-2965
lvarn@sandw.com
---------------------
Sent from my BlackBerry


-----Original Message-----
From: Jim Neebling <jimneebling@systransfreight.com>
To: lvarn@sandw.com <lvarn@sandw.com>
Sent: Fri Jul 11 15:11:57 2003
Subject: Re: Pierce

Where will they serve us.
---------------------
Sent from my BlackBerry Wireless Handheld


-----Original Message-----
From: Varn, Larry <lvarn@sandw.com>
To: Jim Neebling <jimneebling@systransfreight.com>
Sent: Fri Jul 11 13:43:56 2003
Subject: Pierce


Just a heads up. You and Keri will get subpoenas for the Pierce trial. I'm at 805-984-0819
on cell for the next few days. Have a good weekend.


Larry L. Varn
Sullivan & Worcester LLP
One Post Office Square
Boston, Massachusetts 02109
(617) 338-2965
lvarn@sandw.com
---------------------
Sent from my BlackBerry

**C0017**

**Jim Neebling**

| | |
|---|---|
| From: | Varn, Larry [lvarn@sandw.com] |
| Sent: | Friday, July 11, 2003 3:13 PM |
| To: | Jim Neebling |
| Subject: | Re: Pierce |

Systrans office.


Larry L. Varn
Sullivan & Worcester LLP
One Post Office Square
Boston, Massachusetts 02109
(617) 338-2965
lvarn@sandw.com
-------------------------
Sent from my BlackBerry


-----Original Message-----
From: Jim Neebling <jimneebling@systransfreight.com>
To: lvarn@sandw.com <lvarn@sandw.com>
Sent: Fri Jul 11 15:11:57 2003
Subject: Re: Pierce

Where will they serve us.
-------------------------
Sent from my BlackBerry Wireless Handheld


-----Original Message-----
From: Varn, Larry <lvarn@sandw.com>
To: Jim Neebling <jimneebling@systransfreight.com>
Sent: Fri Jul 11 13:43:56 2003
Subject: Pierce

Jim,

Just a heads up. You and Keri will get subpoenas for the Pierce trial. I'm at 805-984-0819
or cell for the next few days. Have a good weekend.


Larry L. Varn
Sullivan & Worcester LLP
One Post Office Square
Boston, Massachusetts 02109
(617) 338-2965
lvarn@sandw.com
-------------------------
Sent from my BlackBerry

**C0018**

Jim Neebling

From: Varn, Larry [lvarn@sandw.com]
Sent: Friday, July 11, 2003 4:16 PM
To: Jim Neebling
Subject: Re: Pierce

Thanks. It will be early next week. Anybody can accept service on your and Keri's behalf so don't change any plans. Are you going to Texas, etc.? Did you talk to TC about Vumbaco?

Have a good weekend. It is sunny and warm in southern Calif.

Larry L. Varn
Sullivan & Worcester LLP
One Post Office Square
Boston, Massachusetts 02109
(617) 338-2965
lvarn@sandw.com
--------------------------
Sent from my BlackBerry

-----Original Message-----
From: Jim Neebling <jimneebling@systransfreight.com>
To: Varn, Larry <lvarn@sandw.com>
Sent: Fri Jul 11 16:14:16 2003
Subject: RE: Pierce

OK   WE JUST WANTED TO MAKE SURE WE WERE AVAILABLE

Jim Neebling
President
Systrans Freight Systems Inc.
Phone:732-295-9914  Ext. 20
Fax: 732-295-9980
Cell: 732-684-4008
http://www.systransfreight.com

-----Original Message-----
From: Varn, Larry [mailto:lvarn@sandw.com]
Sent: Friday, July 11, 2003 3:13 PM
To: Jim Neebling
Subject: Re: Pierce

PS. The subpoenas are from me so just a formality.

Larry L. Varn
Sullivan & Worcester LLP
One Post Office Square
Boston, Massachusetts 02109
(617) 338-2965
lvarn@sandw.com
--------------------------
Sent from my BlackBerry

-----Original Message-----
From: Jim Neebling <jimneebling@systransfreight.com>
To: lvarn@sandw.com <lvarn@sandw.com>

C0019

24

Sent: Fri Jul 11 15:11:57 2003
Subject: Re: Pierce

Where will they serve us.
---------------------------
Sent from my BlackBerry Wireless Handheld


-----Original Message-----
From: Varn, Larry <lvarn@sandw.com>
To: Jim Neebling <jimneebling@systransfreight.com>
Sent: Fri Jul 11 13:43:56 2003
Subject: Pierce

Jim,

Just a heads up. You and Keri will get subpoenas for the Pierce trial. I'm at 805-984-0819
or cell for the next few days. Have a good weekend.


