UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IRON MOUNTAIN INCORPORATED; et al. ) ) ) Plaintiffs, ) ) v. ) ) THOMAS CARR, ) ) Defendant ) ) And ) ) THOMAS CARR, ) ) Counter-Plaintiff ) ) v. ) ) IRON MOUNTAIN INCORPORATED; Et al. ) ) Counter-Defendants ) | Civil Action No. 05 10890 RCL |

**DEFENDANT AND COUNTER-PLAINTIFF THOMAS CARR'S
MEMORANDUM IN SUPPORT OF MOTION TO
DISQUALIFY PLAINTIFFS AND COUNTER-DEFENDANTS' COUNSEL**

PRELIMINARY STATEMENT

Plaintiffs consciously elected to make the law firm, Sullivan & Worcester, and its attorneys and agents (collectively "S&W") the central parties and material witnesses in this case. Plaintiff Larry Varn ("Varn") identifies himself as a partner of S&W and pleads that he brings this action based on his legal representation of Iron Mountain as a partner of S&W. Compl. ¶ 7. Plaintiff Charlie Moore ("Moore") is a private investigator who pleads that he was retained by

1

3878845v2

Varn and S&W and that his cause of action arises out of his retention by, and work for, S&W. Compl. ¶ 8.

The allegations in both the Complaint and Counterclaims involve a series of agreements and promises that were made by the plaintiffs and counter-defendants to Carr and Jim Neebling, Carr's friend and owner of Systrans ("Neebling"). The agreements all pertained to plaintiffs' gaining Carr and Neebling's support of S&W's litigation efforts on behalf of Iron Mountain which was embroiled in a contentious lawsuit against its former president, Peter Pierce ("Pierce" or the "Pierce litigation"). Several of those agreements were made by, or on behalf of, Iron Mountain, while the individual counter-defendants made other agreements.

S&W and its attorneys authored scores of emails to Carr and Neebling, regarding the underlying events of this case. Aside from this correspondence, discovery will confirm hundreds of telephone calls initiated by S&W to Carr and Neebling regarding the agreements, which were made without the knowledge or consent of Iron Mountain. In so doing S&W specifically instructed Carr and Neebling to perform various tasks for S&W and in exchange Carr and Neebling were promised compensation from S&W. S&W became further involved in these disputes when its directly paid $50,000 to Carr's attorney in partial fulfillment of a promise S&W made to Carr.

The conflict between S&W and its client is not theoretical and cannot be waived by Iron Mountain. While multiple conflicts exist one of the more telling conflicts involves S&W's negligence in exposing Iron Mountain to new liability. Varn, as a partner of S&W, violated a confidentiality agreement the parties had in the Pierce lawsuit by wrongfully providing Neebling confidential proprietary information produced by other third parties to the Pierce lawsuit. Both

3878845v2

S&W and Iron Mountain were at risk to be sued as a result of Varn's breach of the agreement. Absent Varn's breach, Iron Mountain would not be facing this liability.

While it may be in Iron Mountain's best interest to disavow S&W's actions in how it litigated the Pierce case, or in promises S&W made to Carr, S&W will reflexively seek to first minimize its own liability before zealously pursuing the litigation strategy that would be in the best interest of its former client, Iron Mountain. S&W and Iron Mountain fully appreciated the many conflicts that existed before suing Carr, but S&W had a duty to refuse to represent any parties in this matter because it knew that the firm will be a material witness and would be hopelessly conflicted with each of the plaintiffs.

Recently, Defendant and Counter-Plaintiff Thomas Carr filed with this Honorable Court a motion for leave to file a second amended counterclaim. That proposed Second Amended Counterclaim is attached hereto as Exhibit 1 and sets forth the facts relevant to your movant's contentions regarding the involvement of Mr. Varn, Mr. Miller, Mr. Moore, individually and as agents of Sullivan & Worcester, and of Sullivan & Worcester itself.

### ARGUMENT

I. **PLAINTIFF AND COUNTER-DEFENDANT VARN IS DISQUALIFIED FROM ACTING AS COUNSEL FOR ANY OF THE OTHER PARTIES.**

Though Varn has not appeared as counsel of record in these proceedings, Iron Mountain's general counsel, plaintiff and counter-defendant Watzke, told Neebling that Varn was very much involved in representing Iron Mountain in this matter.

