UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IRON MOUNTAIN INCORPORATED; et al.<br><br>Plaintiffs and,<br>Counterclaim Defendants<br>v.<br><br>THOMAS CARR,<br><br>Defendant and<br>Counterclaim-Plaintiff | Civil Action No.<br>05 10890 RCL<br><br>Magistrate Judge Collings |

COUNTER-PLAINTIFF THOMAS CARR'S
OPPOSITION TO COUNTER-DEFENDANTS' MOTION TO DISMISS THE
SECOND AMENDED COUNTERCLAIMS

Counter-Plaintiff, Thomas Carr, by and through his counsel respectfully opposes the motion to dismiss his counter-claims and incorporates by reference his arguments in opposition to the motion to dismiss the first amended counter-claims, and in further opposition states:

**PRELIMINARY STATEMENT**

The time will eventually come when discovery has commenced and the parties are able to explore Carr's allegations and the counter-defendants' bald assertions of fact, but that time is not now. Rather, now is the time for the counter-defendants to test the sufficiency of the counter-claims and not an opportunity to prejudge what may or may not be learned in discovery. Instead of exploring the sufficiency of the actual allegations proffered, the counter-defendants are pell-mell bent on arguing legal theories that must necessarily rely on factual evidence capable of being adduced only through discovery.

1

A casual review of the Second Amended Complaint ("SAC") reveals more than sufficient allegations necessary to fairly put the counter-defendants on notice of the claims against them and to overcome arguments that the counter-claims should be dismissed before discovery commences. The averments in the SAC on their own answer, and therefore defeat, counter-defendants premature motion. For now though, discovery must proceed and the counter-defendants will have an opportunity to raise their factually-based motions at a later date.

## ARGUMENT

### A. <u>Counter-Defendants' Agreements Are Enforceable</u>

"As an **officer** of Logisteq, a close corporation, Carr owed it a fiduciary duty." Motion to Dismiss, p. 9 (emphasis added). Counter-defendants' entire fiduciary duty argument hinges on the singular assumption that Carr was an officer of Logisteq, a fact not in evidence. Absent this evidentiary leap counter-defendants' argument dies because without it Carr has no direct fiduciary relationship to Logisteq since Carr did not own Logisteq. The SAC plainly states that Transportation Concepts of New Jersey, Inc., and Pioneer Capital, L.P., and not Carr or Pierce, owned Logisteq. SAC ¶ 5. Even if Carr was an officer of Logisteq, the counter-defendants conceal from the court that Logisteq fired Carr before many of these events – and promises – transpired. The timing of Carr's termination in relation to the promises alleged dramatically impacts on whether or not Carr – at the time of contracting –had the capacity to breach a fiduciary obligation to Logisteq.

In our case, only discover will reveal whether the actions of Pioneer Capital and Pierce in raiding Logisteq's assets and their abuse of their majority shareholder status will relieve Carr from any remaining fiduciary obligations. But such analysis (however

flawed and contrary to the facts it may be) is far too premature for this stage of the litigation, which, again, is merely to test the sufficiency of the pleadings. "[T]he standard [courts] utilize when a complaint is challenged pursuant to Fed.R.Civ.P. 12(b)(6), requires that [the court] look only to the allegations of the complaint and, if under any theory they are sufficient to state a cause of action in accordance with law, a motion to dismiss the complaint must be denied." *Knight v. Mills*, 836 F.2d 659, 664 (1st Cir. 1987) (citing *Melo-Tone Vending Inc. v. United States*, 666 F.2d 687, 688 (1st Cir. 1981)). *Cousin v. Sofono*, 238 F.Supp.2d 357, 359 (D.Mass. 2003) ("As to Rule 12(b)(6), the court's inquiry is narrow; it must simply decide whether, from the allegations in the complaint, 'it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief.' *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). *Accord*, *Roeder v. Alpha Indus., Inc.*, 814 F.2d 22, 25 (1st Cir.1987)").

