UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| _____ ) | | |
| IRON MOUNTAIN INCORPORATED; ) | | |
| IRON MOUNTAIN INFORMATION ) | | |
| MANAGEMENT, INC.; C. RICHARD ) | | |
| REESE; JOHN F. KENNY, JR.; ) | | |
| GARRY B. WATZKE; LARRY L. VARN; ) | | |
| and CHARLES G. MOORE, ) | | |
| ) | | |
| Plaintiffs and ) | CIVIL ACTION | |
| Counterclaim-Defendants, ) | NO. 05 10890 RCL | |
| ) | | |
| v. ) | | |
| ) | | |
| THOMAS CARR, ) | | |
| ) | | |
| Defendant and ) | | |
| Counterclaim-Plaintiff. ) | | |
| _____ ) | | |

**PLAINTIFFS' SURREPLY TO DEFENDANT'S
MOTION TO DISQUALIFY COUNSEL**

Defendant and Counterclaim-Plaintiff Thomas a/k/a "Tommy" Carr ("Carr") persists in

his misguided seeking to disqualify Larry L. Varn ("Varn"), Samual A. Miller ("Miller"), and the

law firm of Sullivan & Worcester LLP ("S&W" and together with Varn and Miller, "Counsel").

Carr has submitted a "reply" brief that raises a new argument of no greater merit than those

previously advanced.  Specifically, Carr now contends that a "common interest" privilege

provides a basis for disqualification and, in a jumbled contortion, also invokes Mass. R. Prof. C.

1.9, which regulates lawyers' conduct in respect of former clients.  On November 7, 2005, the

Court ordered Plaintiffs to file a brief addressing these new arguments.

Carr's new contentions are entirely baseless.  First, the law is clear that parties to a

common interest privilege are not precluded from using communications between them in a

subsequent action between those same parties.  Second, Mass. R. Prof. C. 1.9 has no bearing at

all on the issues before the Court because Carr was never a client of Varn, Miller or S&W.

Carr's other arguments merely rehash prior arguments that are equally without merit.

Accordingly, the Court should deny Carr's disqualification motion.

## Background

Although the parties have thoroughly detailed in their previous submissions the

interactions between Carr on the one hand and the Plaintiffs, as well as Miller and S&W on the

other, there are certain background and procedural details particularly germane to this surreply.

To be sure, Carr and Iron Mountain Incorporated and its affiliates, including Iron Mountain

Information Management, Inc. (collectively "Iron Mountain"), had simultaneous and, in at least

one respect, overlapping disputes with J. Peter Pierce ("Pierce"), formerly an Iron Mountain

director and officer.  In late March 2002, Iron Mountain filed a complaint against Pierce in

Middlesex County, New Jersey, alleging, *inter alia*, that Pierce, by aiding a competing records

management company named "Sequedex," violated both his written covenants with Iron

Mountain and his fiduciary obligations to Iron Mountain and its stockholders.  Shortly thereafter,

Carr alleged, in his own, separate civil action (where Carr was represented by his own, separate

counsel) against Pierce in Monmouth County, New Jersey, that Pierce formed Sequedex to

compete surreptitiously with Iron Mountain and that "in so doing 'posted' significant costs

including payroll, etc. expended to operate Sequedex on the books of Logisteq," which was a

transportation and warehousing company that Carr and Pierce jointly owned.

Iron Mountain and Carr agreed to share information concerning Pierce's contractual and

fiduciary defalcations, though, as explained in the Plaintiffs' original opposition to the

disqualification motion, the sharing usually went in one direction.  Additionally, counsel to Iron

{B0460054; 4}

Mountain and counsel to Carr agreed that these communications were privileged from disclosure to Pierce under New Jersey's common interest privilege.  Nevertheless, from the very inception of their dialogue until it came to an end when Carr began making his false and erratic "claims" against the Plaintiffs, Carr always retained separate counsel and Varn, Miller and S&W never represented Carr.[1]  Thus, although there was a common interest between Iron Mountain and Carr in having Pierce's activities discovered, upon the termination of Iron Mountain's and Carr's disputes with Pierce that common interest also ceased.  As is not unusual, the parties that were once joined only by a common adversary are now adversaries themselves.

