UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IRON MOUNTAIN INCORPORATED; IRON MOUNTAIN INFORMATION MANAGEMENT, INC.; C. RICHARD REESE; JOHN F. KENNY, JR.; GARRY B. WATZKE; LARRY L. VARN; and CHARLES G. MOORE,<br><br>      Plaintiffs,<br><br>      v.<br><br>THOMAS CARR,<br><br>      Defendant and Counter-Plaintiff,<br><br>      v.<br><br>IRON MOUNTAIN INCORPORATED; IRON MOUNTAIN INFORMATION MANAGEMENT, INC.; C. RICHARD REESE; JOHN F. KENNY, JR.; GARRY B. WATZKE; LARRY L. VARN; and CHARLES G. MOORE,<br><br>      Counter-Defendants. | Civil Action No. 05 10890 RCL |

**REPLY OF PLAINTIFFS IRON MOUNTAIN INCORPORATED,
IRON MOUNTAIN INFORMATION MANAGEMENT, INC.,
C. RICHARD REESE AND LARRY L. VARN TO
DEFENDANT'S SECOND AMENDED COUNTERCLAIM**

Plaintiffs and Counterclaim-Defendants Iron Mountain Incorporated ("IRM"), Iron Mountain Information Management, Inc. ("IMIM" and, together with IRM, sometimes referred to collectively hereinafter as "Iron Mountain"), C. Richard Reese ("Reese") and Larry L. Varn ("Varn" and, together with IRM, IMIM and Reese, sometimes referred to collectively hereinafter as the "Answering Plaintiffs"), by their attorneys, Sullivan & Worcester LLP, hereby reply to the

{B0508865; 2}

- 2 -

Defendant's and Counter-Plaintiff's Second Amended Counter-Claim, dated October 26, 2005 (the "SAC"), as follows:

**Facts Common to All Counts**

1.      Deny the allegations in paragraph 1, except admit that on February 1, 2000, Iron Mountain Incorporated, formerly a Delaware corporation ("Old Iron Mountain"), was merged with and into Pierce Leahy Corp., a Pennsylvania corporation ("PLC") (the "Merger") and that, immediately thereafter, PLC changed its name to Iron Mountain Incorporated.

2.      Deny the allegations in paragraph 2, except admit that (a) J. Peter Pierce ("Pierce") was elected to the Board of Directors of Iron Mountain in connection with and as a result of the Merger, and (b) Pierce was appointed as President of Iron Mountain and, also, as President, Chief Operating Officer and the most senior officer of Iron Mountain's paper records management operations operating in the Americas, *i.e.*, Iron Mountain Records Management, Inc. (now known as IMIM).

3.      Deny the allegations in paragraph 3, except admit that (a) on or about June 30, 2000, Pierce's employment with Iron Mountain and IMIM was terminated without cause, and (b) Pierce remained a member of Iron Mountain's Board of Directors until his resignation on December 23, 2002.

4.      Deny the allegations in paragraph 4, except admit that in connection with and as a condition to the Merger, Pierce and PLC (now IRM) entered into a written Employment Agreement, which contained certain non-competition and other covenants, the terms of which speak for themselves.

5.      Upon information and belief, admitted.

6. Deny the allegations in paragraph 6, except admit (a) upon information and belief, that commencing sometime in the middle of 2000 Pierce directly and indirectly, including though the use of Logisteq, managed, engaged in, participated in, and provide advice to, Sequedex LLC ("Sequedex"), a former IMIM competitor, and (b) that evidence exists to show that Logisteq expended or incurred substantial costs in aid of Sequedex.

7. Deny the allegations in paragraph 7, except admit that (a) on April 28, 2002, Iron Mountain filed a complaint against Pierce in the New Jersey Superior Court, Middlesex County, Chancery Division, alleging, *inter alia*, that Pierce had violated his written covenants with Iron Mountain and his fiduciary obligations to Iron Mountain and IRM's stockholders; (b) the action was stayed pending completion of a pending arbitration proceeding (the "Pierce Arbitration"); and (c) the arbitrator ruled that IRM did not introduce sufficient evidence that Pierce had violated his legal obligations to IRM and its stockholders.

8. Deny the allegations in paragraph 8.

9. Deny the allegations in paragraph 9, except admit that Transportation Concepts of New Jersey, Inc. or an affiliated entity ("TC") became a tenant of Iron Mountain at IMIM's Freehold, New Jersey, records center and that neither it, Logisteq nor Carr informed, rather each for a time secreted from, Iron Mountain that Logisteq had succeeded to the rights and obligations of TC.

