UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IRON MOUNTAIN INCORPORATED; IRON MOUNTAIN INFORMATION MANAGEMENT, INC.; C. RICHARD REESE; JOHN F. KENNY, JR.; GARRY B. WATZKE; LARRY L. VARN; and CHARLES G. MOORE, | ) ) ) ) ) ) ) | |
| Plaintiffs and Counterclaim-Defendants, | ) ) ) | CIVIL ACTION NO. 05 10890 RCL |
| v. | ) ) | |
| THOMAS CARR, | ) ) | |
| Defendant and Counterclaim-Plaintiff. | ) ) ) | |
| IRON MOUNTAIN INFORMATION MANAGEMENT, INC., | ) ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. 05 10999 RCL |
| v. | ) ) | |
| SYSTRANS FREIGHT SYSTEMS, INC., | ) ) | |
| Defendant. | ) ) | |

**PLAINTIFFS' AND COUNTER-DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1, Plaintiffs and Counter-Defendants

Iron Mountain Incorporated ("Iron Mountain"), Iron Mountain Information Management, Inc.

("IMIM"), C. Richard Reese ("Reese"), John F. Kenny, Jr. ("Kenny"), Garry B. Watzke

("Watzke"), Larry L. Varn ("Varn") and Charles G. Moore ("Moore") (collectively, "Plaintiffs")

submit this statement of undisputed material facts in support of their Motion for Summary

1

Judgment[1] against Defendant and Counterclaim-Plaintiff Thomas Carr ("Carr").  Plaintiffs submit herewith and incorporate herein by reference the Declaration of Ira K. Gross, Esq., ("Gross Declaration" or "Gross Decl."), and the exhibits annexed thereto.  The undisputed material facts are as follows:

    1.    None of the Plaintiffs has ever entered into a written contract with Carr.  See Deposition of Thomas Carr, taken February 28, 2007 and March 15, 2007 ("Carr Deposition" or "Carr Depo.")[2] p. 5.

    2.    None of the Plaintiffs has ever made any offer, promise or assurance to Carr in writing.  See Carr Deposition p. 5.

    3.    On May 30, 2002, Carr was deposed in connection with a lawsuit he had previously filed against J. Peter Pierce ("Pierce") in New Jersey state court (the "Carr Litigation").  See Carr Depo. at Exhibit 1.  Counsel for Pierce asked Carr whether Iron Mountain had offered or given anything to him, and Carr responded, under oath: "They're too smart for that.  Absolutely not….  They did not offer me any perks, any money, anything."  See Carr Depo. Exhibit 1 at p. 183.

    4.    Also during his deposition in the Carr litigation, counsel for Pierce asked Carr whether Iron Mountain had "dangled in front of [him] future employment or a future business association," and Carr responded, under oath: "None whatsoever.  They just asked me to speak the truth…."  See Carr Depo. Exhibit 1 at p. 183.

    5.    On July 31, 2003, Iron Mountain called Carr as a witness during an arbitration that Iron Mountain had previously filed against Pierce (the "Pierce Arbitration").  See Carr Depo.

---

[1] Two separate motions for summary judgment were filed in this case – one by the corporate plaintiffs (Iron Mountain and IMIM) and the other by the individual plaintiffs (Reese, Kenny, Watzke, Varn and Moore).  The material facts relevant to both motions are included within this Statement of Undisputed Material Facts.

[2] Relevant pages and exhibits from the Carr Deposition are attached to the Gross Declaration as Exhibit C.

at Exhibit 5.  Counsel for Pierce asked Carr what promises were made to him by Iron Mountain or its lawyers, and Carr responded, under oath: "There was no promises given."  See Carr Depo. Exhibit 5 at pp. 945.

6. In his deposition in this case, Carr affirmed his previous testimony (in the Carr Litigation and the Pierce Arbitration) as correct.  See Carr Depo. pp. 18, 212-13.

7. Carr testified in this case that, in September 2003, Varn made the following statement to him:  "I'm going to talk to [Mr.] Watzke, Tom, and I'm going to figure out a way how I can get you $2 million ….  I'll talk to Art, I'll talk to Garry and we'll try to work it out."  See Carr Depo. p. 201.

8. Carr's friend, James Neebling ("Neebling"), was present in September 2003 when Varn allegedly "promised" Carr $2 million.  Neebling testified in this case as follows:  "if you're going to ask me did [Varn] say 'I promise to give you $2 million,' no ….  The promise was [Varn] will go back to [Reese] and [Varn will] try to work something out ….  I didn't hear the word 'I promise.'"  See Deposition of James Neebling, taken February 27, 2007 and March 14, 2007 ("Neebling Deposition or Neebling Depo.")[3] pp. 168-69.

