UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
IRON MOUNTAIN INCORPORATED;         )
IRON MOUNTAIN INFORMATION           )
MANAGEMENT, INC.; C. RICHARD        )
REESE; JOHN F. KENNY, JR.;          )
GARRY B. WATZKE; LARRY L. VARN;     )
and CHARLES G. MOORE,               )
                                    )
    Plaintiffs and                 )   CIVIL ACTION
    Counterclaim-Defendants,       )   NO. 05 10890 RCL
                                    )
    v.                             )
                                    )
THOMAS CARR,                        )
                                    )
    Defendant and                  )
    Counterclaim-Plaintiff.        )
_____)
                                    )
IRON MOUNTAIN INFORMATION           )
MANAGEMENT, INC.,                   )
                                    )
    Plaintiff,                     )   CIVIL ACTION
                                    )   NO. 05 10999 RCL
    v.                             )
                                    )
SYSTRANS FREIGHT SYSTEMS, INC.,     )
                                    )
    Defendant.                     )
_____)

**INDIVIDUAL PLAINTIFFS' MEMORANDUM OF LAW IN
SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

## Table of Contents

                                                          Page

I.    INTRODUCTION ..................................................................................................... 1

II.   STATEMENT OF FACTS ......................................................................................... 2

III.  ARGUMENT .............................................................................................................. 3

       A.     Standard ........................................................................................................... 3

       B.     Carr's Claim For Breach of Contract Against Reese Must be Dismissed Because There Is No Evidence That Carr Had a Contract With Reese ............ 3

              1.     Carr's allegation that Reese "offered" to give him $5 million is not supported by the record, and Carr seeks no damages based on this alleged offer. ........................................................................................... 4

              2.     Reese's alleged "promise" that Iron Mountain would hire Carr as a transportation consultant and provide $25 million in courier business to Systrans is not enforceable against Reese individually. .............................. 5

       C.     Carr's Claim For Breach of Contract Against Varn Must Be Dismissed Because Carr's Testimony Disproves His Claim ..................................................... 6

IV.  CONCLUSION ........................................................................................................... 8

## TABLE OF AUTHORITIES

### FEDERAL CASES

Armstrong v. Rohm & Haas Co., 349 F. Supp. 2d 71 (D. Mass. 2004) .............................. 6

Bergin v. Dartmouth Pharm., Inc., 326 F. Supp. 2d 179 (D. Mass. 2004) ........................ 3

DeNovellis v. Shalala, 124 F.3d 298 (1st Cir. 1997) ......................................................... 3

Hodgkins v. New Eng. Telegraph Co., 82 F.3d 1226 (1st Cir. 1992) ................................ 7

McCarthy v. Kylberg, 282 F.3d 70 (1st Cir. 2002) ............................................................ 6

Smith v. Stratus Computer, Inc., 40 F.3d 11 (1st Cir. 1994) ............................................. 3

Vega v. Kodak Caribbean, Ltd., 3 F.3d 476 (1st Cir. 1993) .............................................. 3

### STATE CASES

Bratcher v. Moriarty, Donoghue & Leja, P.C., 54 Mass. App. Ct. 111 (2002) .................... 5

Buker v. National Management Corp., 16 Mass. App. Ct. 36 (1983) ................................ 6

Greater Boston Cable Corp. v. White Mountain Cable Construction Corp.,
    414 Mass. 76 (1992) ..................................................................................................... 7

Henry W. Savage, Inc. v. Friedberg, 322 Mass. 321 (1948) .............................................. 7

Kuzmeskus v. Pickup Motor Co., 330 Mass. 490 (1953) .................................................. 6

Nile v. Nile, 432 Mass. 390 (2000) ..................................................................................... 3

Phoenix Spring Beverage Co. v. Harvard Brewing Co., 312 Mass. 501 (1942) ................ 6

Rhode Island Hospital Trust National Bank v. Varadian, 419 Mass. 841 (1995) .............. 6

Rosenfield v. United States Trust Co., 290 Mass. 210 (1935) ........................................... 6

Plaintiffs and Counterclaim-Defendants C. Richard Reese ("Reese"), John F. Kenny, Jr. ("Kenny"), Garry B. Watzke ("Watzke"), Larry L. Varn ("Varn") and Charles G. Moore ("Moore") (collectively, the "Individual Plaintiffs") respectfully submit this memorandum of law in support of their motion for summary judgment. The Individual Plaintiffs respectfully request that the Court enter a declaration that none of them has any contractual or other legal obligations to Defendant and Counterclaim-Plaintiff Thomas Carr ("Carr"), and that the Court dismiss Carr's last remaining counterclaim for breach of contract against Reese and Varn.

