# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IRON MOUNTAIN INCORPORATED; IRON MOUNTAIN INFORMATION MANAGEMENT, INC.; C. RICHARD REESE; JOHN F. KENNY, JR.; GARRY B. WATZKE; LARRY L. VARN; and CHARLES G. MOORE, <br><br>    Plaintiffs and <br>    Counterclaim Defendants, <br><br>v. <br><br>THOMAS CARR, <br><br>    Defendant and <br>    Counterclaim-Plaintiff. | ) <br> ) <br> ) <br> ) <br> ) CIVIL ACTION <br> ) NO. 05 10890 RCL <br> ) |

## DEFENDANT'S STATEMENT OF DISPUTED MATERIAL FACTS

Pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1, Defendant Thomas Carr, by his attorneys, hereby submits this response to the Plaintiffs' statement of undisputed materials facts and his own statement of disputed material facts in support of his Consolidated Opposition to the Plaintiffs' Motions for Summary Judgment. Carr submits herewith and incorporates herein by reference the Declaration of Ilya Shapiro, Esq. and the Affidavit of James Neebling, and the exhibits annexed thereto.

First, Carr disputes, in whole or in part, 19 of the Plaintiffs' 20 "undisputed" material facts (all but the last), and responds to that list as follows:

1-2. Carr does not dispute that no written contracts exist between him and any of the Plaintiffs, nor that none of the offers, promises, or assurances the Plaintiffs made him were in writing. Carr disputes, however, that this absence of a writing implies an absence of an

agreement: Carr, sometimes through his attorney, Art Peslak, requested on several occasions that the oral contract be set down in writing, but the Plaintiffs declined to do so out of a stated (but false) fear that evidence of their contract with Carr would lessen the effect of Carr's testimony in the litigation against Pierce. *See* Deposition of Thomas Carr, taken February 28, 2007 and March 15, 2007, pp. 93, 127[1]; Deposition of Arthur Peslak, taken March 14, 2007, pp. 40, 60.[2]

      3-6.    Carr does not dispute that he was deposed in connection with his lawsuit against Pierce, that he testified at the arbitration of a lawsuit that Iron Mountain filed against Pierce, or that he affirmed his previous testimony (which speaks for itself) when deposed in this case. Carr disputes, however, that this testimony establishes that he admits to not having received or been offered anything by Iron Mountain in return for his services. In point of fact, Larry Varn coached Carr to answer in a way that was legally accurate but nevertheless misleading. For example, Varn instructed Carr that if he was asked "did Iron Mountain offer you a job in exchange for your assistance," Carr was to say "no" because he was offered a consulting position and not a job. *See* Declaration of Arthur Peslak, filed October 12, 2005, ¶¶ 14, 28[3]; Neebling Aff. ¶¶ 27-28.

      7.    Carr's deposition testimony speaks for itself, but Carr disputes the Plaintiffs' selective editing of that testimony, and the implications therefrom. Carr maintains, specifically, that Varn promised him $2 million in return for his services:

> So Larry [Varn] said to me, "Well, how much do you do need? How much would cover your liability?" And I said, "I'm out at least $2 million." And he said to me, whether he knows if he said it or not, because half the meetings we had, I don't know if he's a functional alcoholic or a drunk, but he was smashed that night and said, "I'll get you $2 million. I'm going to talk to Garry Watzke, Tom,

---

[1] Relevant pages and exhibits from the Carr Deposition are attached to the Shapiro Declaration as Exhibit A.
[2] Relevant pages and exhibits from the Peslak Deposition are attached to the Shapiro Declaration as Exhibit B.
[3] The Peslak Declaration is attached to the Shapiro Declaration as Exhibit C.

      and I'm going to figure out a way how I can get you $2 million if it's the last thing I do...."

Carr Depo p. 201; *see also id*. at p. 216 ("The $2 million is what Larry Varn had asked me, during the night at Gallagher's what would I need to help with my financial problems. And I had told him $2 million."); Declaration of James Neebling, filed October 12, 2005, ¶ 14 ("Varn also met separately with Carr and me on several occasions in which re reaffirmed that we would be compensated for our efforts in assisting with S&W's investigation on Pierce.").[4]

    8.    Carr does not dispute that Neebling was present at his September 2003 meeting with Varn, and Neebling's deposition testimony speaks for itself. Carr disputes, however, that Neebling's testimony establishes that no set monetary amount of compensation was ever promised Carr. *See*, *e.g.*, Carr Depo pp. 137-38, 160-61, 194-95.