Larry L. Varn
Sullivan & Worcester LLP
One Post Office Square
Boston, Massachusetts 02109
(617) 338-2965
lvarn@sandw.com
---------------------------
Sent from my BlackBerry

**C0020**

**Jim Neebling**

| | |
|---|---|
| **From:** | Varn, Larry [lvarn@sandw.com] |
| **Sent:** | Friday, July 25, 2003 3:11 PM |
| **To:** | Doreen S. Davis Esq. (E-mail) |
| **Cc:** | Charles G. Moore (E-mail); Arthur M. Peslak (E-mail); Jim Neebling; Jacobson, Beth |
| **Subject:** | Hotel |

Doreen,

Can your office ensure a hotel room in Philly Tues nite for

Charles Moore
Tom Carr
Keri Potestivo
Jim Neebling
Arthur Peslak

Thanks much.

Larry L. Varn
Sullivan & Worcester LLP
One Post Office Square
Boston, Massachusetts 02109
(617) 338-2965
FAX: (617) 338-2880
lvarn@sandw.com
www.sandw.com

NOTE: Effective June 23, 2003, my only email address is "lvarn@sandw.com". The former address, "llv@sandw.com", will no longer work.

C0021

# Jim Neebling

| | |
|---|---|
| From: | Varn, Larry [lvarn@sandw.com] |
| Sent: | Friday, July 25, 2003 3:18 PM |
| To: | Jim Neebling |
| Subject: | Misc |

I need to speak with you and Tom ASAP.

Larry L. Varn
Sullivan & Worcester LLP
One Post Office Square
Boston, Massachusetts 02109
(617) 338-2965
FAX:  (617) 338-2880
lvarn@sandw.com
www.sandw.com

NOTE:  Effective June 23, 2003, my only email address is "lvarn@sandw.com".  The former address, "llv@sandw.com", will no longer work.

C0022

Jim Neebling

| | |
|---|---|
| From: | Varn, Larry [lvarn@sandw.com] |
| Sent: | Friday, July 25, 2003 4:38 PM |
| To: | O'Connor, Patrick J. |
| Cc: | Kircher, Philip G.; Miller, Melanie A.; Barnoski, John C.; Doreen S. Davis Esq. (E-mail); Jacobson, Beth |
| Subject: | RE: Iron Mountain v. Pierce |

Pat,

We currently expect that the following persons will be available, as appropriate, on Wednesday morning regarding TE-109:

Watzke
Carr
Peslak
Moore
Ginsburg
Myself

We also currently expect that the following persons will be available, as appropriate, that day regarding the "trailer":

Neebling
Potestivo
Moore
Myself

I'll be making various calls this weekend and will email you when I have a firm idea of the witness lineup for Tuesday.

Larry L. Varn
Sullivan & Worcester LLP
One Post Office Square
Boston, Massachusetts 02109
(617) 338-2965
FAX:  (617) 338-2880
lvarn@sandw.com
www.sandw.com

NOTE:  Effective June 23, 2003, my only email address is "lvarn@sandw.com".  The former address, "llv@sandw.com", will no longer work.

-----Original Message-----
From: O'Connor, Patrick J. [mailto:POConnor@cozen.com]
Sent: Thursday, July 24, 2003 11:18 AM
To: lvarn@sandw.com
Cc: Kircher, Philip G.; Miller, Melanie A.; Barnoski, John C.
Subject: Iron Mountain v. Pierce

Larry,

Please advise who you are going to produce as witnesses on Wednesday morning in connection with the admissibility of the tape (Claimant's exhibit 109).  I am currently looking into the availability of our witnesses.

Patrick J. O'Connor
Cozen O'Connor
1900 Market Street

C0023

**Jim Neebling**

| | |
|---|---|
| **From:** | Varn, Larry [lvarn@sandw.com] |
| **Sent:** | Friday, July 25, 2003 5:06 PM |
| **To:** | apeslak@aol.com; Jim Neebling |
| **Subject:** | Fw: Travel Itinerary 29JUL PHL CARR |



60296812.HTM (3
KB)

FYI

Larry L. Varn
Sullivan & Worcester LLP
One Post Office Square
Boston, Massachusetts 02109
(617) 338-2965
lvarn@sandw.com
------------------------
Sent from my BlackBerry


-----Original Message-----
From: jsacca@morganlewis.com <jsacca@morganlewis.com>
To: lvarn@sandw.com <lvarn@sandw.com>
Sent: Fri Jul 25 16:54:11 2003
Subject: Travel Itinerary 29JUL PHL CARR

Jennie Sacca
Morgan Lewis & Bockius
1701 Market Street
Philadelphia, PA  19103
(215) 963-4893
fax: (215) 963-5001
----- Forwarded by Jennie Sacca/PH/MLBLaw on 07/25/03 04:53 PM -----

                    "WTSG/Lawyers'
                    Travel                    To:      "CARR/TOM"
<JSACCA@MORGANLEWIS.COM>
                    Itin-TravelMAIL"          cc:
                    <resfax@wtsg.com>         Subject:  Travel Itinerary
29JUL PHL CARR
                    07/25/03 04:52 PM




**Please do not reply to this e-mail.**
**It will not go back to your travel counselor.**

CARR/TOM                                25Jul03  04:50pm
                                        DOREEN DAVIS
                                        MORGAN LEWIS AND BOCKIUS
                                        1701 MARKET ST, STE 800
                                        PHILADELPHIA PA 19103
                                        ATTN JENNIE SACCA X4893