Advising a client on matters in which an attorney has a direct and conflicting interest is strictly prohibited by the Massachusetts Rules of Professional Conduct of the Supreme Judicial Court. This Court's Local Rule 83.6(4)(B) subjects attorneys to the Massachusetts Rules of

Professional Conduct. Rules 3.7, 1.7, and 1.9 all preclude Varn, who voluntarily brought this suit, from representing any of the other plaintiffs or counter-defendants.

Rule 3.7 strictly precludes an attorney from acting representing a party in a case in which he will be called to testify. Rule 3.7, states: "(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where: (1) the testimony relates to an uncontested issue; (2) the testimony relates to the nature and value of legal services rendered in the case; or (3) disqualification of the lawyer would work substantial hardship on the client."

None of the three exceptions to Rule 3.7 (a) apply in this instance. As a party to this litigation Varn will unquestionably be a significant and material witness on contested issues. Indeed, Varn is repeatedly cited as being liable to Carr throughout the counterclaims.

As a S&W partner and while acting as Iron Mountain's attorney and agent, Varn personally undertook several activities that Varn himself alleges serve as the basis for his suit against Carr. Compl. ¶7. Conversely, Carr's counterclaims mirror Varn's complaint and allege that Varn's actions were taken as a partner of S&W. Either causes of action plainly necessitate Varn's appearance as a material witness in the instant matter. As also discussed above and throughout the counterclaim Varn made a series of promises to Carr and Neebling and entered into various agreements with them in exchange for their continued assistance in helping S&W prepare its case against Pierce. For example, in the early fall of 2003, Varn promised Carr $2 million in exchange for his cooperation with Iron Mountain against Pierce over the application of a covenant not to compete. SAC ¶ 16.5. Concurrently, Varn called a Mr. Schwartz, a creditor of Carr's, to advise him that Carr was a safe credit risk, given Iron Mountain's upcoming extensive business relationship with Carr. SAC ¶ 31. Neebling confirms that Varn and S&W contacted him and Carr on "hundreds" of occasions and received scores of emails and documents from

4

3878845v2

Varn and met with Varn, Moore, Miller and others from S&W – all pertaining to the agreements made by S&W and Iron Mountain. Exh 2, ¶ 11.

All of these instances of Varn's interactions with Carr delve to the heart of counter-plaintiff's argument that counter-defendants simply have not compensated Carr as they agreed to do. Therefore, in addition to being a party, Varn will also serve as a necessary and material witness in the present case to prove the agreements made between the parties and that Carr has been damaged by Iron Mountain and S&W's failure to perform. Moreover, none of the enumerated exceptions set forth in rule 3.7 apply. As discussed above, Varn's testimony relates to a contested issue, namely the contractual obligations of the counter-defendants to counter-plaintiff Carr.

Finally, none of the defendants would suffer any substantial hardship caused by Varn's disqualification from acting as counsel in this action. The plaintiffs voluntarily brought this case and choose their counsel. No discovery has yet been taken so being required to seek counsel whose representation would comport with the rules of professional conduct and their intended purpose will not prejudice plaintiffs. By making himself a party to this litigation "[i]t should have been obvious prior to retention in this case that [Varn's] testimony 'could be significantly useful'" to Carr and his co-plaintiffs. *Mutual Life Ins. Co. of New York v. Liberty Mutual Ins. Co.*, 746 F. Supp. 375, 377 (S.D.N.Y. 1990).

In that Varn may argue that Rule 3.7 serves only preclude him from "advocating at trial" freeing him to serve as counsel to his co-counter-defendants "behind the scenes", he is wrong. The court in *Mutual Life* confronted this very issue and explained that once disqualified an attorney is disqualified "for all purposes", including pre-trial motions practice. *Mutual Life Ins. Co. of New York v. Liberty Mutual Ins. Co.*, 746 F. Supp. at 377. The court reasoned that

5

permitting disqualified attorneys from engaging in pre-trial activities ignores the purpose behind the disqualification in the first instance, that is, "the integrity of the judicial process". *Id.* "A very real possibility exists that [the attorney] may be unable to exercise the independent professional judgment required by the Code on behalf of her client." *Id.*

In addition to disqualifying, for all purposes, an attorney who is likely to be a witness in case – let alone is one of several parties to the suit – is the real concern that attorneys who lack "independence tend() to utilize valuable court time litigating matters, which, due to a close identification with the subject matter, do not merit the court's attention and should be settled between counsel." *Mutual Life Ins. Co. of New York v. Liberty Mutual Ins. Co.*, 746 F. Supp. at 378.