It is not for the counter-defendants to broadly assume that Carr was an officer of Logisteq at any point in time let alone at each instance in which promises were made to Carr over a period of two years or more. Counter-defendants are in a hurry to by-pass discovery because the facts are meddlesome for this multi-billion dollar corporation and fail to fit their creative version of what transpired.

    1.    **Counter-Defendants Ignore Their Partial Performance Of The Contract.**

While arguing that the alleged contract is noxious and void as to public policy the counter-defendants had no concerns about partially honoring promises alleged in the SAC. In particular, the SAC alleges that the counter-defendants promised Carr that they would reimburse him for his legal expenses in suing Pierce. SAC ¶¶ 16, 17, 19, 20, 22,

23. Discovery will confirm the allegations in the SAC that <u>after</u> Carr was fired, the counter-defendants, Sullivan & Worcester (acting through Varn and Moore), and Iron Mountain made, repeated, or reaffirmed certain promises to Carr in exchange for his cooperation in pursuing Pierce including launching a lawsuit. *Id.* Only one component of the promises made by the counter-defendants included the promise that they, individually or as agents of Iron Mountain, agreed to pay all of Carr's incurred legal expenses in suing Pierce. To that end, after Logisteq fired Carr, Sullivan and Worcester wired $50,000 to Carr's attorney, Arthur Peslak in partial fulfillment of these promises. <u>See</u>, SAC ¶ 16.1; Reply to Motion to Disqualify, Exhibit 2, Peslak decl. ¶ 6.

More to the point though, Carr's Reply to the Motion to Disqualify demonstrates that in February 2004, after Iron Mountain lost its arbitration against Pierce, Peslak wrote to counter-defendant Reese and demanded, on behalf of Carr, that Iron Mountain pay the remaining balance of Carr's legal fees. Reply to Motion to Disqualify, Exhibit 2, Peslak decl. ¶ 29. Peslak recounted that in 2003 before the arbitration that Varn promised him that the counter-defendants would pay all of Carr's incurred legal expenses. *Id.* Peslak's contemporaneous letter confirms that Varn reiterated those promises in February 2004 just days before Peslak's letter was sent to Reese. *Id.*, ¶30. Yet, instead of paying the full amount of the legal fees as promised Iron Mountain and the counter-defendants paid only a portion of them leaving Carr damaged by having to pay these fees. *Id.*, ¶¶31-32. That any of Carr's legal fees were paid by the counter-defendants in April 2002 and again in February 2004 plainly demonstrates the existence of the alleged contract that counter-defendants vigorously deny.

4

Curiously, the Motion to Dismiss incorrectly argues that none of the promises alleged by Carr to exist "were ever evidence by a written agreement or confirmed by even a single piece of correspondence." Motion to Dismiss, p. 4. Peslak's letter to Reese that was appended to Carr's disqualification papers demonstrates the inaccuracy of counter-defendants' contention and the danger of allowing such sweeping representation to stand as fact before discovery has commenced. Reply to Motion to Disqualify, Exhibit 3. Carr contends that discovery will reveal further documentation including internal correspondence among the counter-defendants discussing the promises made to Carr including an explanation as to why the counter-defendants breached their promise to Carr and paid only a portion of Carr's legal fees in February 2004 and not the entire amount.

2. **Carr Provided Information Regarding Sequedex's Activities That Were Harming Logisteq.**

Paragraph 6 of the SAC alleges that Sequedex was owned entirely by Pierce and/or a Pierce controlled entity. Carr had no interest whatsoever in Sequedex. The well pleaded facts in the SAC, that are assumed to be true, include that Sequedex was siphoning monies from Logisteq to Sequedex in order to secretly compete with Iron Mountain. SAC ¶ 6. *Cousin v. Sofono*, 238 F.Supp.2d 357, 359 (D.Mass. 2003). The Motion to Dismiss presumptively assumes that Carr's disclosure of any information of "Logisteq's and Pierce's confidential and proprietary business operations…would be an unquestioned breach of Carr's fiduciary duties." Motion to Dismiss, p. 10[1]. First, it is absurd to argue that Carr owes any duties to Pierce regarding his ownership of Sequedex