After Carr's case against Pierce foundered (obviously due, in large measure, to Pierce's public exposure of Carr's criminal behavior), Carr commenced a new scheme directed against the Plaintiffs.  Carr started making wholly unsupported, unsubstantiated and internally inconsistent allegations of unfulfilled promises, fraud and so forth against the Plaintiffs.  These accusations culminated in meetings between Carr's current counsel and Plaintiffs' counsel.  Knowing that the allegations were untrue and appreciating Carr's propensity for storytelling, as well as his well-documented run-ins with law enforcement, the Plaintiffs refused to acquiesce to Carr's clear attempts at a shakedown.  Plaintiffs then filed this action seeking merely a declaration that they do not have any unfulfilled obligations to Carr.

As a litigation tactic, Carr is now seeking to disqualify Iron Mountain's long-standing chosen counsel.  After consultation with S&W and Iron Mountain's General Counsel, Plaintiff Garry B. Watzke (himself an experienced attorney admitted to practice in Massachusetts)

---

[1] Carr often claimed to have evidence of Pierce's contractual and fiduciary breaches and, over a course of several months, regaled Iron Mountain executives and other representatives, including Varn, its principal outside counsel, with stories regarding this supposed evidence.  Unfortunately, Carr was rarely able to provide evidence to corroborate his stories.

{B0460054; 4}

selected S&W to represent Iron Mountain in the instant litigation. Despite Carr's wild allegations, the Plaintiffs are not aware of any evidence suggesting that there is any conflict of interest between the Plaintiffs and S&W that would materially interfere with S&W's independent professional judgment in its representation of Iron Mountain and the other named Plaintiffs, or any other reason why the Plaintiffs' informed choice of counsel should be disturbed. Additionally, the Plaintiffs, after consultation and full consideration, have waived any conflict, hypothetical or otherwise, and thus consented to the continued representation by S&W, Iron Mountain's regular counsel for over 20 years, in this matter.

<u>**Argument**</u>

Disqualification is a "drastic measure" that courts should hesitate to impose except when "absolutely necessary." <u>Inverness Med. Switzerland GMBH v. Acon Labs., Inc.</u>, No. 03-11323-PBS, No. 02-12303-PBS, 2005 WL 1491233 (D. Mass. Jun. 23, 2005). Carr's disqualification motion, which originally centered on the application of the advocate-witness rule, has now "blossomed" in Carr's reply brief to take in arguments related to the common interest privilege. Nevertheless, Carr's contentions should continue to be examined "[i]n light of the strong policy against disqualification of counsel in Massachusetts . . . ." <u>Inverness Med.</u>, 2005 WL 1491233, at *12 (denying a motion to disqualify counsel under the advocate-witness rule). Massachusetts courts favor "deference to the best judgment of counsel and client." <u>Cf.</u> <u>Serody v. Serody</u>, 19 Mass. App. Ct. 411, 413, 474 N.E.2d 1171, 1173 (1985) (noting that the matter "lies differently, however, if the testimony sought by an opponent is likely to be prejudicial to the client of the lawyer-witness.").

Carr's newest argument, that Iron Mountain and Carr's common interest in previous litigation should preclude S&W's representation of the Plaintiffs in this action, has no basis in

law, equity, logic or basic common sense.  In fact, Carr has failed to cite even a single case[2]

where the common interest of two parties in one litigation precluded the use of their

communications in a subsequent litigation between those same parties, much less required

disqualification of chosen counsel of one of the parties.  The case law and leading treatises reject

Carr's argument.