10. Deny the allegations in paragraph 10, except admit that, on or about February 20, 2001, Iron Mountain, over the signature of Garry B. Watzke, Esq., its General Counsel, sent a letter to Carr and TC advising that Iron Mountain was exercising its option under the lease to terminate TC's tenancy effective March 31, 2001, which letter speaks for itself.

11. Deny the allegations in paragraph 11, except admit that Carr sent a letter to Watzke on or about February 28, 2001, which letter speaks for itself.

12. Deny the allegations in paragraph 12.

13. Deny the allegations in paragraph 13.

14. Deny the allegations in paragraph 14.

15. Deny the allegations in paragraph 15, except admit (a) upon information and belief, that James Neebling ("Neebling") is the President of Systrans Freight Systems, Inc. ("Systrans"), (b) that Arthur Peslak ("Peslak") is or was legal counsel to Carr in respect to certain of Carr's non-criminal matters, (c) that from time to time, certain of the Plaintiffs met with or had telephone conversations with Carr, Neebling, and/or Peslak and that (i) there were two meetings on March 19, 2002, in New Jersey, (ii) there was a meeting on March 26, 2002, in Boston, (iii) there was a telephone conference with Peslak on April 2, 2003, (iv) there was a meeting on April 9, 2002, in New York, New York, and (v) there was a social dinner in September, 2003, in New York.

16. Deny the allegations in paragraph 16 and respond to the subparagraphs thereof as follows:

>16.1. Deny the allegations in paragraph 16.1, except admit that, in or about April, 2002, Iron Mountain, at Carr's request, made a one-time advance to Peslak, Carr's counsel in certain non-criminal proceedings, in the amount of $50,000 to be applied towards Mr. Carr's legal expenses in connection with litigation that Carr had initiated against Pierce in order to attempt to ensure that there was a full airing of information and a complete

- 5 -

      evidentiary presentation of facts that were also relevant to the Pierce Arbitration.

  16.2.  Deny the allegations in paragraph 16.2.

  16.3.  Deny the allegations in paragraph 16.3.

  16.4.  Deny the allegations in paragraph 16.4.

  16.5.  Deny the allegations in paragraph 16.5.

  16.6.  Deny the allegations in paragraph 16.6.

  16.7.  Deny the allegations in paragraph 16.7.

17.  Deny the allegations in paragraph 17, except admit that, in or about April, 2002, Iron Mountain, at Carr's request, made a one-time advance to Peslak, Carr's counsel in certain non-criminal proceedings, in the amount of $50,000 to be applied towards Mr. Carr's legal expenses in connection with litigation that Carr had initiated against Pierce in order to attempt to ensure that there was a full airing of information and a complete evidentiary presentation of facts that were also relevant to the Pierce Arbitration..

18.  Deny the allegations in paragraph 18, except admit that there was a meeting on or about March 26, 2002, at Iron Mountain's corporate headquarters in Boston, Massachusetts, involving Carr and Neebling and that John F. Kenny, Jr., Reese and Watzke attended portions of such meeting.

19.  Deny the allegations in paragraph 19, except admit that Carr and Peslak spoke by telephone with Watzke on or about April 2, 2002, on account of Carr's having been fired by Pierce from Logisteq.

20.  Deny the allegations in paragraph 20, except admit that (a) on April 9, 2002, Reese, Kenny and Varn attended a dinner meeting with Carr, Neebling and Peslak at

{B0508865; 2}

Giambelli's, a restaurant on East 50th Street in New York, New York, (b) Reese, on behalf of Iron Mountain, undertook, in response to a request from Carr, to make an advance of $50,000 to Peslak to help defray Carr's legal expenses in his litigation with Pierce so as to ensure a full airing and evidentiary presentation of the issues in that case that were also common to issues in the Pierce Arbitration, and (c) Sullivan & Worcester LLP, upon Varn's instruction, caused the advance to be made to Peslak's trust account via wire shortly thereafter.

21. Deny the allegations in paragraph 21.

22. Deny the allegations in paragraph 22.

23. Deny the allegations in paragraph 23.

24. Deny the allegations in paragraph 24.

25. Deny the allegations in paragraph 25, except admit that Carr and Neebling introduced counsel to Iron Mountain to certain individuals, some of whom appeared to have knowledge of matters relevant to the Pierce Arbitration, and that Neebling provided a few documents to counsel to Iron Mountain.