9. On or about April 9, 2002, Reese agreed to advance $50,000 to Arthur Peslak, Esq. ("Peslak"), Carr's counsel in the Carr Litigation, to help defray Carr's expenses in the Carr Litigation.  See Deposition of C. Richard Reese, taken November 30, 2006 ("Reese Deposition" or "Reese Depo.")[4] pp. 28-30; Carr Depo. p. 153.

---

[3] Relevant pages and exhibits from the Neebling Deposition are attached to the Gross Declaration as Exhibit G.

[4] Relevant pages from the Reese Deposition are attached to the Gross Declaration as Exhibit F.

10. Peslak received the $50,000 that Reese had agreed to advance to him. See Deposition of Arthur Peslak, Esq., taken March 14, 2007 ("Peslak Deposition" or Peslak Depo.")[5] p. 67.

11. The "total fees billed" in the Carr Litigation were $75,000 to $80,000, and those fees have been paid in full. See Peslak Depo. p. 68.

12. In May 2003, IMIM and Systrans, LLC ("Systrans") entered into a written contract for logistics management services (the "Systrans Contract"). The Systrans Contract contained no provision or promise as to how much courier business IMIM would provide to Systrans. See Neebling Depo. at Exhibit 2.

13. Carr has no interest, legal or otherwise, in Systrans. See Carr Depo. pp. 254-55 and Exhibit 11; see also Neebling Depo. p. 153.

14. Carr's understanding of the alleged "promise" to provide revenue to Systrans was that $25 million or $45 million in revenue would be provided to Systrans "each year for a period of five years." See Defendant's and Counter-Plaintiff's Second Amended Counterclaim (the "SAC")[6] ¶ 18.

15. At the time Systrans entered into the Systrans Contract, Systrans was a startup business with no history of profitability.

16. None of the Plaintiffs ever offered to hire Carr on a permanent basis or for Carr's lifetime.

17. In June 2002, Carr contacted Kenny and asked for a job, and Kenny responded that "he would see what he can do and get back to [Carr]." Carr Depo. pp. 237-38.

---

[5] Relevant pages and exhibits from the Peslak Deposition are attached to the Gross Declaration as Exhibit D.

[6] The SAC is attached to the Gross Declaration as Exhibit B.

18.     Carr seeks no damages relating to the allegations in the SAC that one of more of the Plaintiffs: (i) promised to provide a $5 million loan to Carr (see SAC ¶¶ 16.2, 18); (ii) made "assurances" to a man named Paul Schwartz that Carr was a good candidate to whom money could be loaned (see SAC ¶¶ 16.6, 30); and (3) made oral "assurances" that if any "negative financial effects" befell Carr, Iron Mountain would indemnify him (SAC ¶ 16.7).  See Carr's Fourth Amended Initial Disclosures (the "Disclosures")[7] at pp. 13-14.

19.     Carr's understanding of the alleged "offer" to provide him with $5 million was that a separate entity known as Schooner Capital would buy Pierce's share of Logisteq.  See Carr Depo. pp. 136-37; see also Carr's Supplemental Responses to Plaintiffs' First Set of Interrogatories ("Carr's Supp. Interrog. Resp.")[8] at Interrog. No. 7.  Carr's understanding was also that this alleged "offer" was a loan, not simply a payment of $5 million.  Id.

20.     According to Carr, the consideration he provided to one or more of the Plaintiffs was his assistance and support of Iron Mountain in its lawsuit against Pierce.  See SAC ¶ 13.

[*remainder of page intentionally left blank*]

---

[7] The Disclosures are attached to the Gross Declaration as Exhibit E.

[8] Carr's Supplemental Responses and Verified Second Supplemental Responses to Plaintiffs' First Set of Interrogatories are attached to the Gross Declaration as Exhibit I.

Dated:  June 21, 2007

Respectfully submitted,

**IRON MOUNTAIN INCORPORATED, IRON MOUNTAIN INFORMATION MANAGEMENT, INC., C. RICHARD REESE, JOHN F. KENNY, JR., GARRY B. WATZKE, LARRY L. VARN AND CHARLES G. MOORE**

By their attorneys,

/s/ Ira K. Gross
Ira K. Gross (BBO #212720)
*igross@sandw.com*
Kevin M. Colmey (Admitted *Pro Hac Vice*)
*kcolmey@sandw.com*
SULLIVAN & WORCESTER LLP
One Post Office Square
Boston, Massachusetts  02109
(617) 338-2800

**Certificate of Service**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on June 21, 2007.

/s/ Kevin M. Colmey