## I.   INTRODUCTION

Before this action was commenced, Carr, a twice-confessed federal felon, had made known to the Individual Plaintiffs his claim that they had promised him millions of dollars. The Individual Plaintiffs then filed this declaratory judgment action over two years ago for a declaration that they had no contractual or other legal obligations to Carr. In response, Carr filed a series of counterclaims, asserting that the Individual Plaintiffs had defrauded him and made a series of extravagant oral promises to him. Not a single one of the alleged "promises" is alleged to have been made in writing, and none is even referenced in a single piece of paper.

In March 2006, this Court dismissed each of Carr's baseless counterclaims against Kenny, Watzke and Moore. The only remaining counterclaim asserted by Carr in this case is for breach of an oral contract against Reese and Varn, although this Court has acknowledged that that this claim was "barely alleged" and its chances of success were "unlikely." Carr has nevertheless pressed forward with this feeble claim, alleging that: (i) Reese "offered $5 million to Carr"; (ii) Reese "promised that Iron Mountain would hire Carr as a transportation consultant" and provide millions of dollars in courier business to Systrans, Inc. ("Systrans"), a company owned by Carr's friend James Neebling ("Neebling"); and (iii) Varn "promised $2 million dollars for Carr to use to pay off certain debts."

No reasonable fact finder could conclude on this record that Carr had an enforceable contract with Reese or Varn. First, Carr seeks *no* damages relating to the alleged "offer" of $5 million, and his testimony in no way supports his allegation that Reese made such an offer. Second, even assuming Reese "promised" that Iron Mountain would hire Carr or provide business to Systrans (assumptions which are not supported by the record), there is not even an allegation – let alone evidence – that Reese made these promises to Carr in an individual capacity. Finally, notwithstanding the *allegation* that Varn "promised" to give Carr $2 million, Carr's own testimony reveals that Varn only stated that he would "try" and "work something out." These statements (even if made) are unenforceable as a matter of law.

Even when viewed in the light most favorable to Carr, the evidence in the record does not support Carr's only remaining counterclaim for breach of contract against Reese and Varn. In fact, the record irrefutably undercuts Carr's allegations. Each of the counterclaims against Kenny, Watzke and Moore has already been dismissed. Summary judgment should now enter on the last vestige of Carr's counterclaim against Reese and Varn.

## II.   STATEMENT OF FACTS

The facts relevant to the Individual Plaintiffs' motion for summary judgment are contained in the Memorandum of Law of Plaintiffs Iron Mountain and Iron Mountain Information Management, Inc. in Support of their Motion for Summary Judgment (the "Iron Mountain Memorandum"), and the declaration of Ira K. Gross (the "Gross Declaration" or "Gross Decl.") submitted therewith. The Individual Plaintiffs rely on and incorporate herein by reference the facts provided in the Iron Mountain Memorandum, as well as the Gross Declaration and the exhibits thereto.

## III.   ARGUMENT

### A.   Standard

"The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." DeNovellis v. Shalala, 124 F.3d 298, 305-06 (1st Cir. 1997) (citation omitted). The Individual Plaintiffs bear the initial burden of showing that there are no material facts genuinely in dispute and that they are entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). Having done so, Carr must "set forth specific facts showing that there is a genuine issue of material fact as to each issue upon which he would bear the ultimate burden of proof at trial." Id. at 306 (citations omitted); see also Vega v. Kodak Caribbean, Ltd., 3 F.3d 476, 479 (1st Cir. 1993) (factual disputes "must herald the existence of definite, competent evidence ... [o]ptimistic conjecture, unbridled speculation, or hopeful surmise will not suffice"). Carr may not avoid summary judgment by resting on "conclusory allegations, improbable inferences, and unsupported speculation." Smith v. Stratus Computer, Inc., 40 F.3d 11, 12 (1st Cir. 1994) (internal quotation marks omitted). Indeed, if Carr's evidence is merely "colorable" or is not "significantly probative," summary judgment is appropriate. DeNovellis, 124 F.3d at 306 (citations and quotations omitted).

### B.   Carr's Claim For Breach of Contract Against Reese Must be Dismissed Because There Is No Evidence That Carr Had a Contract With Reese[1]

Carr vaguely alleged that Reese made certain promises to him in an individual capacity (rather than on behalf of Iron Mountain). See Defendant's and Counter-Plaintiff's Second

---

[1] Massachusetts law applies to Carr's counterclaim for breach of contract. This Court applies the law of the state with the "most significant relationship to the transaction." Nile v. Nile, 432 Mass. 390, 401 (2000); Bergin v. Dartmouth Pharm., Inc., 326 F. Supp. 2d 179, 181 (D. Mass. 2004). All of the Individual Plaintiffs are residents of Massachusetts. The parties submitted extensive briefing at the pleadings stage directed at Carr's counterclaims, and cited extensively to the law of Massachusetts. Magistrate Judge Collings relied on Massachusetts law in his report and recommendation to dismiss the bulk of Carr's counterclaims.