    9-11.    Carr does not dispute that Reese agreed to advance $50,000 to Peslak to defray Carr's expenses, nor that Peslak received the promised $50,000, nor that Peslak's fees have been paid in full. Carr does dispute the implication that the Plaintiffs do not owe him anything relating to those fees because the Plaintiffs promised to pay *all* of Peslak's fees, and Carr ended up paying around $17,500 of that total. *See* Peslak Decl. ¶ 32; Peslak Depo p. 68.

    12.    Carr does not dispute that the Systrans Contract contained no promise as to how much courier business IMIM would provide to Systrans. Carr disputes, however, that this fact establishes that the Plaintiffs did not promise to supply business in the amount of $45 million of annual revenue to Systrans. *See, e.g.*, Carr Depo pp. 160-64; Deposition of James Neebling,

---

[4] The Neebling Declaration of 2005 is attached to the Neebling Affidavit as Exhibit A.

taken February 27 and March 14, 2007, pp. 98-99[5]; Defendant's Fourth Amended Initial Disclosures at 13.[6]

13. Carr disputes that he has no interest in Systrans. While he has never had any *equity* interest in Systrans, Carr invested at least $600,000 in Systrans and was entitled to a share of Systrans's profits. *See* Disclosures at 13; Carr Depo pp. 182, 239 ("Question: What was your relationship to [Systrans]? Answer: I was an investor."); Neebling Depo pp. 152-53; Neebling Aff. ¶ 41.

14. Carr does not dispute that the Plaintiffs promised to provide Systrans $25 and $45 million of annual revenue but does dispute that the promise of such business was limited to a period of five years. He uses the five years figure to more easily calculate damages. Disclosures at 13-14; Carr Depo pp. 160-61, 164-65; Peslak Depo p. 65; Neebling Depo pp. 98-99, 116; Deposition of Paul Schwartz, taken March 8, 2007, pp. 47.[7]

15. Carr disputes that Systrans "was a startup business with no history of profitability." Systrans LLC was indeed newly created to handle the business through which the Plaintiffs promised to compensate Carr for his services on their behalf. Systrans Freight Systems, Inc., meanwhile, which is the entity that signed the Systrans Contract and which is the Defendant in the companion case to this one, was an established provider of courier and transportation consulting services. *See* Neebling Depo pp. 11-15; Neebling Aff. ¶ 41.

16. Carr disputes that the Plaintiffs' offer of employment was for any period of time (or specific task) and therefore maintains that it was for an indefinite or permanent basis. *See* Carr Depo p. 113 ("And John Kenny immediately turned around and said that if [Pierce were to fire Carr], we [Iron Mountain] would immediately offer you [Carr] a consultant position at the

---

[5] Relevant pages and exhibits from the Neebling Deposition are attached to the Shapiro Declaration as Exhibit D.
[6] The Disclosures are attached to the Shapiro Declaration as Exhibit E.
[7] Relevant pages and exhibits from the Schwartz Deposition are attached to the Shapiro Declaration as Exhibit F.

same benefits and wage."); Carr Depo p. 126 ("Mr. Kenny said, 'Tom, if Mr. Pierce fires you, we will give you a consulting job at the same benefits and the same salary and we will continue to support you.'").

17. Carr's deposition testimony speaks for itself but Carr disputes that his testimony establishes that Kenny never promised Carr anything as an inducement for Carr to assist the Plaintiffs in their litigation against Pierce. *See* Carr Depo pp. 93-95, 113, 126, 160-61, 164, 231; Deposition of Judith Carr, taken March 8, 2007, pp. 25-27 ("Question: Did [Kenny] make any other promises to you? Answer: No, just his income, our benefits, the personal loans, the coffee company.").[8]

18. Carr does not dispute that he seeks no damages relating to the $5 million loan the Plaintiffs promised him. He disputes, however, that no aspect of his damages calculation relates to the assurances the Plaintiffs (specifically Varn) made to his creditor Paul Schwartz. For example, part of the $600,000 Carr invested in Systrans was a loan from Schwartz, as was part of the $2 million personal debt the Plaintiffs promised to allow Carr to repay. *See* Carr Depo pp. 192-93, 204-08, 216 ("The $2 million was that I had lost my company, I had lost the debt due to Mr. Schwartz, the debt from Commerce Bank."); Schwartz Depo pp. 27 ("I don't want to spend more money, loan more money without an assurance that this is going to happen. So [Varn] assured me that they were going to generate income in the tens of millions that eventually would be … in the neighborhood of … 40, 45 million per year."). Varn denies, under oath, that such a conversation took place:

> Q:  There is a version of a conversation between you and Mr. Schwartz which describes the conversation as one during which you advised Mr. Schwartz that Iron Mountain is going to provide certain business opportunities and income to Mr. Carr, and that therefore Mr. Carr's creditworthiness, for want of a better term, would be on

---

[8] Relevant pages and exhibits from the Judith Carr Deposition are attached to the Shapiro Declaration as Exhibit G.