Booking locator: JMNXUP

        *** DUE TO HEIGHTENED SECURITY, PLEASE ALLOW
        90MINS CHECK IN FOR DOMESTIC FLIGHTS
        2HRS CHECK IN FOR INTERNATIONAL FLIGHTS.                    **C0024**
        VALID GOVERNMENT ID IS REQUIRED FOR ALL FLTS

```
BOARDING PASS REQUIRED BEFORE APPROACHING SECURITY
*-*-*-*-*-*-*-*-*-*-*-*-*-*-*-*-*-*-*-*-*-*-*

29Jul03               Tuesday
Hotel Four Seasons Hotels Four Seasons Philadelphia    Phone:215-963-1500
      1 LOGAN SQUARE, PHILADELPHIA PA 19103    Fax:215-963-9562
      Number of Rooms: 1   Room Guaranteed
      Confirmation#: 70579837   Rate: 210.00USD
      Check Out: 30Jul Wednesday (1 Night)
      Cancel By  6 PM on Date of Arrival


      KING BED NON SMOKING


-----------------------------------------

Please review all itinerary information with your Travel Consultant. Please be sure when
travelling to have required ID at check-in.
********************************************************************
We value your input and welcome you to fill out our online survey:
http://www.wtsg.com/survey
********************************************************************
To sign up for WTSG/LTS's weekly newsletter, Travel Snap Shot, please email
jachim@wtsg.com or go to http://www.wtsg.com/snapshot
********************************************************************
Going on an international trip? Order Foreign Currencies Online at
http://www.wtsg.com/currency
********************************************************************


FOR ENROUTE TRAVEL ASSISTANCE DURING BUSINESS
HOURS, CONTACT YOUR TRAVEL DEPARTMENT AT ...
877-301-7581 PHILADELPHIA / 877-302-7404 WASHINGTON 800-966-0229 LOS ANGELES / 877-302-
1860 NEW YORK FOR AFTER HOURS, CALL 800-876-4922, OR FROM CITIES OR COUNTRIES OUTSIDE U.S.
AND CANADA, CHECK WITH YOUR AGENT OR CALL 516-624-3194 COLLECT...... TICKETS CHARGED TO
PERSONAL CREDIT CARD
I*
```

-----------------------------------------

ResFAX(r) Copyright(c) 1992-2003 Cornerstone Information Systems, Inc., Bloomington, IN

***ResFAX Message ID 1620860***
***ResFAX Itinerary E-Mail***

(See attached file: 60296812.HTM)

********************************************************************
This e-mail message is intended only for the personal use of the recipient(s) named above.
This message may be an attorney-client communication and as such privileged and
confidential.  If you are not an intended recipient, you may not review, copy or
distribute this
message. If you have received this communication in error, please notify us immediately by
e-mail and delete the original message.
***************************************************coldscn02

**C0025**

I wanted to explain the status of the Freehold move.  I last sent Mike Holland an email which explained that the move would take place no later then 12/27, based on the new facility being ready, or a backup facility which I made arrangements in the event we were not able to move into the new building.  I have looked very bad during these discussions and if I was in Mike's shoes more then upset.

We originally moved to your location as a good alternative for Systrans, and a revenue source for you.  You accommodated us with free space during our move in and we began normal operations and rental payments.  I entered into an agreement with Freightpro (from Kansas City) to manage the account in December 2002.  Freightpro contracted with John Lehmann (pioneer logistics) to run the warehouse and trucking operations.  Systrans basically made our money off the top after Freightpro paid the rent and pioneer.  In July 2003 Tom Carr's friend decided to purchase a building in South Brunswick.  Tom structured a deal for Ben Kirsch to take over the deal from Freightpro as of August 1, 2003.  As of that date I basically had no control over any billing, accounts receivable, pioneer logistics, or Tom.  Kirsch Enterprises took over the contract, pioneer took over the billing, and Tom has repeated time and time again that he will "workout the rent" with Iron Mountain.  I have told Tom on numerous occasions that Iron Mountain views this as Systrans and Jim Neebling.

I have taken Mike Hollands issue very serious and have had repeated conversations with John(pioneer) Ben (Kirsch Development) and Tom on the urgent nature of the move.  Some of the delay is simply the Town of South Brunswick, and I feel they will have the approvals by Tuesday.  I had dinner with Larry 2 weeks ago and gave him the overview.  He suggested having a "plan B".  The next day I secured temporary space, additional trucks, and a full plan to move regardless of the new space being ready.  The approvals were then delayed and I wanted to go to the backup plan.  John Lehmann told me Tom said to wait, I called Tom 10 times and got no reply. Tom returned my call at 3 am and left me a message saying that he will speak wit Ben and Larry and get the move completed when the approvals are completed.

Bob Miller and Mike Holland have asked me for accurate dates and professionalism and I have attempted to respond with the same, however this control of Tom has over the move, Lehmann, the contract and his feelings that he can free lance a deal with Iron Mountain creates an atmosphere between Bob and Mike as if I'm being disrespectful, and basically doing what we want.  I believe the move will start this week and I believe it will take 7-10 days now that the holiday window advantage has passed which would have allowed us to move within 5-7 days.