While clients can waive some conflicts, the unique fact pattern of this case precludes any of S&W's clients (plaintiffs and counter-defendants) from being permitted to waive these conflicts. The *Mutual Life* court observed that because it was so obvious that the lawyer would be a witness in contravention of the rule and its purpose that the client and the attorney were "solely responsible for any hardship which will result from the disqualification at this point." *Id. Inverness Med. Switzerland GMBH*, 2005 WL 1491233 * 3 (D. Mass. 2005) ("Rule 1.7(b) provides an exception to the disqualification requirement where the client has consented to the conflict, as Inverness has done here. However, 'when a disinterested lawyer would conclude that the client should not agree to the representation under the circumstances, the lawyer involved cannot properly ask for such agreement or provide representation on the basis of the client's consent.'" *citing* Comment 5 to Rule 1.7.) "A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by <u>the lawyer's own interests</u>..." S.J.C. Rule 1.7 (emphasis added).

6

3878845v2

Varn, as a counter-defendant and material witness in a multi-million dollar dispute, has a tangible conflict of interest with his co-counter-defendants. Yet even with this blatant conflict of interest, we believe that Varn convinced his co-counter-defendant Reese to bring this suit on behalf of the individuals and Iron Mountain. As Carr develops his case, Varn and the other counter-defendants will reasonably be encouraged to minimize their contribution or role in causing Carr's damages, which will pit them against one another. But even setting that conflict aside, Varn will be motivated to portray his representation of Iron Mountain in the Pierce case in a light most favorable to him irrespective of how Iron Mountain may impartially view his role.

Varn created a further conflict with Iron Mountain when he intentionally violated a confidentiality agreement that the parties and their counsel entered as part of the Pierce litigation. Varn, in blatant disregard for the proprietary commercial data of a non-related third party to the Pierce litigation, provided Neebling with Sequedex's internal confidential documents regarding how much capital it had raised and that it was seeking more. The documents plainly are stamped "confidential", but instead of honoring that designation Varn told Neebling to review the proprietary business information that Varn knew he was not supposed to disclose. To be clear, Varn never asked Neebling to sign a non-disclosure agreement or agree to keep the documents confidential. The result of Varn's willful breach of the agreement is that Varn, S&W, and Iron Mountain could all be liable to the parties whose confidences they breached. Whether or not the victims of Varn's conduct actually file suit against Iron Mountain and its agent, Varn, is irrelevant to this analysis. Varn's willful disclosure of confidential information to Neebling is plainly inconsistent with his role as counsel to Iron Mountain and Iron Mountain <u>could</u> be sued as a result of Varn's conduct.

Massachusetts state courts applying Rule 1.7 have found conflicts to be so egregious that they refuse to allow the conflicted client to waive the conflict. *See Winter Gardens Condominium Trust v. Winter Gardens Development Corp.*, No. 023017F, 2005 WL 1132635, *3-4 (Mass. Sup. Ct. April 14, 2005). In *Winter Gardens*, an attorney and condominium owner brought suit on behalf of all of the owners of the condominium complex claiming an injury due to a shared plumbing problem. It was apparent that the attorney would be a material witness precluding him from representing the other owners per Rule 3.7. In considering the disqualification of the attorney's law firm the court examined the attorneys conflict under Rule 1.7. The court in *Winter Gardens* found:

> This language creates the situation where attorney O'Conner may be personally liable, and may act to shield himself from personal liability in his capacity as a trustee for his possible misfeasance with regard to the septic system, which may cause him to act counter to his duty of loyalty to the plaintiff.

*Winter Gardens Condominium Trust v. Winter Gardens Development Corp.*, 2005 WL 1132635, * 3-4.

> Furthermore, there is a substantial likelihood that not only that Klotz's testimony will be prejudicial to plaintiffs, but also that, because Klotz's own conduct and motivation is at issue in this action, 'it may be difficult or impossible for the lawyer to give [his] client detached advice.'

*Lange v. Orleans Levee District,* Nos. Civ.A. 97-987, Civ.A. 97-988, 1997 WL 668216, *3 (E.D.La Oct. 23, 1997) *(*quoting Model Rule of Professional Conduct Rule 1.7 cmt (1983)).