---

[1] The Motion to Dismiss appears to contain citation errors to the SAC. For example, the Motion to Dismiss at page 10 cites repeatedly to alleged breaches of Carr's fiduciary duties relying on SAC ¶26. But, SAC paragraph 26 does not contain the allegations as represented by counter-defendants.

For clarification, the SAC that Carr filed with the permission of the Court and the proposed SAC are nearly identical save for a few minor typographical or stylistic changes.

5

when Carr has no ownership or other interest in Sequedex. More importantly though, it is impossible to summarily conclude, without any discovery, that information Carr may have disclosed to Iron Mountain was a breach of his fiduciary duty.

Discovery will reveal that Carr never acted contrary to the business interests of Logisteq. Discovery will also demonstrate that Pierce and Pioneer Capital had already begun to loot Logisteq and waste its assets leaving Carr with little choice to save the investments by his company, Transportation Concepts of New Jersey, in Logisteq. It will also be demonstrated that Carr's actions were taken to save Logisteq, not damage it as counter-defendants would have the court believe.

Carr had no direct ownership interest in Logisteq, and absent discovery there is simply no basis for the Court to accept the counter-defendants' conclusory assumption that Carr owned a fiduciary duty to Logisteq. Candidly, it is likely that discovery will establish that Carr did owe such duties to Logisteq during a discrete period of time. It is impossible at this preliminary stage though, to determine when those duties were owed in relationship to Pierce's actions dismantling Logisteq or in relationship with Carr's ultimate termination from Logisteq. Obvious and pedestrian factual predicates such as these must be explored before one can run off half-cocked and claim that the contract alleged is void because Carr breached a fiduciary duty.

3. **Counter-Defendants Made Their Promises After Carr Was Terminated.**

Discovery will also establish that Carr was fired by Logisteq in late March 2002 before the counter-defendants made, repeated, or ratified their promises to Carr. To the extent that Carr owed any fiduciary duties to Logisteq or Pierce those obligations were

6

extinguished by April 2002, well before the SAC alleges the counter-defendants made, repeated, or ratified their promises to Carr. SAC ¶¶ 16 through 22, and 27 through 29.

**B.    Individual Counter-Defendants Will Remain In The Case As They Are Alleged To Have Made Promises To Carr.**

While it is alleged that the delineated promises made by the counter-defendants Reese, Kenney, Watzke, Varn, and Moore were made in their capacities as agents of Iron Mountain, it is also alleged that these promises were made by the individuals themselves. Rule 8 specifically encourages a plaintiff to bring all causes of actions and all theories, at one time, even if they may be inconsistent so as to enhance judicial economy. "Federal Rule of Civil Procedure 8(e)(2)...allows parties to take inconsistent positions in their pleadings...Especially in the early stages of litigation, a party's pleading will not be treated as an admission precluding another, inconsistent pleading." *Roderiguez-Suris v. Montesinos*, 123 F.3d 10, 20 (1st Cir. 1997).

Paragraph 18 of the SAC alleges that Reese, as an individual, made specific promises to Carr and that same paragraph alleges that Kenney likewise made certain representations regarding courier business. Paragraph 19 of the SAC avers that Watzke, as an individual, made certain promises to Carr. Promises made by Varn, as an individual, appear in paragraph 20.

There can be little dispute that the SAC goes out of its way to plead each individual's liability. *See infra*, Section E.

**C.    Statute of Frauds Is Inapplicable**

Paragraph 18 alleges: "finally, counter-defendant Kenney, advised that courier business revenues of $45 million would be paid to Systrans, Inc. each year for a period of five years in return for the cooperation of Carr and Systrans as described above." This

7

promise is reasonably viewed as a contract that was entirely capable of being performed in one year and would have yielded $45 million in revenue for that year.