      **A.**     **Carr has No Basis for Asserting a Privilege Against the Plaintiffs.**

Despite Carr's assertions to the contrary, it is perfectly clear that Mass. Prof. C. 1.9 does

not apply because Varn, Miller and S&W have never represented Carr.  By its plain language,

---

[2] The cases cited by Carr in his brief on this point, namely <u>American Automobile Ins. Co. v. J. P. Noonan Transp., Inc.</u>, No. 970325, 2000 WL 33171004 (Mass. Super. Ct. Nov. 16, 2000), <u>Mass. Eye and Ear Infirmary v. GLT Phtototherapeutics, Inc.</u>, 167 F. Supp. 2d 108 (D. Mass. 2001), <u>F.D.I.C. v. Ogden Corp.</u>, 202 F.3d 454 (1st Cir. 2000), <u>In re Regents of the Univ. of Cal.</u> 101 F.3d 1386 (Fed. Cir. 1996); and <u>ebix.com, Inc. v. McCracken</u>, 312 F. Supp. 2d 82 (D. Mass 2004), are completely inapposite.  <u>American Automobile</u> and <u>Ogden</u> are addressed in the body of this brief.  <u>Massachusetts Eye and Ear Infirmary</u>, though not addressing disqualification, actually illuminates the fundamental flaw in Carr's newest argument.  Carr cites the court's reference to Supreme Court Standard 503 for the proposition that confidential communications are not intended to be disclosed.  Nevertheless, Carr incredibly fails to note the same court's quotation of Standard 503(d)(3), which states that there is no privilege between common clients in subsequent litigation between those same clients.  Specifically, Standard 503(d)(3), quoted by this court in <u>Massachusetts Eye and Ear Infirmary</u>, provides:

> There is no privilege under this [standard] … as to a communication relevant to a matter of common interest between two or more clients if the communication was made by any of them to a lawyer retained or consulted in common, when offered in an action between any of the clients.

<u>Massachusetts Eye and Ear Infirmary</u>, 167 F. Supp. 2d at 116 (quoting Sup. Ct. Standard 503(d)(5), reprinted in Weinstein's Evidence, § 503.01.)  The <u>Regents of the University of California</u> case also does not address disqualification or subsequent litigation between two parties to a common interest privilege and is therefore not applicable.  Finally, <u>ebix</u> is not applicable because there was an undisputed attorney-client relationship between the party and the opposing counsel whose disqualification was sought.  As noted, there was <u>never</u> any attorney-client relationship between Carr and S&W.

{B0460054; 4}

each subsection under Rule 1.9, headed "Conflict of Interest:  Former Client," requires a former

attorney client relationship:

> (a) A **_lawyer_** who has formerly represented a **_client_** …

> (b) A **_lawyer_** shall not knowingly represent a person in the same or
> a substantially related matter in which a firm with which the
> **_lawyer_** formerly was associated had previously represented a **_client_**
> …

> (c) A **_lawyer_** who has formerly represented a **_client_** …

As Carr expressly acknowledges on page 9 of his reply brief, neither Varn, Miller nor S&W ever

represented Carr.  The plain language of Rule 1.9 applies **only** to a lawyer who has formerly

represented a client in a matter, and therefore Rule 1.9 is not applicable here.

Further, Carr does not have any other basis for keeping communications with Iron

Mountain or its attorneys confidential in this case.  The "common interest" privilege, upon which

he now relies so heavily, is typically understood to apply when two or more clients consult or

retain an attorney on particular matters of common interest; in such a situation, the

communications between each of them and the attorney are privileged from the prying eyes and

ears of third parties (such as, for example, Pierce in this case).  Cf. Ken's Foods, Inc. v. Ken's

Steak House, Inc., 213 F.R.D. 89, 93 (D. Mass. 2002).  "Similarly, 'the privilege applies to

communications made by the client or the client's "lawyer to a lawyer representing another in a

matter of common interest.' "  Id., quoting Weinstein's Federal Evidence § 503.12 (2002).