26. Deny the allegations in paragraph 26.

27. Deny the allegations in paragraph 27, except admit that Watzke spoke by telephone with Peslak in or about July, 2003.

28. Deny the allegations in paragraph 28.

29. Deny the allegations in paragraph 29, except admit that Varn and Moore had a social dinner with Carr and Neebling at Gallagher's Restaurant on West 52nd Street in New York City on or about September 9, 2003.

30. Deny the allegations in paragraph 30.

31. Deny the allegations in paragraph 31 and specifically deny that any of the Answering Plaintiffs has any obligations to Carr.

32. Deny the allegations in paragraph 32.

33. Deny the allegations in paragraph 33.

34. Deny the allegations in paragraph 34.

35. Deny the allegations in paragraph 35, except admit that Iron Mountain had denied any obligations or liability to Carr.

36. Deny the allegations in paragraph 36.

37. Deny the allegations in paragraph 37, except admit that on February 23, 2005, Varn and Watzke attended a meeting with Carr's lead counsel in this action, principally to hear Carr's counsel's explanation as to how, in his view, Carr might be of assistance to Iron Mountain in its ongoing disputes with Pierce and Carr's plans to initiate additional litigation against Pierce related to the demise of Logisteq.

38. Deny the allegations in paragraph 38, except admit that Watzke and Varn received a letter, dated February 25, 2005, from Carr's counsel in this action and that the letter speaks for itself.

39. Deny the allegations in paragraph 39, except admit that Watzke and Varn received a letter, dated April 7, 2005, from Carr's counsel in this action and that the letter speaks for itself.

40. Deny the allegations in paragraph 40, except admit that Watzke spoke by telephone with counsel to Carr on or about April 19, 2005, and advised him that Varn was out of the country until at least April 25, 2005.

41. Deny the allegations in paragraph 41, except admit that Varn sent an email to counsel to Carr on or about April 27, 2005, advising him in material part that:

> I am leaving the office this morning to resume a trial in Barnstable, which will consume the rest of this week. We won't finish the case this week but at this point I don't know if there is going to be a hiatus or whether we'll resume right away after the weekend. I will make it a priority to review matters with Iron Mountain as soon as I am off that trial.

42. Deny the allegations in paragraph 42, except admit that Varn and Watzke received a letter, dated May 1, 2005, from counsel to Carr, and that such letter speaks for itself.

43. Deny the allegations in paragraph 43, except admit that Plaintiffs commenced this action by filing a complaint on May 2, 2005.

## Count I
### (Breach of Contract)

44. In response to paragraph 44 of the SAC, the Answering Plaintiffs incorporate as if set forth in full herein their responses to paragraphs 1 through and including 43 thereof.

45. Deny the allegations in paragraph 45.

46. Deny the allegations in paragraph 46 and specifically deny that any oral contract exists or ever existed between Carr on the one hand, and any of the Plaintiffs on the other.

47. Deny the allegations in paragraph 47 and specifically deny that any oral contract exists or ever existed between Carr on the one hand, and Iron Mountain or any of the other Plaintiffs on the other.

48. Deny the allegations in paragraph 48.

## Count II
### (Against Counter-Defendants Varn, Watzke, Reese, Kenny and Moore)
### (Fraudulent Misrepresentation)

49. Count II of the SAC has been dismissed by the Court; accordingly, no response is required to paragraph 49 thereof.

50. Count II of the SAC has been dismissed by the Court; accordingly, no response is required to paragraph 50 thereof.

51. Count II of the SAC has been dismissed by the Court; accordingly, no response is required to paragraph 51 thereof.

52. Count II of the SAC has been dismissed by the Court; accordingly, no response is required to paragraph 52 thereof.

53. Count II of the SAC has been dismissed by the Court; accordingly, no response is required to paragraph 53 thereof.

54. Count II of the SAC has been dismissed by the Court; accordingly, no response is required to paragraph 54 thereof.

55. Count II of the SAC has been dismissed by the Court; accordingly, no response is required to paragraph 55 thereof.

## FIRST AFFIRMATIVE DEFENSE

The SAC fails in various ways to state a claim upon which relief can be granted against any of the Answering Plaintiffs.

## SECOND AFFIRMATIVE DEFENSE

Count I of the SAC is barred by the applicable statute of limitations.

## THIRD AFFIRMATIVE DEFENSE

Count I of the SAC is barred by the failure of consideration.