Amended Counterclaim (the "SAC")[2] ¶¶ 18, 20 and 29. Magistrate Judge Collings previously recognized the feebleness of Carr's allegations against Reese individually, stating that Carr "barely alleged" the existence of a contract with Reese and that Carr's allegations were "unlikely." See March 13, 2006 Report and Recommendation of Magistrate Judge Collings (the "Report")[3] pp. 16-18.

As explained below, even if there were any enforceable contracts with Carr (which the Individual Plaintiffs vigorously deny), the record demonstrates unequivocally that Reese had *no* contract with Carr in his individual capacity.

   1.   **Carr's allegation that Reese "offered" to give him $5 million is not supported by the record, and Carr seeks no damages based on this alleged offer.**

Carr's first allegation against Reese is that Reese "offered $5 million to Carr to buy Pierce's share of Logisteq." SAC ¶ 18. Carr seeks no damages relating to this alleged offer. See Carr's Fourth Amended Initial Disclosures (the "Disclosures")[4] at p. 13-14. Even if Carr had been damaged, his claim could not possibly succeed against Reese, because Carr's own testimony disproves his allegation. See Deposition of Thomas Carr, taken February 28, 2007 and March 15, 2007 ("Carr Deposition" or "Carr Depo.")[5] p. 138 ("I don't think Mr. Reese is going to say here, Mr. Carr, here's $5 million"). Indeed, Carr's understanding of Reese's alleged offer was that a separate entity known as Schooner Capital (not Reese individually) would buy Pierce's share of Logisteq. See Carr Depo. pp. 136-37 ("[w]hat I understood by that is that Schooner Capital would buy Logisteq's 51 percent from Pierce…").

---

[2] The SAC is attached to the Gross Declaration as Exhibit B.

[3] The Report is attached to the Gross Declaration as Exhibit H.

[4] The Disclosures are attached to the Gross Declaration as Exhibit E.

[5] Relevant pages and exhibits from the Carr Deposition are attached to the Gross Declaration as Exhibit C.

Carr has also admitted that Reese's alleged offer was actually an offer to *loan* Carr the money, not simply pay Carr $5 million. See Carr's Supplemental Responses to Plaintiffs' First Set of Interrogatories ("Carr's Supp. Interrog. Resp.")[6] at Interrog. No. 7 (the alleged $5 million offer was a "*loan* to buy [Carr's] business back") (emphasis added). Loans, of course, must be repaid. On this record, no reasonable fact finder could conclude that Carr had an enforceable contract with Reese individually for the payment of $5 million.

2. **Reese's alleged "promise" that Iron Mountain would hire Carr as a transportation consultant and provide $25 million in courier business to Systrans is not enforceable against Reese individually.**

It is well established that a person making a contract for a disclosed principal is not himself liable for the breach of contract, and "does not become a party to the contract." Bratcher v. Moriarty, Donoghue & Leja, P.C., 54 Mass. App. Ct. 111, 116 (2002) (citations omitted).

Carr has alleged that Reese "promised that *Iron Mountain* would hire Carr as a transportation consultant and provide $25 million in courier business to Systrans, Inc." SAC ¶ 18 (emphasis added). It is clear from Carr's allegation itself that *Iron Mountain* was to perform under this alleged "contract," not Reese individually. See also Carr Depo. at p. 161 ("it was not a meeting where Richard Reese turned around and said '[b]y the way, here's $25 million, let's start, Tom'"). In any event, while Carr's testimony may perhaps (albeit vaguely and deficiently) support an inference that *Kenny* made these alleged statements,[7] there is *no* evidence that Reese made them. Carr's counterclaims against Kenny have already been dismissed. The counterclaim for breach of contract against Reese should likewise be dismissed.

---

[6] Carr's Supplemental Responses to Plaintiffs' First Set of Interrogatories are attached to the Gross Declaration as Exhibit I.

[7] See e.g., Carr Depo. p. 113 ("Kenny ... said ..., we would immediately offer you a consultant position..."); Carr Depo. p. 126 ("Mr. Kenny said... 'we will give you a consulting job at the same benefits and the same salary...'"); Carr Depo. p. 136 ("John Kenny had came in and said, listen, we have $25 million worth of courier work and that we would like for you to help us...").