>      the rise. …. Is it your testimony that no conversation resembling
>      the description that I've just given you occurred between you and
>      Mr. Schwartz?
>
> A:   That's correct.

Deposition of Larry Varn, taken September 19, 2006, pp. 55-56.[9]

19. Carr does not dispute that the $5 million the Plaintiffs promised him was to be a loan, but disputes that this item of the Plaintiffs' list is a material fact, regardless of the extent to which the parties agree on its details.

20. Carr does not dispute that the consideration he provided the Plaintiffs was a variety of services supporting their lawsuit against Pierce, nor that he fully performed these services and thus provided this consideration.

In addition to the above disagreements with the Plaintiffs' understanding of the facts of this case, Carr also presents evidence of the following material facts that the Plaintiffs dispute:

21. Plaintiff Charles Moore promised Carr and Neebling that funds would be paid to Carr and that Systrans would receive significant contracts in exchange for their continued assistance in the Pierce litigation. *See* Neebling Declaration of 2005 at ¶ 13.

22. The Plaintiffs encouraged Carr to file his lawsuit against Pierce, going so far as to work with Peslak on the complaint and send it to Carr for signing while he was on a family vacation in California in April 2002. Also while in California, Kenny made promises to Mrs. Carr to obtain her approval for Carr to sign the complaint. *See* Judith Carr Depo pp. 23-29, 39-40; Carr Depo pp. 91-95, 223-26; Peslak Depo pp. 16-21.

23. The Plaintiffs continued to take an active role in the Carr-Pierce litigation; Varn acted as co-counsel to Peslak, "from reviewing pleadings, to preparing Carr for his deposition testimony to weighing in on settlement of the case." *See* Peslak Decl. at ¶ 13.

---

[9] Relevant pages and exhibits from the Larry Varn Deposition are attached to the Shapiro Declaration as Exhibit H.

24.     Varn reiterated to Schwartz the same promises he made Carr.  *See* Schwartz Depo pp. 26-31, 72-73, 76.

25.     At one point, after Carr's repeated requests that the Plaintiffs fulfill their part of the agreement to compensate Carr for his services, the Plaintiffs began saying that they would do so but not until after the conclusion of the Pierce lawsuit.  *See* Neebling Aff. ¶ 29; Peslak Decl at ¶ 25; Carr Depo pp. 9, 240 ("[Moore relayed Reese's instruction that] as far as any cash being laid out to me, I would have to wait until after the arbitration.  And I was somewhat satisfied with that."); Peslak Depo pp. 90-91 ("[Watzke relayed Reese's statement that] once the arbitration is over, that Richard would sit down with Tom and I and discuss how Iron Mountain would fulfill its obligations to Tom.").

26.     Carr has presented the only evidence in this case that does not come from an interested party, namely that of Peslak, whose legal fees have been paid and who has "no interest, monetary or otherwise, at stake in this case."  Peslak Decl at ¶ 2.  Peslak testified to the existence of an agreement between Carr and the Plaintiffs:

> Q:   When you finished with the conversations [with Kenny and Watzke] on April 2nd [2002], did you understand that there was an agreement between Mr. Carr and Iron Mountain?
>
> A:   Yes.
>
> Q:   What were the terms?
>
> A:   I understood that they were going to fund Tommy's legal fees in the case against Peter and that they were going to find him a job at the same compensation.
>
> Q:   And what was Mr. Carr going to do in return?
>
> …
>
> A:   He was going to cooperate with Larry Varn in their case against Peter Pierce.

Peslak Depo p. 60.

                                      Respectfully submitted,

July 10, 2007

                                      /s/  Read K. McCaffrey
Read K. McCaffrey (admitted *pro hac vice*)
Ilya Shapiro (admitted *pro hac vice*)
PATTON BOGGS, LLP
2550 M Street, NW
Washington, DC 20005
(202) 457-6000
rmccaffrey@pattonboggs.com
ishapiro@pattonboggs.com

Certificate of Service

I certify that on this 10th day of July, 2007, I caused to be served on the counsel identified by e-mail, first-class mail, and through the ECF system this **Defendant's Statement of Disputed Material Facts**.

        Ira K. Gross (BO #12720)
        Kevin M. Colmey (admitted *pro hac vice*)
        SULLIVAN & WORCESTER LLP
        One Post Office Square
        Boston, MA 02109
        (617) 338-2800


        /s/ Ilya Shapiro
        Ilya Shapiro

4896286