I'm not running from responsibility or from my commitment to Iron Mountain.  I'm willing to structure payment of the rent over time and deduct the amount from money I owe Tom, and I'm willing to pay Mike an amount to offset any financial impact of the delay and deduct from Tom.  I called Larry to advise him of this problem.  Larry has recommended Charlie Moore have a meeting with Tom.  I will be meeting with Tom, Ben, and John today to again revisit the issue and communicate back to you.  I have had my difficulties trying to manage and control Tom and his feeling that his history affords him to act in this manner.

Please let me know if you want me to contact Bob and Mike and or send this email to them.  I apologize for this situation.

Jim Neebling
President
NTS/Systrans
Phone:732-295-9914
Fax: 732-295-9980
Cell: 732-684-4008
http://www.systransfreight.com

C0026

**Jim Neebling**

| | |
|---|---|
| **From:** | Varn, Larry [lvarn@sandw.com] |
| **Sent:** | Friday, July 25, 2003 5:06 PM |
| **To:** | apeslak@aol.com; Jim Neebling |
| **Subject:** | Fw: Travel Itinerary 29JUL PHL CARR |

60296812.HTM (3
KB)        FYI

Larry L. Varn
Sullivan & Worcester LLP
One Post Office Square
Boston, Massachusetts 02109
(617) 338-2965
lvarn@sandw.com
-------------------------
Sent from my BlackBerry


-----Original Message-----     .
From: jsacca@morganlewis.com <jsacca@morganlewis.com>
To: lvarn@sandw.com <lvarn@sandw.com>
Sent: Fri Jul 25 16:54:11 2003
Subject: Travel Itinerary 29JUL PHL CARR

Jennie Sacca
Morgan Lewis & Bockius
1701 Market Street
Philadelphia, PA  19103
(215) 963-4893
fax: (215) 963-5001
----- Forwarded by Jennie Sacca/PH/MLBLaw on 07/25/03 04:53 PM -----
                    "WTSG/Lawyers'
                    Travel                    To:        "CARR/TOM"
<JSACCA@MORGANLEWIS.COM>
                    Itin-TravelMAIL"          cc:
                    <resfax@wtsg.com>         Subject:   Travel Itinerary
29JUL PHL CARR
                    07/25/03 04:52 PM



**Please do not reply to this e-mail.**
**It will not go back to your travel counselor.**

CARR/TOM                               25Jul03  04:50pm
                                       DOREEN DAVIS
                                       MORGAN LEWIS AND BOCKIUS
                                       1701 MARKET ST, STE 800
                                       PHILADELPHIA PA 19103
                                       ATTN JENNIE SACCA X4893

Booking locator: JMNXUP

     *** DUE TO HEIGHTENED SECURITY, PLEASE ALLOW
     90MINS CHECK IN FOR DOMESTIC FLIGHTS
     2HRS CHECK IN FOR INTERNATIONAL FLIGHTS.                      **C0027**
     VALID GOVERNMENT ID IS REQUIRED FOR ALL FLTS

18

Jim Neebling

| | |
|---|---|
| From: | Varn, Larry [lvarn@sandw.com] |
| Sent: | Tuesday, July 29, 2003 9:58 AM |
| To: | Jim Neebling |
| Subject: | Re: |

Can you get a room?

I'm not sure when I will get there for sure

Larry L. Varn
Sullivan & Worcester LLP
One Post Office Square
Boston, Massachusetts 02109
(617) 338-2965
lvarn@sandw.com
--------------------------
Sent from my BlackBerry


-----Original Message-----
From: Jim Neebling <jimneebling@systransfreight.com>
To: lvarn@sandw.com <lvarn@sandw.com>
Sent: Tue Jul 29 09:55:35 2003
Subject: Re:

4 seasons lobby
--------------------------
Sent from my BlackBerry Wireless Handheld


-----Original Message-----
From: Varn, Larry <lvarn@sandw.com>
To: Jim Neebling <jimneebling@systransfreight.com>
Sent: Tue Jul 29 09:35:41 2003
Subject:

How and where are you?


Larry L. Varn
Sullivan & Worcester LLP
One Post Office Square
Boston, Massachusetts 02109
(617) 338-2965
lvarn@sandw.com
--------------------------
Sent from my BlackBerry

C0028

## Jim Neebling

| | |
|---|---|
| **From:** | Varn, Larry [lvarn@sandw.com] |
| **Sent:** | Thursday, August 14, 2003 3:08 PM |
| **To:** | Jim Neebling |
| **Subject:** | Maine |

Jim,

I got your message. Boarding a flight now. Can you call me in Maine tomorrow?  Where are you tonight?

Larry L. Varn
Sullivan & Worcester LLP
One Post Office Square
Boston, Massachusetts 02109
(617) 338-2965
lvarn@sandw.com
---------------------------
Sent from my BlackBerry

**C0029**

11

## Jim Neebling

**From:**          Varn, Larry [lvarn@sandw.com]
**Sent:**          Monday, September 08, 2003 7:52 AM
**To:**            Jim Neebling

If you have the chance could you give me a call sometime today?