Based on Carr's allegations that Varn and S&W made representations regarding agreements that likely subject Iron Mountain to significant financial liability the Court should disregard any waiver of Varn's conflict of interest that Iron Mountain or the other parties may tender in response to this motion. The United States Supreme Court has specifically stated that

3878845v2

trial courts have the power to reject a client's waiver of a conflict of interest involving his attorney.

> The United States Supreme Court held in *Wheat v. United States*, 486 U.S. 153, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988), that district courts have substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where actual conflict may be demonstrated before trial, but also in the common situation where a potential conflict exists which may or may not bloom into actual conflict as trial progresses. Given the above facts demonstrating a substantial likelihood of conflict of interest should Klotz and/or his law firm be permitted to represent plaintiffs, <u>the Court is justified in exercising its discretion to disqualify Klotz and his firm despite the apparent existence of waivers signed by the plaintiffs.</u>
>
> Thus, the Court finds that not only Klotz, but Klotz's entire law firm, must be disqualified from *any* representation in this case, because the likelihood that Klotz will be called to provide testimony prejudicial to plaintiffs, and concerning Klotz's own actions in this case, creates an impermissible conflict of interest under Model Rule. 1.7.

*Id.*, at *4 (emphasis added).

Both district courts in *Lange* and *Inverness Med. Switzerland* applied a commonsensical test to determine when a court should disregard a client's wavier of his lawyers conflict of interest: "[w]hen a disinterested lawyer would conclude that the client should not agree to the representation under the circumstances, the lawyer involved cannot properly ask for such agreement or provide representation on the basis of the client's consent." *Id.* at *2, Inverness Med. Switzerland GMBH*, 2005 WL 1491233 * 3. "If the probity of a lawyer's own conduct in a transaction is in serious question, it may be difficult or impossible for that lawyer to give detached advice." Rule 1.7, cmt 6. Thus, Varn should be disqualified from representation of any of the counter-defendants in any capacity in this case.

Massachusetts courts have long agreed with the concept that a court could, and should, disregard a client's waiver when the conflict is so patently obvious. *Maddocks v. Ricker, Casson*, 403 Mass. 592, 597 (1988) (holding that a lawyer could not adequately represent the

interests of his clients, the plaintiffs, and himself in a case where the lawyer was subject to a claim for contribution even if there had been valid consent). The court in *Maddocks* reasoned that a second attorney hired by property owners in an action arising out of alleged negligent site preparation work for relocation of a house would have a "personal interest contrary to that of his client" because at the same time he would be a third-party defendant on a contribution claim asserted by the client's first attorneys.

The court's holding in *Maddocks* turned on its interpretation of Code of Professional DR 5-105(B), under S.J.C. Rule 3:07, as appearing in 382 Mass. 781 (1981). DR 5-105(B) states: "A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, or if it would be likely to involve him in representing differing interests, except to the extent permitted under DR 5-105(C)." *See also Hollands v. Attala County*, No. Civ. A. 1:94CV206-D-D, 1996 WL 671406 (N.D. Miss. Oct. 31, 1996) (noting that representation where a lawyer has a personal interest in avoiding an indemnity claim "smacks of impropriety").

In disqualifying the attorneys with a conflict as well as the entire law firm for "all purposes" including "pre-trial purposes", the court in *Mutual Life Ins. Co. of New York* cautioned:

> It may seem trite to remind lawyers that, as such, they are required to exercise independent professional judgment at all stages of a litigation, e.g., to evaluate with a dispassionate eye the validity and non-validity of the positions their client wishes them to take and to render professional advice to their client as to the best method of achieving the proper result at a minimum legal expense to their client.

*Mutual Life Ins. Co. of New York v. Liberty Mutual Ins. Co.*, 746 F. Supp. at 377

Here, Varn is confronted not only with his own individual liability as a counter-defendant, but also claims for indemnity and contribution to the extent that liability for any

agreements entered by him is imputed to other counter-defendants. Accordingly, this situation presents an impermissible conflict of interest under Rule 1.7 under which representation by Varn of any counter-defendants in this action is incurably unreasonable.

Rule 1.9 states: " A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation." Varn's representation of Iron Mountain in the underlying Pierce action forms the basis of the complaint that _he_ has brought against Carr. Indeed, upon information and belief, it was Varn who convinced counter-defendant Reese to bring this action in the first instance. Carr's counterclaims against Varn, Iron Mountain, Moore and the other plaintiffs puts Varn and S&W in a uniquely strong position to abuse client confidences gained from the Pierce litigation to be able to use to minimize S&W's exposure as to Carr's claims.