In paragraph 22 of the SAC it is specifically averred that "in addition, Kenney also promised that in exchange for Carr's participation Iron Mountain would provide business to Systrans in excess of $45 million dollars..."

There simply is no "oral five year contract" alleged in the SAC, as counter-defendants claim. Indeed, the SAC avers the opposite. It is for discovery to determine the precise contours of the contract and Carr contends that an exploration of the communications among the various counter-defendants will reveal documents corroborating Carr's representation of the promises made by the counter-defendants.

### D. Carr Has Successfully Pleaded All of the Required Elements of Fraudulent Misrepresentation.

Notwithstanding the length of this portion of the counter-defendants' memorandum, a distillation of their argument produces two elements: (1) that Carr has not alleged reasonable reliance to his detriment upon the alleged promises, and (2) that the alleged fraudulent representations are "promissory" and therefore not actionable.

With respect to the first element, the Defendants again ignore the limited scope of review appropriate to this procedural juncture. "For purposes of this motion, the Court takes as true 'the well-pleaded facts as they appear in the complaint, extending [the] plaintiff every reasonable inference in his favor.'" *Baena v. KPMG LLP*, 389 F. Supp. 2d 112,116 (D. Mass. 2005) (citing *Coyne v. City of Somerville*, 972 F.2d 440, 442-43 (1st Cir.1992) and *Correa-Martinez v. Arrillaga-Belendez*, 903 F.2d 49, 51 (1st Cir.1990)). "A complaint should not be dismissed under Fed.R.Civ.P. 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim

which would entitle him to relief." *Id.* (*quoting Roeder v. Alpha Indus., Inc.*, 814 F.2d 22, 25 (1st Cir.1987) (internal quotation marks omitted); *see also, Riverdale Mills Corp. v. Pimpare*, 392 F.3d 55, 61 (1st Cir. 2004) ("At the 12(b)(6) stage, the question on the first prong is whether, using all of the well-pleaded facts stated in the complaint and viewing them in the light most favorable to the plaintiff, the plaintiff has stated a claim for a violation of some constitutional right. The first prong inquiry at this 12(b)(6) stage is unlikely to be very specific, given that federal civil practice is based on notice pleading, where great specificity is not required, *Alternative Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 29 (1st Cir.2004)..."). An examination of the SAC reveals that paragraphs 34, 35, 36, 54, and 55 clearly satisfy the pleading requirements to survive Defendants' motion to dismiss and specifically allege reliance by Carr on the fraudulent misrepresentations to his detriment and particularizes damages resulting therefrom. Again, at this stage, the well-pleaded facts of the counter-claim are to be taken as true and viewed in a light most favorable to Carr and, therefore, for the present purposes he has adequately alleged reasonable reliance.

Ignoring this clearly limited scope of review at these early stages, Defendants instead ask this court to impermissibly conclude that the reliance as alleged is not reasonable; an inquiry that is at best properly made in a motion for summary judgment but in fact more appropriately left to the ultimate fact-finder. *See, e.g., Massachusetts Laborers' Health & Welfare Fund v. Phillip Morris, Inc.*, 62 F. .Supp. 2d 236 (D. Mass. 1999) ("Whether reliance is reasonable is ordinarily a question of fact for the jury."). *See also Lithuanian Commerce Corp. v. Sara Lee Hosiery*, 219 F. Supp.2d 600 (D.N.J. 2002) ("The question of whether this reliance was 'reasonable' is a question of fact for the jury."). The Defendants argument cannot be sustained without prematurely reaching

9

factual conclusions, something that is not permitted at this stage in the proceedings. *See Mercado v. Ritz-Carlton San Juan Hotel, Spa & Casino*, 410 F.3d 41, 48 n9 (1st Cir. 2005)(observing that where factual issues remain "[j]udgment of dismissal, however framed, was therefore premature"); *Pearson v. Town of Rutland*, No. Civ. A. 01-40164, 2002 WL 32759592 *10 (D. Mass. Sept. 10, 2002) ("Such factual questions underscore the inappropriateness of deciding this issue on a motion to dismiss."). Accordingly, the allegations of Defendants' misrepresentations are sufficiently specific to serve as the basis for a claim of fraudulent misrepresentation and the issue of reasonableness of reliance is not appropriately decided on a motion to dismiss.