Importantly, the common interest privilege is not an independent privilege; rather, it is an

exception to the general rule that the attorney-client privilege is waived when privileged

information is disclosed to certain third parties.  Id.  There was, however, never any

attorney-client privilege as between Varn, Miller or S&W on the one hand, and Carr on the

other, nor was there a joint representation of Carr and Iron Mountain as to which this exception would apply. Accordingly, Carr has no basis for asserting any privilege against the plaintiffs.

**B.     The Existence of Any Common Interest in Previous Litigation Has Expired.**

Any common interest that may have existed between and among Iron Mountain and Carr in any previous action would not restrict the Plaintiffs' use of those communications in this action. A common interest privilege does not survive to prevent disclosure in subsequent litigation between the parties that may have originally possessed the privilege. Legions of cases and every learned treatise on the subject are in accord. See Ogden Corp., 202 F.3d at 461; see generally In re Grand Jury Subpoena, 274 F.3d 563, 573 (1st Cir. 2001) (noting that "the [joint defense or common interest] privilege does not apply in subsequent litigation between the joint clients . . . in that sort of situation, one client's interest in the privilege is counterbalanced by the other's interest in being able to waive it."); American Auto. Ins. Co., 2000 WL 33171004, at *8 ("[r]ecognizing that the [common interest] privilege must be flexible enough to survive discussion of differing interests, however, is a far cry from saying that it survives litigation . . ."); Young, Mass. Practice Series, Evidence § 503.2 (noting that the clients who consult with the same lawyer about the same matter, with full knowledge thereof, lose any claim of privilege as to communications made in the course of such representation in later litigation between themselves); Wigmore, Evidence § 2312 (noting that communications between two parties having a common interest are privileged from disclosure at the insistence of a third person, "[y]et they are not privileged in a controversy between the two original parties, inasmuch as the common interest and employment forbade concealment by either from the other").

The Ogden case, decided by the Court of Appeals for the First Circuit, is particularly instructive with regard to the attempted application of communications covered by the common

interest privilege in subsequent litigation.  In <u>Ogden</u>, sellers of partnership interests in a waste-to-

energy facility sued the buyer seeking payments allegedly due out of proceeds of an insurance

recovery.  In previous litigation against certain insurers, Ogden Corporation, the appellant, and

the predecessor in interest to the appellee FDIC, had been represented by the same counsel.  In

the subsequent litigation over the allocation of amounts recovered from those insurers, the FDIC

subpoenaed Ogden's previous counsel, seeking documents including communications between

counsel and Ogden.  The district court had ordered the previous counsel, not itself a party to the

underlying action, to produce the documents despite appellant's claim that they were protected

from disclosure by the attorney-client privilege.  The Court of Appeals found that "[d]espite its

venerable provenance," the attorney client privilege is not absolute and that one of the

recognized exceptions rendering the privilege inapplicable is a subsequent dispute between joint

clients.  <u>Ogden</u>, 202 F.3d at 461.  Specifically, the Court of Appeals held that:

> [W]hen a lawyer represents multiple clients having a common
> interest, communications between the lawyer and any one (or
> more) of the clients are privileged as to outsiders but not *inter sese.*

<u>Id.</u>  The Court went on to quote "one leading treatise" on the subject:

> [W]hen two or more persons, each having an interest in some
> problem, or situation, jointly consult an attorney, their confidential
> communications with the attorney, though known to each other,
> will of course be privileged in a controversy of either or both of the
> clients with the outside world, that is, with parties claiming
> adversely to both or either of those within the original charmed
> circle. ***But it will often happen that the two original clients will
> fall out between themselves and become engaged in a controversy
> in which the communications at their joint consultation with the
> lawyer may be vitally material. In such a controversy it is clear
> that the privilege is inapplicable***.

- 8 -

Id. (quoting 1 K. Broun, *et al.*, McCormick on Evidence § 91 at 335-36 (4th ed. 1992))
(emphasis added). The Court of Appeals thus affirmed the district court's decision ordering the
disclosure of the subpoenaed documents.