## FOURTH AFFIRMATIVE DEFENSE

The Answering Plaintiffs have satisfied, in full, any and all obligations owed to Carr.

## FIFTH AFFIRMATIVE DEFENSE

Certain of the claims set forth in Count I of the SAC are barred by the existence and terms of a subsequent written agreement.

## SIXTH AFFIRMATIVE DEFENSE

Carr has waived, in whole or in part, the claims set forth in the SAC.

## SEVENTH AFFIRMATIVE DEFENSE

Carr is estopped by his statements and conduct or that of others for whose conduct he is responsible from pursuing Count I of the SAC.

## EIGHTH AFFIRMATIVE DEFENSE

Count I of the SAC is barred by Carr's material misrepresentations of fact to the Answering Plaintiffs and others, including but not limited to his material misrepresentations of fact related to his criminal activities, which have resulted in two (2) pleas of guilty by him to federal felonies.

## NINTH AFFIRMATIVE DEFENSE

Carr has filed to mitigate his alleged damages.

## TENTH AFFIRMATIVE DEFENSE

If there were any agreements or unfulfilled promises between Carr and any of the Answering Plaintiffs, which the Answering Plaintiffs deny, the Answering Plaintiffs have been excused and discharged from any and all performance thereunder due to Carr's material and substantial breaches thereof.

## ELEVENTH AFFIRMATIVE DEFENSE

If there were any agreements or unfulfilled promises between Carr and any of the Answering Plaintiffs, which the Answering Plaintiffs deny, the Answering Plaintiffs have been excused and discharged from any and all performance thereunder due to Carr's material misrepresentations of fact and fraudulent concealment of relevant information, including but not limited to (a) his material misrepresentations, and fraudulent concealment, of facts related to his criminal activities which have resulted in two (2) pleas of guilty by him to federal felonies, (b)

his commission of other crimes and offenses in New Jersey and elsewhere, and (c) his involvement and associations with elements and members of organized crime.

### TWELFTH AFFIRMATIVE DEFENSE

Carr was never eligible for employment by or any consulting position to Iron Mountain, in any capacity, due to his prior commission of felonies and other crimes and offenses.

### THIRTEENTH AFFIRMATIVE DEFENSE

Both Carr and Systrans have expressly and irrevocably disclaimed any right, title or interest on his part in, or involvement by him, in any capacity, with, Systrans.

### FOURTEENTH AFFIRMATIVE DEFENSE

Carr lacks standing to assert any claims on behalf of or related in any way to Systrans.

### FIFTEENTH AFFIRMATIVE DEFENSE

If Carr has standing to assert any claims on behalf of or related in any way to Systrans, which the Answering Plaintiffs expressly deny, such claims are barred by the material and substantial breaches by Systrans of its written contract with IMIM, including but not limited to its failure to pay vendors, its failure to perform services to IMIM in accordance with the terms of the contract, and its multiple overbilling of IMIM.

### SIXTEENTH AFFIRMATIVE DEFENSE

If Carr has standing to assert any claims on behalf of or related in any way to Systrans, which the Answering Plaintiffs expressly deny, such claims are barred by the material misrepresentations of fact by Systrans to Iron Mountain, including but not limited to its express representation that Carr had no interest in or involvement with Systrans.

WHEREFORE, the Answering Plaintiffs request that this Court:

1. Dismiss the SAC in its entirety, with prejudice to the rebringing thereof;

2. Award the Answering Plaintiffs their costs and expenses of action, including reasonable attorneys' fees and disbursements; and

3. Award to the Answering Plaintiffs such relief against Carr as is just.

**IRON MOUNTAIN INCORPORATED, IRON MOUNTAIN INFORMATION MANAGEMENT, INC., C. RICHARD REESE, and LARRY L. VARN,**

By their attorneys,

April 14, 2006

/s/ Samual A. Miller
Ira K. Gross (BBO #212720)
*igross@sandw.com*
Samual A. Miller (BBO #648568)
*smiller@sandw.com*
SULLIVAN & WORCESTER LLP
One Post Office Square
Boston, Massachusetts 02109
(617) 338-2800

Certificate of Service

I hereby certify that this **Reply of Plaintiffs Iron Mountain Incorporated, Iron Mountain Information Management, Inc., C. Richard Reese and Larry L. Varn to Defendant's Second Amended Counterclaim**, filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on April 14, 2006.

/s/ Samual A. Miller

{B0508865; 2}