### C. Carr's Claim For Breach of Contract Against Varn Must Be Dismissed Because Carr's Testimony Disproves His Claim

Massachusetts courts have long adhered to the principle that "an agreement to reach an agreement is a contradiction in terms and imposes no obligation on the parties thereto[.]" Rosenfield v. United States Trust Co., 290 Mass. 210, 217 (1935). "A promise made with an understood intention that it is not to be legally binding, but only expressive of a present intention, is not a contract." Kuzmeskus v. Pickup Motor Co., 330 Mass. 490, 493 (1953); Rhode Island Hosp. Trust Nat'l Bank v. Varadian, 419 Mass. 841, 850 (1995). Stated another way, "[e]xpectations and negotiations fall far short of a binding agreement." Phoenix Spring Beverage Co. v. Harvard Brewing Co., 312 Mass. 501, 506 (1942).

No contract between Carr and Varn could be found or inferred on this record. Carr *alleged* that, in September 2003, Varn "promised $2 million dollars for Carr to use to pay off certain debts [Carr] incurred during the preceding year or two." SAC ¶ 29. However, even accepting Carr's own testimony (as remarkable as it is) as true, Varn did *not* promise him $2 million, but only stated that he would "try" and "figure out" how to facilitate a deal between Carr and Iron Mountain:

> I'm going to talk to Garry Watzke, Tom, and I'm going to *figure out* a way how I can get you $2 million .... I'll talk to Art, I'll talk to Garry and *we'll try to work it out*.

Carr Depo. p. 201 (emphasis added). These statements, even if made, are too vague to create an enforceable contract. See McCarthy v. Kylberg, 282 F.3d 70, 73 (1st Cir. 2002) (the statement "you'll get a million dollars" is unenforceable and suggests "little more than a casual reassurance"); Armstrong v. Rohm & Haas Co., 349 F. Supp. 2d 71, 80-81 (D. Mass. 2004) (the statement "don't worry, we'll take care of you" is unenforceable as a matter of law); Buker v.

National Management Corp., 16 Mass. App. Ct. 36, 42 (1983) (oral promise to "work things out" is unenforceable).

Carr's friend Neebling, who was present when Varn allegedly made these statements, also testified that Varn did *not* promise to pay Carr $2 million. See Neebling Depo. p. 168-69 ("if you're going to ask me did [Varn] say, 'I promise to give you $2 million,' no …. The promise was [Varn] will go back to [Reese] and [Varn will] try to work something out …. I didn't hear the word 'I promise'").

Even if Varn did "promise" to pay Carr $2 million in September 2003, a promise belied by Carr's own testimony, such a promise would be unenforceable for lack of consideration. By that time, Carr had long ago provided his "consideration." See SAC ¶ 12 (the alleged consideration was that Carr would "assist and support Iron Mountain against Pierce"). Carr had already shared his "evidence" concerning Pierce's conduct, and had already testified on Iron Mountain's behalf in the Pierce Arbitration. Carr's "past consideration," even if proven, is decidedly insufficient to form the basis for an enforceable contract. Hodgkins v. New Eng. Tel. Co., 82 F.3d 1226, 1231 (1st Cir. 1992); Greater Boston Cable Corp. v. White Mountain Cable Constr. Corp., 414 Mass. 76, 80 (1992); Henry W. Savage, Inc. v. Friedberg, 322 Mass. 321, 323 (1948). Carr's counterclaim against Varn is devoid of any factual support in the record. It should be dismissed.

*[remainder of page intentionally left blank]*

## IV.    CONCLUSION

For the foregoing reasons, the Individual Plaintiffs respectfully request that the Court: (i) grant the Individual Plaintiffs' motion for summary judgment in its entirety; (ii) enter a declaration that none of the Individual Plaintiffs has any contractual or other legal obligation to Carr; and (iii) dismiss Carr's counterclaim for breach of contract against Reese and Varn.

Dated:  June 21, 2007

Respectfully submitted,

C. RICHARD REESE, JOHN F. KENNEY, JR., GARRY B. WATZKE, LARRY L. VARN AND CHARLES B. MOORE,

By their attorneys,

/s/ Ira K. Gross
Ira K. Gross (BBO #212720)
*igross@sandw.com*
Kevin M. Colmey (Admitted *Pro Hac Vice*)
*kcolmey@sandw.com*
SULLIVAN & WORCESTER LLP
One Post Office Square
Boston, Massachusetts 02109
(617) 338-2800

### Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on June 21, 2007.

/s/ Kevin M. Colmey