Larry L. Varn
Sullivan & Worcester LLP
One Post Office Square
Boston, Massachusetts 02109
(617) 338-2965
lvarn@sandw.com
---------------------------
Sent from my BlackBerry

**C0030**

**Jim Neebling**

From:  Varn, Larry [lvarn@sandw.com]
Sent:  Wednesday, September 10, 2003 9:08 AM
To:    Jim Neebling
Subject:  Boston

Jim,

If you are still coming to Boston today I am having dinner in the city with Charlie. You
are very welcome to join us. We're eating at Plaza III Kansas City Grill, which is a fine
steak house in the Faneuil Hall Marketplace complex.  We're meeting at 6 pm.


Larry L. Varn
Sullivan & Worcester LLP
One Post Office Square
Boston, Massachusetts 02109
(617) 338-2965
lvarn@sandw.com
--------------------------
Sent from my BlackBerry

C0031

**Jim Neebling**

| | |
|---|---|
| **From:** | Varn, Larry [lvarn@sandw.com] |
| **Sent:** | Thursday, September 25, 2003 9:12 PM |
| **To:** | Jim Neebling |
| **Subject:** | Re: Misc. |

Just landed Portland.

There is a funky place in Faneuil Hall with great fish if you're staying downtown.


Larry L. Varn
Sullivan & Worcester LLP
One Post Office Square
Boston, Massachusetts 02109
(617) 338-2965
lvarn@sandw.com
--------------------------
Sent from my BlackBerry

-----Original Message-----
From: Jim Neebling <jimneebling@systransfreight.com>
To: Varn, Larry <lvarn@sandw.com>
Sent: Thu Sep 25 21:07:17 2003
Subject: Re: Misc.

Seafood.  My treat.   Where are you.
--------------------------
Sent from my BlackBerry Wireless Handheld

-----Original Message-----
From: Varn, Larry <lvarn@sandw.com>
To: Jim Neebling <jimneebling@systransfreight.com>
Sent: Thu Sep 25 20:59:03 2003
Subject: Re: Misc.

What do you want to eat?  Staying downtown or in the burbs?


Larry L. Varn
Sullivan & Worcester LLP
One Post Office Square
Boston, Massachusetts 02109
(617) 338-2965
lvarn@sandw.com
--------------------------
Sent from my BlackBerry

-----Original Message-----
From: Jim Neebling <jimneebling@systransfreight.com>
To: Varn, Larry <lvarn@sandw.com>
Sent: Thu Sep 25 19:59:35 2003
Subject: Re: Misc.

Yes.  I will buy dinner
--------------------------
Sent from my BlackBerry Wireless Handheld

**C0032**

-----Original Message-----
From: Varn, Larry <lvarn@sandw.com>
To: Jim Neebling <jimneebling@systransfreight.com>
Sent: Thu Sep 25 19:24:22 2003
Subject: Misc.

Jim,

Back from Texas?

Are you still planning on being in Boston Monday night?


Larry L. Varn
Sullivan & Worcester LLP
One Post Office Square
Boston, Massachusetts 02109
(617) 338-2965
lvarn@sandw.com
-------------------------
Sent from my BlackBerry

**C0033**

**Jim Neebling**

| | |
|---|---|
| **From:** | Varn, Larry [lvarn@sandw.com] |
| **Sent:** | Thursday, September 25, 2003 8:59 PM |
| **To:** | Jim Neebling |
| **Subject:** | Re: Misc. |

What do you want to eat?  Staying downtown or in the burbs?


Larry L. Varn
Sullivan & Worcester LLP
One Post Office Square
Boston, Massachusetts 02109
(617) 338-2965
lvarn@sandw.com
--------------------------
Sent from my BlackBerry

-----Original Message-----
From: Jim Neebling <jimneebling@systransfreight.com>
To: Varn, Larry <lvarn@sandw.com>
Sent: Thu Sep 25 19:59:35 2003
Subject: Re: Misc.

Yes.  I will buy dinner
--------------------------
Sent from my BlackBerry Wireless Handheld

-----Original Message-----
From: Varn, Larry <lvarn@sandw.com>
To: Jim Neebling <jimneebling@systransfreight.com>
Sent: Thu Sep 25 19:24:22 2003
Subject: Misc.

Jim,

Back from Texas?

Are you still planning on being in Boston Monday night?


Larry L. Varn
Sullivan & Worcester LLP
One Post Office Square
Boston, Massachusetts 02109
(617) 338-2965
lvarn@sandw.com
--------------------------
Sent from my BlackBerry

C0034

**Jim Neebling**

| | |
|---|---|
| From: | Varn, Larry [lvarn@sandw.com] |
| Sent: | Friday, November 14, 2003 1:05 PM |
| To: | Jim Neebling; Vincent P. Brana (E-mail) |
| Subject: | Dinner on December 9th or 10th? |

Jim and Vin,

I have just scheduled a business meeting in northern New Jersey for the morning of December 10th, so I'll probably come down to either New York or Newark the night before.  I think it would be a great idea to have some pasta and vino.  Are you free either 12/9 or 12/10?