## II. SAMUAL MILLER IS DISQUALIFIED FROM ACTING AS COUNSEL FOR ANY OF THE OTHER PARTIES.

Samual A. Miller ("Miller") has unambiguously appeared in this matter although he, S&W, Iron Mountain and the other individual defendants all know that Miller will be a material witness in this case. It is outrageous that Miller would attend meetings with Varn, Neebling, and others in New York where agreements were made, and or reiterated, and then appear in this case as counsel to multiple clients who are accused of violating those same agreements.

Miller's representation of the plaintiffs and counter-defendants is in violation of Rule 3.7. Miller cannot seek refuge in any of the exceptions that would otherwise allow him to continue serve as counsel. As described in Neebling's declaration, Miller was a frequent participant in meetings in which Neebling, Systrans and Carr were promised substantial compensation by Iron Mountain and/or S&W. Miller appears on correspondence that standing alone demonstrate his

level of knowledge and involvement in the agreements Varn and S&W made to Neebling. In particular, Miller was copied on an email to Neebling and Carr's attorney in which Varn said that he was preparing to depose a key (Pierce) witness and Varn wanted Neebling and Carr's input to help him craft questions and for the deposition. Exh. 3, pp. C0002. Varn then asks if Neebling and Carr's counsel will be joining Miller and him for dinner the following night. *Id*. It was at dinners and meetings such as the one depicted in the Varn-Miller email where Varn and Miller issued or confirmed the agreements made to Carr and Neebling.

Indeed, Miller was a key participant at a dinner meeting involving Varn, Moore, Carr, and Peslak. Miller was also clearly privy to the rationale for contacting Neebling and Carr, non-lawyers and non-parties to the suit, and asking for their input on crafting deposition questions for important witnesses in the Pierce litigation

Miller was deeply involved in the underlying Pierce action appearing on the pleadings as Iron Mountain's counsel. Varn gave Neebling S&W's pleadings identifying Miller as having appeared on behalf of Iron Mountain. Exhibit 3, p. C0011. Finally, it is reasonably expected that when Carr subpoena's all of S&W's internal email it will demonstrate Miller's detailed knowledge of the role S&W and Iron Mountain asked Carr and Neebling to play.

> The advocate-witness rule applies, first and foremost, where the attorney representing the client before a jury seeks to serve as a fact witness in that very proceeding. The concerns implicating the rule are that (1) the lawyer will appear to vouch for his own credibility, (2) the lawyer's testimony will put opposing counsel in a difficult position when he has to vigorously cross-examine his lawyer-adversary and seek to impeach his credibility, and (3) there may be an implication that the testifying attorney may be distorting the truth as a result of bias in favor of his client. *See Culebras Enterprises Corp. v. Rivera-Rios*, 846 F.2d 94, 99-100 (1st Cir.1988). Most important, when one individual assumes the role of both advocate and witness it "[may] so blur[ ] the line between argument and evidence that the jury's ability to find facts is undermined." *United States v. Arrington*, 867 F.2d 122, 126 (2d Cir.1989).

3878845v2

*Ramey et al. v. District 141, Int'l Assoc. of Machinists and Aerospace Workers*, 378 F.3d 269, 282-83 (2d Cir. 2004).

Miller's active representation of all of the plaintiffs and counter-defendants clearly runs afoul of the intent prohibiting counsel from testifying in cases in which they represent clients. The *Ramey* court highlights the prejudice to Defendant Carr in that the witness-advocate, Miller, left unchecked will have the opportunity to blur the lines of argument and unfairly attempt to sow confusion amongst the jurors.

Miller was an active participant in conversations with Carr and Neebling in which Varn made promises and entered into agreements with Carr and Neebling. Miller cannot avoid having an irreconcilable conflict of interest regarding these agreements and conversations. Assuming Miller testifies that Varn entered the agreement on behalf of Iron Mountain then Miller's testimony would be injurious to his current client Iron Mountain. On the other hand, if Miller testifies that Varn entered the agreement on behalf of S&W then Miller will be offering testimony against, once again, his current client, Varn and S&W. Miller's first-hand knowledge of these conversations will prove to be harmful to at least one of the counter-defendants, but Miller is representing all of the counter-defendants.