More to the point, this Court in *Frederick v Conagra, Inc.*, specifically held that similar allegations satisfy the requirements of Rule 9:

> Frederick has satisfied all the required elements of specificity under Rule 9(b). Frederick's allegations essentially are that Armour, primarily through Zilinskas, made certain representations to him during negotiations about Frederick joining Amour. These allegations conducted in the summer of 1986, concerned the terms and conditions of Frederick's employment with Armour. The representations were false. These allegations, which do not – and need not – directly aver actual fraudulent intent on Zilinskas' part, are sufficient under Rule 9(b).

713 F. Supp. 41, 46 (D. Mass. 1989). Likewise, the allegations in the SAC satisfy the requirements of Rule 9(b) sufficient to survive Defendants' motion to dismiss.

The second aspect of Defendants challenge, namely that the misrepresentations are promissory in nature and therefore necessarily lacking the requisite specificity, is equally unavailing. While it is the general rule that a statement that is promissory in nature cannot serve as the basis for a cause of action based on fraud, Massachusetts law recognizes two important exceptions. First, a promissory statement can be actionable as

fraud where the parties to the transaction are not on equal footing but where one has or is in a position where he should have superior knowledge concerning the matters to which the misrepresentations relate. Second, a promise relating to a future event may also constitute actionable fraud when made without intention of performance.

"Although as a general rule representations as to future events are not actionable, an exception has been recognized 'where the parties to the transaction are not on equal footing but where one has or is in a position where he should have superior knowledge concerning the matters to which the misrepresentations relate.'" *Cellucci v. Sun Oil Co.*, 320 N.E.2d 919 (Mass. Ct. App. 1974), *aff'd* 331 N.E.2d 813 (1975).

Again, the *Frederick* case is instructive. 713 F. Supp. at 46-47.

> It has been said that erroneous predictions as to future actions of third persons do not make out a cause of action for fraud or deceit. <u>Liberty Leather Corp. v. Callum, 653 F.2d 694, 698 (1st Cir.1981)</u>. Where one of the parties to a transaction possesses superior knowledge about the matter to which such representations relate, Massachusetts law recognizes an exception to the rule. *47<u>Cellucci v. Sun Oil Co., 2 Mass.App.Ct. 722, 730, 320 N.E.2d 919 (1974)</u>; Williston, *Contracts* sec. 1496, at 373-74 (3d ed. 1970).
>
> The pertinent issues of fact relate to how Armour planned to make use of Frederick in its marketing programs, what monies had been set aside by ConAgra for Armour's advertising and promotional needs, what conditions Frederick would be working under, the length of time for which he was being hired, and whether he was to have a special, favorable bonus arrangement. Zilinskas was in a superior position to know these facts. Accordingly, that the representations may in part have related to future events is irrelevant to the Court's inquiry. Where a representation of fact is made by one in a superior position to know of its truth, a plaintiff who relied on the false representation to his detriment need not allege that the person who made the statement had actual knowledge of the statement's falsity. *See <u>Nickerson v. Matco Tools Corp., 813 F.2d 529, 530 (1st Cir.1987)</u> (where a defendant's agent was in a superior position to know, "under Massachusetts law [the plaintiff] need not prove that [the

> defendant's agent actually] knew his statements [were] false"
> to state a claim for deceit).