Even examined in the light most favorable to Carr, Carr's claim of a common interest
does not rise to the level of the claim of privilege in Ogden. Carr does not claim that he had an
attorney-client relationship with S&W or that he was even a "joint client" with Iron Mountain,
but merely that he shared a common interest and a protection against disclosure of
communications to Pierce. The Plaintiffs recognize that Carr and Iron Mountain had a shared
interest, albeit a limited one, in their respective actions against Pierce and that their
communications in that context were protected against disclosure ***to Pierce***. Those actions are
long over. Now that Carr, who has been found to have "bamboozled" Iron Mountain in the past,
has turned his fire on it and the other Plaintiffs, the Plaintiffs may use the communications
originally covered by the shared interest to protect themselves against Carr's attempt to shake
them down. Not only is there nothing improper if Plaintiffs use those prior communications,
there is nothing at all in the parties' prior relationship to provide a basis for disqualification of
Plaintiffs' counsel.

The Declaration of Arthur Peslak, Carr's counsel, which is attached as Exhibit 2 to Carr's
reply brief, further undermines Carr's new argument regarding the common interest privilege.
Even attorney Peslak recognizes that the common interest privilege will not apply upon
commencement of adversarial relations between Carr and the Plaintiffs. Specifically, Peslak
states in his declaration, "[t]he common interest privilege in my view continued through the
2003-2004 arbitration and ***did not cease until 2005 when it became obvious that Carr and Iron
Mountain, Inc. were at odds over Iron Mountain's promises***." Peslak Decl., ¶ 21. Peslak

- 9 -

clearly recognized the prevailing law in New Jersey that while the common-interest privilege

could protect communications between Carr and the Plaintiffs from disclosure to third parties,

such as Pierce, any such privilege came to an end upon commencement of litigation between the

Carr and the Plaintiffs.

> **C.     The Common Interest Privilege Cannot Prevent Disclosure in this Instance.**

Any common interest privilege that may have existed as between Iron Mountain and Carr

is also waivable.  Even the attorney-client privilege, with or without "joint clients" or others with

"common interest" to complicate the matter, does not protect communications between an

attorney and a client in a subsequent dispute between that attorney and client.  See S.J.C. Rule

3:07, R.P.C., Rule 1.6.  Specifically, the Rules of Professional Conduct provide that:

> [a] lawyer may reveal . . . such information . . . (2) to the extent the
> lawyer reasonably believes necessary to establish a claim or
> defense on behalf of the lawyer in a controversy between the
> lawyer and the client, to establish a defense to a criminal charge or
> civil claim against the lawyer based upon conduct in which the
> client was involved, or to respond to allegations in any proceeding
> concerning the lawyer's representation of the client".

Id.  In this action, it is clear that certain communications between Carr and Varn will be relevant

to the claims that Carr is now asserting against Varn.  Even if Varn had been Carr's attorney

(which he, indisputably, was not), Varn would still be permitted to reveal these communications

in his defense.  Accordingly, to claim that any communications between Carr and Varn cannot be

revealed in Varn's defense is simply absurd.

{B0460054; 4}

## <u>Conclusion</u>

For the foregoing reasons, as well as those delineated in their earlier filings regarding

Carr's motion to disqualify, Plaintiffs submit that the motion should be denied.

Respectfully submitted,

**IRON MOUNTAIN INCORPORATED;
IRON MOUNTAIN INFORMATION
MANAGEMENT, INC.; C. RICHARD
REESE; JOHN F. KENNY, JR.; GARRY
B. WATZKE; LARRY L. VARN; and
CHARLES G. MOORE**

By their attorneys,

November 17, 2005

/s/ Sam A. Miller
Ira K. Gross (BBO #212720)
*igross@sandw.com*
Samual A. Miller (BBO #648568)
*smiller@sandw.com*
SULLIVAN & WORCESTER LLP
One Post Office Square
Boston, MA  02109
(617) 338-2800

- 11 -

{B0460054; 4}