Larry L. Varn
Sullivan & Worcester LLP
One Post Office Square
Boston, MA 02109
Direct Dial:  (617) 338-2965
FAX:  (617) 338-2880
Email:  lvarn@sandw.com
www.sandw.com

*This message is intended to be confidential and may be legally privileged.*

C0035

1

## Jim Neebling

From:          Jim Neebling
Sent:          Tuesday, November 02, 2004 8:13 AM
To:            'lvarn@sandw.com'
Subject:       Meeting

Can we meet 5 pm at Casa Daunte in Jersey City. I only have an hour and a half
---------------------------
Sent from my BlackBerry Wireless Handheld

C0036

**Jim Neebling**

**From:**          Jim Neebling
**Sent:**          Sunday, March 06, 2005 3:07 PM
**To:**            'Varn, Larry'
**Subject:**       RE: Systrans

Larry

My position remains the same. Tom funded me with the business relationship, is owed those funds with interest. Tom is owed a commission on all sales that he has influence on, or has sold the account on my behalf. Tom has no operational responsibilities, has not been an employee, nor access to operational information. However, the verbiage in your document "legal, equitable, financial or other interest" "claim against Systrans" is confusing to me in relation to my obligations, and or Systrans obligations to Tom.

I want to review the wording and want to fully understand what those terms mean and don't mean prior to signing this. The wording seems very broad and seems as if it could mean or not mean a lot of things. Given all that has happen, I want advice prior to signing this.

Jim Neebling
President
NTS/Systrans
Phone:732-295-9914
Fax: 732-295-9980
Cell: 732-684-7868
http://www.ntslogistics.com

-----Original Message-----
**From:** Varn, Larry [mailto:lvarn@sandw.com]
**Sent:** Friday, March 04, 2005 2:57 PM
**To:** Jim Neebling
**Cc:** Garry B. Watzke Esq. (E-mail); Gross, Ira
**Subject:** Systrans

Jim,

Thanks for your calls yesterday and today. Based upon the information you have given us and the letter from Mr. McCaffrey that I received yesterday (copy attached in .pdf format), I trust that the enclosed certification is accurate and can be executed, notarized and returned. Please advise at your early convenience.

Regards,

Larry L. Varn
Sullivan & Worcester LLP
One Post Office Square
Boston, MA 02109
Direct Dial: (617) 338-2965
FAX: (617) 338-2880
Email: lvarn@sandw.com
www.sandw.com

*This message is intended to be confidential and may be legally privileged.*       **C0037**

1

While I was down with the flu over New Years vacation I had some time to review the program, results, and objectives of the program. Your assistance has been great! You have helped the process, problems, and keep the momentum going. I wanted to write this to you rather then sending this to Bob, or Chris, because you have an ability to make things happen and I owe you the respect to follow the chain of command. Prior to our presentation in August 2002, it was determined that Iron Mountain had goals to improve the courier program in the area of compliance, insurance, security, technology, and rate structure. Our goals were to establish a business model that would achieve your objectives by using technology to manage the courier process, test, and rapidly expand to become cash flow positive and profitable. This objective would allow Systrans to repay Tom Carr money loaned to me to establish the business. Although the Tom Carr issue was semi unrelated, it was always known that I would build the business to repay the capital, and loan Tom money during this long process.

After a long negotiation Bob Miller signed the contract, Richard approved an up front payment to give the program a running start, and we began the test. We had good test and pushed to begin the New England and the Texas area. These areas worked to increase the volume but fell short of the "critical mass" needed for our program to become cash flow positive and profitable. The Texas expansion resulted in no business in Austin, or San Antonio. The freight business (LTL and Truckload) resulted in almost no business and any market given to Systrans other then Baltimore.

I know you pushed to respond to my requests for "my home port" area, NJ, NY, PA., but instead we got the mid west. I appreciate business anywhere and because our model is transaction based, volume is volume. But the areas resulted in no volume in Milwaukee, Detroit, or Toronto. The business in Chicago, Kansas City, and Minneapolis will help us improve our volume but falls short of the program reaching a break even. Our current sales range 30-35 k per week and the new markets will add an additional 5k per week. Our break even is 50 k per week. We have currently depleted the advance money for the startup phase which funded the negative budget during the startup period. Our margin runs 18-22% on 30-35 k per week in sales. This formula generates $ 7000.00 per week in margin towards our budget which has a burn rate of $ 11,000 per week which does not include any capital repayment or loans to Tom. We have paid the quarterly technology payment for Q1 of 28K, and the insurance payment for Q1 of 18K, with the volume, puts an enormous strain on our cash flow. I realize that the Tom issue is one that is not spoken about however it is a situation that has been well known to key people involved in the legal situation.