Defendant and counter-plaintiff Carr reasonably believes that discovery will prove that Miller knew that Varn shared with Neebling confidential documents and/or evidence that S&W gained only as a result of its representation of Iron Mountain in the Pierce suit. Further, Carr contends that Miller will likely be able to testify that he knew that S&W paid Carr's attorney Art Peslak $50,000 so as to keep Carr and Neebling engaged in helping Varn and Miller prepare their case against Pierce.

13

3878845v2

"We believe that an attorney may not represent a third party against a former client where there exists a substantial possibility that knowledge gained by him in the earlier professional relationship can be used against the former client, or where the subject matter of his present undertaking has a substantial relationship to that of his prior representation. These principles have been expressed by many authorities." *Aleut Corporation v. McGarvey*, (1978, Alaska) 573 P.2d 473, 474 *citing In Chugach Electric Association v. U.S. District Court for the District of Alaska*, 370 F.2d 441 (9th Cir. 1966). Certainly, in light of the counterclaims Miller is in the position of representing third parties (Varn, Moore, Watzke, and Reese) against his former client, Iron Mountain, to the extent the parties seek indemnity and contribution from one another, regarding matters that are substantially related to his representation in the Pierce litigation.

Miller and Varn both represented Iron Mountain in the underlying action against Pierce and he was certainly privy to confidential communications and information provided by Iron Mountain for use in its case. There is simply no conceivable manner in which Miller can purport to represent any of the counter-defendants, who likely have indemnity and contribution claims against one another without violating Rule 1.9.

Miller's prior representation of Iron Mountain absolutely bars him from representing – as he is currently doing – any of the other counter-defendants who may have claims against Iron Mountain, or his employer, S&W. That Miller is continuing to represent each of the counter-defendants defies understanding and "smacks of impropriety" and serves as a complete disregard for the Rules of Professional Conduct. *See generally, Hollands v. Attala County*, 1996 WL 671406 (N.D. Miss. Oct. 31, 1996).

### III. SULLIVAN & WORCESTER IS DISQUALIFIED BY ITS OWN ROLE AS A MATERIAL WITNESS, BUT ALSO IN THAT VARN AND MILLER'S CONFLICTS ARE IMPUTED TO THE FIRM.

Under Massachusetts Rule of Professional Conduct 3.7, a "lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9." A court asked to disqualify a law firm because one of its lawyers is a necessary witness must "strike a balance between a client's right to counsel of his or her choice and the attorney's responsibilities to maintain professional standards and avoid the appearance of impropriety." *Winter Gardens Condominium Trust v. Winter Gardens Development Corp.*, No. 023017F, 2005 WL 1132635, *3-4 (Mass. Sup. Ct. April 14, 2005) (disqualifying firm where lawyer was witness, under Rule 3.7).

Generally, Massachusetts courts focus on whether a substantial conflict between the lawyer's and client's testimony could emerge. *Inverness Med. Switzerland GMBH*, 2005 WL 1491233 * 3 ("Disqualification, as a prophylactic device, is a drastic measure which courts should hesitate to impose except when absolutely necessary. Such a measure is generally appropriate only when continued participation by the attorney 'taints the legal system or the trial of the cause before it.'") (internal citations omitted). If such a conflict is likely, the Court must determine whether "the conflict is so substantial as to threaten [S&W's] loyalty to its client, to the extent that a disinterested lawyer would conclude that [Iron Mountain] should not agree to such representation." *Id.* at *6.

S&W must be disqualified for plainly obvious reasons that should have also prudentially declined the representation of this case in the first instance. Even pausing for a moment causes one to create a lengthy list of material topics on which S&W's Rule 30(b)(6) corporate designee testimony will reasonably cover in this matter. Topics ranging from Varn's authority on behalf of S&W to bind the firm to why the firm paid $50,000 to Carr's lawyer. Because Varn brought this lawsuit in his capacity as a partner of S&W, and Moore in his capacity as S&W's agent,

places S&W squarely in the middle of this lawsuit. S&W must surely be considered to have a real stake in this case even if not a separately pled party. Regardless, any fair-minded reading of the complaint reveals that S&W must have expected to be called as a material witness at trial precluding the firm – in its entirety - from acting as counsel to any of the plaintiffs.