*Id.* This case presents almost identical circumstances, in that, throughout the relevant time period, Defendants made specific representations about, for example only, the future employment of Carr by Iron Mountain and the knowledge as to the truth of those promises, which patently rested exclusively with the counter-defendants as they were in a superior position to know the facts.

Similarly, in *Della Croce v. General Elec. Co.*, the court found that certain statements about an employee's advancement potential within the company were actionable on a theory of fraud. Civ. A. No. 83-238-G, 1988 WL 6582 (Jan. 7 1988).

> The representations at issue in this case were made by Milley in his capacity as manager of the Engineering Support Division, in the context of encouraging the plaintiff to accept a job under his supervision which he himself had created. Milley was certainly better able than the plaintiff to evaluate the potential benefits of the analyst position, and the plaintiff was thus entitled to rely on his representations. Moreover, Milley was in a position to exercise considerable control over the future conditions of the plaintiff's employment as an analyst. His statements concerning that job are thus actionable if he knowingly misrepresented either the potential benefits of the job or his own intention to provide them, and the plaintiff relied on those representations to her detriment.

*Id.*

In the present case, the representations made by Iron Mountain and its agents clearly involved matters which were exclusively within the control of Iron Mountain. Accordingly, to the extent that the representations were promissory in nature they fall within the well-recognized exception under Massachusetts law and are sufficient to withstand the pending motion.

E.  **Carr Does Not Employ The "Group Pleading" Technique More Than Satisfying Rule 9.**

Concerning counter-defendants' argument that knowledge of the falsity of the promises is not sufficiently alleged, again, in the SAC in paragraphs 31, and 52 specifically allege that promises previously described were made with absolutely no intention of fulfillment and were made with the knowledge that they were false when made and that when they were made, there was no intention of fulfilling them. Rule 9(b) provides: " In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be state with particularity. Malice, intent, knowledge, and other condition of mind of a person my be averred generally." *See also Frederick* 713 F. Supp. at 46-47, discussed *supra* p. 11.

Regarding the 'group pleading technique' argument, each and every promise by each and every counter-defendant is set forth with particularity in paragraphs 18, 19, 20, 22, 23, 24, 27, 28, 29, and 30. The individual as well as representative capacities in which the aforementioned promises were made have previously been discussed herein.

Count II of the SAC specifically names counter-defendants Varn, Watzke, Reese, Keeny and Moore and incorporates by reference all of the specific allegations in the aforementioned paragraphs. Therefore, the counter-defendants' argument regarding a 'group pleading technique' is misplaced. The counter-defendants argue that a claimant must make a specific and separate allegations against each counter-defendant. This has been accomplished. As a practical peculiarity of these circumstances, and as successfully pleaded in the SAC, many of the meetings involving promises were attended by more than one of the counter-defendants. The fact that they chose to encounter Carr as a

'group' and chose to lie to Carr as a 'group' should in no way serve as a protection for wrongdoing committed by individuals assembled as a group.

## CONCLUSION

The Second Amended Complaint exceeds the notice pleading requirements of Rule 8 and those additional requirements of Rule 9. Bald allegations, such as those raised by the counter-defendants, are of no value in this forum. Rather, the Court should allow the parties to immediately proceed to discovery with the knowledge that Rule 56 entitles the counter-defendants with the opportunity to raise the arguments they prematurely voice today.

Dated: November 3, 2005

Respectfully submitted,

By his attorneys,

_____
Read K. McCaffrey *(pro hac)*
PATTON BOGGS, LLP
2550 M Street, NW
Washington, DC 20005
(202) 457-5243
rmcccaffrey@pattonboggs.com

CERTIFICATE OF SERVICE

I hereby certify that a true copy of Counter-Plaintiff Thomas Carr's Opposition to Counter-Defendants' Motion to Dismiss the Second Amended Counterclaims was served on all counsel of record via Electronic Case Filing or as otherwise required by LCvR 5.2.

_____
Christopher Hellmich