The situation with the business relationship has evolved into a situation which is not mutually beneficial, given the original structure and commitment made during this entire situation. I know everyone has had the best intentions, but the end result is a problem that can be solved with volume! If the volume of business was larger we would be self sufficient. We need the business in NJ, NY, and PA as soon as possible. I know this is unusual for a request from a vendor, but this is not a normal situation. If I can have the local business I can solve issues with Tom, and the overall program to turn the corner. I recently had dinner with Larry Varn (handling the court case) who said he did not have a problem with Systrans handling the NJ, NY, PA markets. I realize that a lot of people had involvement in the original structure of the agreement, I don't want you to feel that it is your responsibility to make things perfect with an email, however I didn't want to go to others without you telling me so. I remember 15 months ago when you told me "without a blessing from Boston I'm going nowhere" after I took your advice things began to happen.

I would like to schedule a meeting as soon as possible with whom ever you feel needed to make this decision.

Jim Neebling
President
NTS/Systrans
Phone:732-295-9914

C0038

Iron Mountain, et al. v. Carr & Carr v. Iron Mountain, et al.
Civil Action No. 05-10890 RCL
U.S.D.C. Massachusetts

# Exhibit 4

Varn, Larry [lvarn@sandw.com]
Thursday, June 26, 2003 9:03 AM
Jim Neebling
Fw: Iron Mountain's Opposition to Pierce's Motion for Summary Judgment

    

| IM Opposition to Pierce's Summ... | Opp. Ex. A 0189713).PDF (5 M | Opp. Ex. B 0189714).PDF (39 | Opp. Ex. C 0189715).PDF (60 | Opp. Ex. D 0189716).PDF (512 | Opp. Ex. E 0189717).PDF (306 | Opp. Ex. F 0189720).PDF (72 |

| Opp. Ex. G 0189721).PDF (26 | Opp. Ex. H 0189722).PDF (127 |

See attachments.

Larry L. Varn
Sullivan & Worcester LLP
One Post Office Square
Boston, Massachusetts 02109
(617) 338-2965
lvarn@sandw.com
------------------------
Sent from my BlackBerry

-----Original Message-----
From: do Couto, Cynthia <cdocouto@sandw.com>
To: Doreen Davis (E-mail) <dsdavis@morganlewis.com>
CC: Varn, Larry <lvarn@sandw.com>; Matlack, William <wmatlack@sandw.com>; Miller, Samual <smiller@sandw.com>; Jacobson, Beth <bjacobson@sandw.com>
Sent: Tue Jun 24 17:30:40 2003
Subject: Iron Mountain's Opposition to Pierce's Motion for Summary Judgment

Pursuant to Beth Jacobson's request, attached please find Iron Mountain's Opposition to Pierce's Motion for Summary Judgment, which is ready for your signature.  I am sending the Opposition to you in "Word format".

I am also attaching Exhibits A through H (clearly labeled in this email), which I have also listed below for ease of reference, which should be attached directly to our Opposition, all bound together.  We would appreciate it if you would put this together and hand deliver it to Cozen in the late afternoon.  Please send Beth a copy of the final version.

Ex. A Deposition Transcript of deposition of Bob Miller

Ex. B Order as to Scope of Arbitration

Ex. C Pertinent Portions of Transcript of May 14 hearing

Ex. D Employment Agreement between Telespectrum and Goldschmidt

Ex. E Affidavit of Arturo Soto

Ex. F Exhibit C-8 (letter from Gold to Hayden)

Ex. G Exhibit C-67 "Deal Information" Sheet

Ex. H Affidavit of Vincent Brana

C0011

# Sēquedex GLOBAL INFORMATION MANAGEMENT

Corporate Headquarters
2550 Eisenhower Avenue
Building A
Norristown, PA 19403
1-610-666-8300
Fax: 1-610-666-8308

3 Security Drive
Cranbury Business Park
Cranbury, NJ 08512

sequedex.com

February 9, 2001



J. Anthony Hayden
President
Hayden Real Estate, Inc.
Two Tower Bridge, Suite 100
1 Fayette Street
Conshohocken, PA 19428

Dear Tony,

This letter is intended to serve as a summary of our previous discussions pertaining to Sequedex, LLC. Specifically, I would like to highlight our impending growth plans and associated capital requirements. As you are aware, our company was formed as a result of unrealized expectations, resulting from the Iron Mountain acquisition of Pierce Leahy Corp. in early 2000. Myself and a number of key ex-Pierce Leahy managers, with an average of 15 years in the records management industry, embarked on a plan to develop a service-oriented company that can effectively compete for business in the New York Metro marketplace. Our initial focus on the New York Metro marketplace, is largely a result of our excellent relationships with Fortune 100 companies that have a local and national presence. To that end, we successfully raised $5 million of initial capital, exclusively from "friends and family" that have a good understanding of the industry and confidence in the management team. As we began making contact with our former clients, we were encouraged by the number of significant opportunities outside of our original target market. However, for us to take full advantage of these opportunities, we need to raise additional funding.

Tony, as you know, although the start-up capital is significant, the financial characteristics of our business include strong annuity-like recurring revenue, similar to REITs and other real estate investments. Any support and assistance that you could provide with organizing a meeting with potential individuals who may be interested in investing in our organization would be appreciated. Once we have an opportunity to meet with the group, we can share additional details of our business and strategy, and outline to them what we think is an excellent investment opportunity.