Rule 3.7 leaves little room for an attorney who will be a material witness to also represent any party in the case in which she testifies. While the rule focuses on a single attorney, the rationale for the rule necessarily must apply in the same manner to the entire law firm when it is the law firm itself who will be called to testify regarding its knowledge of the underlying facts. First, one must be cognizant of the origin of the rule barring a lawyer witness:

> The ultimate justification for the disqualification rule, in Professor Wigmore's view, was that the public might think that the lawyer is distorting the truth for the sake of his client. Another argument for disqualification is that the lawyer-witness will vouch for his own credibility in summing up to the jury - - a powerful means of support for his own credibility. The argument that such tactic is to the detriment of his client obviously defeats itself. But the argument that it is unfair to the opponent has some merit. It is difficult, indeed, to cross-examine a witness who is also an adversary counsel concerning matters of fact, and, more particularly, on matters impeaching his credibility, within the bounds of propriety and courtesy owed to professional colleagues.

*Dynasty Apparel Industries Inc. v. Rentz*, 206 F.R.D. 596, 599 (S.D. Ohio 2001), *quoting International Electronics Corp. v. Flanzer*, 527 F.2d 1288, 1294 (2d. Cir. 1975); *see also, Verizon Yellow Pages Co. v. Sims & Sims, P.C.*, No. 02-00961, 2003 WL 836087 (Mass. Super. Feb. 24, 2003) ("Comment 1 to Rule 3.7 of the Massachusetts Rules of Professional Conduct states that 'combining the roles of advocate and witness can prejudice the opposing party and can involve a conflict of interest between the lawyer and client.'"); *Mutual Life Ins. Co. v. Liberty Mut. Ins. Co.*, 746 F.Supp. 375, 376 (S.D.N.Y. 1990) ("If a lawyer is to testify, there is a high probability that his testimonial role will affect his role as counsel adversely").

3878845v2

No creatively is required to immediately comprehend the breathtaking scope of testimony that S&W's corporate representative will be required to provide on behalf of S&W. The following Rule 30(b)(6) testimony will reasonably be sought by Carr and presented at trial: (1) the reasons S&W paid Carr's attorney $50,000, (2) S&W's work product as it relates to the underlying Pierce litigation; (3) the communications by S&W partners, associates, employees and agents with Carr, Neebling, and Peslak; (4) all communications S&W had with Iron Mountain regarding Carr, Neebling, and Peslak; (5) all agreements and/or promises S&W partners, associates, and agents made to Carr, Neebling, and Peslak; (6) the confidentiality agreement broken by Varn; (8) Varn's authority to bind S&W to agreements to Carr and Neebling; (9) S&W's opinion as to whether or not it breached any duty to its client Iron Mountain as a result of disclosing confidential information to Neebling; (10) all email correspondence between S&W and Neebling; and (11) all advice S&W gave to Iron Mountain regarding the agreements Iron Mountain made to Carr and Neebling.

There can be little doubt that S&W will testify at trial on these and other matters. To the extent that Rule 3.7 bars attorney witnesses from representing a client, the same rule must apply to the law firm as well because the same dangers exist.

Just as Varn has his own conflict of interest in desiring to shape his testimony to color his work in the light most favorable to him, so to will S&W approach their testimony with the same predisposition. S&W's conflict is seen by looking at only one portion of its impending testimony, the $50,000 that S&W paid to Carr's attorney in furtherance of Varn's promise (which Miller witnessed) to Carr. If S&W testifies that it paid the money at the direction of, and on behalf of, Iron Mountain it runs the risk of exposing confidential attorney client information that could be injurious to Iron Mountain by establishing one or more elements of Carr's cause of

3878845v2

action against Iron Mountain. On the other hand, if S&W admits that it paid the $50,000 in furtherance of Varn's agreement with Carr, S&W could be exposing itself to liability to Carr for breach of S&W's failure to pay Carr the $ 2 million Varn agreed to. *See Maddocks v. Ricker, Casson*, 403 Mass. 592, 597 (1988) (a lawyer could not adequately represent the interests of his clients, the plaintiffs, and himself in a case where the lawyer was subject to a claim for contribution even if there had been valid consent).

Despite the fact that S&W is precluded from representing any party as a result of its own impending testimony and its own conflicts, S&W is also disqualified from representing any of the plaintiffs or counter-defendants as a result of Varn and Miller's disqualification.