Best regards,

*J. Michael Gold*

J. Michael Gold
President & CEO
Sequedex, LLC

Confidential

SQDX - 078

# DEAL INFORMATION

| | | | |
|---|---|---|---|
| Monica Marselli | Anchor Glass | 813-882-7821 | 813-882-7826 |
| Peter Pierce | Pioneer Capital | 610-648-0300 | 610-695-0768 |
| Tom Carr | TC Transport | 732-845-9000 | 732-845-1212 |
| Mike DiIanni | | Cell# 732-735-4164 | |
| Mike Gold | Sequedex | 610-662-6809 | |
| JEFF LEONARD | | 605-4157 | |
| DARRIN CAMPBELL | | 813-882-7821 | |

-884-0000
X.825



**CONFIDENTIAL**
**HAYDEN 0318**

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IRON MOUNTAIN INCORPORATED; et al. | ) ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) ) |
| THOMAS CARR, | ) ) ) |
| Defendant | ) )  Civil Action No. ) |
| And | ) ) |
| THOMAS CARR, | )  05 10890 RCL ) |
| Counter-Plaintiff | ) ) ) |
| v. | ) ) ) |
| IRON MOUNTAIN INCORPORATED; IRON MOUNTAIN INFORMATION MANAGEMENT, INC.; C. RICHARD REESE; JOHN F. KENNY, JR.; GARRY B. WATZKE; LARRY L. VARN; AND CHARLES G. MOORE, | ) ) ) ) ) ) ) ) ) |
| Counter-Defendants | ) ) |

## <u>ORDER</u>

In consideration of Defendant and Counter-Plaintiff Thomas Carr's Motion to Disqualify

Larry L. Varn, Samuel Miller, and the entire law firm of Sullivan and Worcester as counsel for

plaintiffs and counter-defendants in this case and any opposition thereto, it is this ___ day of

_____, 2005 **ORDERED** that the motion is **GRANTED.**

3878845v1

Larry L. Varn, Samuel Miller and the law firm of Sullivan and Worcester is **ORDERED** disqualified for all purposes from representing any of the plaintiffs or counter-defendants in this matter.

_____

Judge, United States District Court

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IRON MOUNTAIN INCORPORATED; et al.     )<br><br>    Plaintiffs,  )<br><br>v.  )<br><br>THOMAS CARR,  )<br><br>    Defendant  )<br><br>And  )<br><br>THOMAS CARR,  )<br><br>    Counter-Plaintiff  )<br><br>v.  )<br><br>IRON MOUNTAIN INCORPORATED; Et al.  )<br><br>    Counter-Defendants  ) | Civil Action No.<br><br>05 10890 RCL |

## DEFENDANT AND COUNTER-PLAINTIFF THOMAS CARR'S MOTION TO DISQUALIFY PLAINTIFFS' AND COUNTER-DEFENDANTS' COUNSEL

Thomas Carr, Defendant and Counter-Plaintiff in the above-captioned proceedings, by and through undersigned counsel and pursuant to Rules 1.7(b), 1.10(a), and 3.7(a) of the Massachusetts Rules of Professional Conduct, respectfully moves to disqualify Plaintiff and Counter-Defendant Larry L. Varn ("Varn"), Samual A. Miller ("Miller") and the law firm of Sullivan and Worcester LLP ("S&W") as counsel for all purposes in this matter.

A memorandum in support and proposed order are attached herewith.

1

3878845v2

July 20, 2005

Respectfully submitted,

By his attorneys,

Read K. McCaffrey (*pro hac vice*)
PATTON BOGGS, LLP
2550 M Street, NW
Washington, DC 20005
(202) 457-5243
rmcccaffrey@pattonboggs.com

## LOCAL RULE 7.1 CERTIFICATION

On Friday, July 15, 2005 I conferred with counsel for the Plaintiffs and Counter-Defendants, Mr. Ira Gross, and he did not consent to the relief sought herein.

Read K. McCaffrey (*pro hac vice*)
PATTON BOGGS, LLP
2550 M Street, NW
Washington, DC 20005
(202) 457-5243
rmcccaffrey@pattonboggs.com

2

3878845v2

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IRON MOUNTAIN INCORPORATED;<br>et al. ) | |
| Plaintiffs, ) | |
| v. ) | |
| THOMAS CARR, ) | |
| Defendant ) | |
| THOMAS CARR, ) | Civil Action No.<br>05 10890 RCL |
| Counter-Plaintiff ) | |
| v. ) | |
| IRON MOUNTAIN INCORPORATED;<br>et al ) | |
| Counter-Defendants ) | |

## ORDER

In consideration of Defendant and Counter-Plaintiff Thomas Carr's Motion to Disqualify

Larry L. Varn, Samual A. Miller, and the entire law firm of Sullivan and Worcester as counsel

for plaintiffs and counter-defendants in this case and any opposition thereto, it is this ___ day of

_____, 2005 **ORDERED** that the motion is **GRANTED.**

Larry L. Varn, Samual Miller and the law firm of Sullivan and Worcester are

**ORDERED** disqualified for all purposes from representing any of the plaintiffs or counter-

defendants in this matter.

_____
Judge, United States District Court