Rule 1.10 imputes Varn and Miller's conflict of interest to the firm as a whole and Rule 3.7(b) specifically provides that a firm may not act as counsel in a proceeding in which a lawyer of the firm may be called as a witness where a conflict of interest under 1.7 is present. Avoiding the disqualification of the firm is difficult in light of the applicable standard: "<u>Any doubt as to whether a law firm should be disqualified is to be resolved in favor of disqualification.</u>" *North Star Hotels Corp. v. Mid-City Hotel Assoc.*, 118 F.R.D. 109, 112 (D. Minn. 1987) (citing *Coffelt v. Shell*, 577 F.2d 30, 32 (8th Cir. 1978) (emphasis added).

Accordingly, Varn and Miller's individual conflict of interest bars S&W from acting as counsel to the other counter-defendants in this action. *See Winter Gardens*, 2005 WL 11322635 at * 3 (determining that the existence of a conflict under Rule 1.7 in addition to the fact that the lawyer was expected to be called as a witness required disqualification of the firm under Rule 3.7).

Other jurisdictions have similarly held that disqualification of the entire firm is further warranted where the lawyer's testimony as a witness would be potentially adverse to the client or

18

where the lawyer's conduct is at issue. *See, e.g., Lange*, 1997 WL 668216. In *Lange*, the lawyer's conduct in connection with the events leading to the suit was particularly at issue resulting in a conflict of interest:

> Judge Heebe disqualified not only plaintiff's lawyers but also the rest of the firm from *all* stages of the proceedings, where it determined that plaintiff's lawyers were likely to be called as witnesses by opposing counsel at trial, and that any testimony of plaintiff's lawyers would likely be adverse to plaintiff's interests. Furthermore, the court held that since the actions of counsel were themselves at issue in the case, it would be impossible for them to provide "independent arm's length counsel" to their clients. These harms were held to outweigh any hardship suffered by the clients in finding new counsel, particularly where disqualified counsel had not yet taken any depositions and had "been on notice as to problems with their representations.""

*Id.* at *3. The *Lang* court went on to cite other cases around the country where law firms were disqualified from both pre-trial and trial representation "where [the] lawyer's own conduct as party's attorney is at issue in the case" *Id. citing Munk v. Goldnome Nat'l Corp.*, 697 F.Supp. 784 (S.D.N.Y. 1988) ("disqualifying law firm from both pre-trial and trial representation, even where testimony not necessarily adverse to clients, where lawyer's own conduct as party's attorney is at issue in case"); *see also Mutual Life Ins. Co. v. Liberty Mut. Ins. Co.*, 746 F.Supp. 375 (S.D.N.Y. 1990) ("Because [attorneys and their law firm] should not have accepted employment in this matter in the first place, <u>disqualification for all purposes is the appropriate remedy</u>.") (emphasis added); *Lange*, 1997 WL 668216 at *4 ("Thus, the Court finds that not only [counsel] but [counsel's] entire law firm, must be disqualified from *any* representation in this case, because the likelihood that [counsel] will be called to provide testimony prejudicial to plaintiffs, and concerning [counsel's] own actions in this case, creates an impressible conflict of interest under Model Rule 1.7."). "Thus, courts have held that, when one lawyer is disqualified under [rule similar to S.J.C. 3.7(a)], because he will testify as a witness, his entire law

19

firm and all other lawyers in it must also be disqualified." *Dynasty Apparel Industries Inc. v. Rentz*, 206 F.R.D. at 599 (*citing Universal Athletic Sales Co. v. American Gym, Recreational & Athletic Equipment Corp., Inc.* 546 F.2d. 530, 538 (3d. Cir. 1976) *cert. denied*, 430 U.S. 984 (1977)); *Estate of Andrews v. United States*, 804 F.Supp. 820, 830 (E.D.Va. 1992); *Mason & Dixon Lines, Inc. v. Glover*, 1989 WL 135219 (N.D.Ill. 1989), *affirmed*, 975 F.2d 1298 (7th Cir. 1992).

### Conclusion

Because Varn and Miller will be material witnesses, have a conflict of interest and because the firm Sullivan and Worcester also will testify through a designee is a conflict of interest to which the Varn and Miller disqualification bases are imputed, the defendant and counter-plaintiff Carr moves for the disqualification, for all purposes, of Larry L. Varn, Samual A. Miller, and Sullivan and Worcester as counsel for all plaintiffs and counter-defendants in this matter.

July 20, 2005

                 Respectfully submitted,

                 By his attorneys,

                 _/s/_____
                 Read K. McCaffrey (*pro hac vice*)
                 PATTON BOGGS, LLP
                 2550 M Street, NW
                 Washington, DC 20005
                 (202) 457-5243

3878845v2