UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

| | | |
|---|---|---|
| IRON MOUNTAIN INCORPORATED; IRON MOUNTAIN INFORMATION MANAGEMENT, INC.; C. RICHARD REESE; JOHN F. KENNY, JR.; GARRY B. WATZKE; LARRY L. VARN; and CHARLES G. MOORE, | ) ) ) ) ) ) ) | Civil Action No. 05 10890 RCL |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| THOMAS CARR, | ) ) | |
| Defendants. | ) ) | |

_____

| | | |
|---|---|---|
| IRON MOUNTAIN INFORMATION MANAGEMENT, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 05 10999 RCL |
| SYSTRANS FREIGHT SYSTEMS, INC., | ) ) | |
| Defendant. | ) ) | |

_____

**PLAINTIFFS' REPLY MEMORANDUM IN FURTHER SUPPORT
OF THEIR MOTION FOR SUMMARY JUDGMENT**

**LEAVE TO FILE GRANTED ON AUGUST 3, 2007**

Plaintiffs and Counterclaim-Defendants Iron Mountain Incorporated, Iron Mountain

Information Management, Inc., C. Richard Reese, John F. Kenny, Jr., Garry B. Watzke, Larry L.

Varn and Charles G. Moore (collectively, "Plaintiffs"), by their attorneys, Sullivan & Worcester

LLP, respectfully submit this reply memorandum in further support of their motion for summary

judgment against Defendant and Counterclaim-Plaintiff Thomas Carr ("Carr").

## I.     The Statute Of Frauds Has Not Been Waived And Bars Carr's Claims

Carr argues incorrectly that Plaintiffs did not "even mention the Statute of Frauds obliquely during motion practice" and "failed to do so until after the close of discovery." Carr Mem.[1] at 10. In reality, Plaintiffs raised the Statute of Frauds almost *two years ago*, and the issue was briefed by *both* parties in the context of Plaintiffs' motion to dismiss (see docket entries Nos. 44 and 46, respectively) and was discussed at length in Magistrate Judge Collings' Report. See Report (Gross. Decl. Exh. H) at pp. 14-15. Thus, it has not been waived. See Doherty v. Doherty Ins. Agency, Inc., 878 F.2d 546, 552 n.4 (1st Cir. 1989) ("[w]e do not agree . . . that Insurance waived this issue by failing to plead the statute of frauds as an affirmative defense …, [because] … Insurance raised the statute of frauds in a motion to dismiss").[2]

Nor are Carr's claims saved by the doctrine of estoppel. Carr Mem. at 10-11. It is well settled that an alleged oral promise otherwise barred under the Statute of Frauds "cannot be made effectual by estoppel, merely because it has been acted upon by the promisee and not performed by the promisor." Brightman v. Hicks, 108 Mass. 246, 248 (Mass. 1871); see also Meng v. Trustees of Boston Univ., 44 Mass. App. Ct. 650, 653 (1998); Harold L. Baker Co. v. Meledones, 352 Mass. 485, 487 (Mass. 1967); Beauregard v. Miles, 2007 Mass. App. Div. LEXIS 2, at *7-8 (Mass. Jan. 29, 2007). In addition, estoppel "cannot correctly be applied" unless it is proven that, at the time of the alleged promise, the promissor "lacked a present intention" to perform. Beauregard, 2007 Mass. App. Div. LEXIS 2, at *7 (emphasis added). This Court has already held that Carr failed even to allege (let alone prove) that "plaintiffs knew

---

[1] References to "Carr Mem." refer to the Defendant's Consolidated Memorandum of Law in Opposition to Plaintiffs' Motions for Summary Judgment, filed by Carr on July 10, 2007.

[2] See also Dresser Indus., Inc. v. Pyrrhus AG, 936 F.2d 921, 928 (7th Cir. 1991) (Statute of Frauds defense not waived because it was asserted in a motion on the pleadings and the plaintiff had an opportunity to respond).

that their statements were false *when made.*"  See Report at 26 (emphasis added).  The Statute of

Frauds bars Carr's claims.

## II.    Carr's Allegations of "Coaching" Do Not Create A Material Factual Dispute

To "explain" his repeated admissions, Carr now accuses Varn of coaching him to make

statements that were "completely misleading."  Carr Mem. at 8-9.  Although Plaintiffs certainly

deny this scurrilous accusation, it is not material to this motion.

First, in his deposition in *this* case, Carr affirmed his prior sworn testimony as both

*accurate* and *truthful*, not "completely misleading," as he now claims.  See Carr Depo. pp. 18,

212-13.  Second, Carr was represented by his *own* counsel when he testified, and Varn was not

even present when Carr testified under oath in the Carr Litigation that Iron Mountain "*did not*

*offer me any perks, any money, anything … [t]hey just asked me to speak the truth*…."  See Carr

Depo. Exhibit 1 at p. 183 (emphasis added).  Third and finally, even assuming that Varn did tell

Carr to distinguish between a "job" and a "consulting position" (Carr Mem. at 9), Carr also

admitted that "there was *no promises* given," not "*any* perks," "*any* money," "*anything*," and

affirmed that testimony in this case.  Carr Depo. Exhibit 5 at pp. 945-46 (emphasis added).  It is

inconceivable how such straightforward admissions could be, as Carr now claims, "technically

accurate" yet "completely misleading."  Carr Mem. at 9.

Carr's abject lack of credibility aside, this Court need not and should not countenance his

transparent attempt to avoid summary judgment by disavowing his own repeated admissions.[3]

Michelson v. Digital Fin. Servs., 167 F.3d 715, 725 (1st Cir. 1999); Stefanik v. Friendly Ice

Cream Corp., 183 F.R.D. 52, 53 (D. Mass. 1998).

---

[3] For the same reason, Carr's attempt to sidestep his affidavit and sworn testimony in this case that he has "no interest in Systrans, ownership *or otherwise*" (see Carr Depo. pp. 254-55 and Exhibit 11) (emphasis added), should be rejected.  Carr Mem. at 14.  Whether or not Carr drafted his own affidavit, he signed it while represented by his *own* counsel, who is also his counsel of record in *this* case, and has testified in *this* case that his affidavit is accurate.

**III.    The Neebling Affidavit Does Not Create A Single Material Factual Dispute**

Carr, having apparently concluded that he has said enough, attempts to create a material factual dispute through an affidavit of his friend, James Neebling.  Neebling's statements might have been loosely relevant to Systrans's claims against Plaintiffs, but those claims have already been dismissed by this Court.[4]  In any event, while Plaintiffs certainly dispute most of Neebling's averments, they do not create a single *material* factual dispute.[5]

With respect to the alleged promise to provide revenue to Systrans,  Neebling claims that he heard Kenny and Reese discussing "how much" money Iron Mountain spent on courier services and was told of an "opportunity for Carr and Systrans to service this business." Neebling Aff. ¶ 9.  There is no dispute that Systrans was given that opportunity – the parties entered into a fully integrated written contract for precisely those services.  See Neebling Depo. at Exhibit 2 (Gross Decl. Exh. G).  Whether any promises were made *to Carr*, however, is a separate issue altogether, and Neebling's generalized statements about "promises" are refined to the point of nonexistence by his and Carr's specific testimony on this very issue.

---

[4] For example, Neebling states that he met with certain Iron Mountain representatives over 120 times (Neebling Aff. ¶ 14) and that they "told me on various occasions that Systrans would handle Iron Mountain's entire nationwide outside courier business."  Neebling Aff. ¶ 11.  Even if true, such statements have no bearing on whether any enforceable "promises" were made to Carr – the only alleged "promises" before this Court.

[5] In many instances, Neebling's affidavit makes no sense at all.  For example, Neebling states that Carr was "coached" into admitting under oath that Iron Mountain never made any promises to him, as Varn supposedly stated that "the promises technically *could* come from any number of Iron Mountain's affiliates…."  Neebling Aff. ¶ 27 (emphasis added).  As Carr has claimed, however, his alleged oral contracts with Plaintiffs were entered into in March and April of 2002 (Carr Depo. pp. 163-64), long *before* Carr gave his supposedly "coached" testimony in May 2002 and January 2003.  Consequently, if Neebling's musings are to be credited, the Court would have to conclude that, months after the alleged "promises" were made, the parties had still not agreed upon who (if anyone) would provide anything (or nothing) to Carr.  To hold that an enforceable contract existed in March or April 2002, as Carr claims, would turn the "meeting of the minds" requirement on its head.

As for the testimony offered by Judy Carr, Paul Schwartz and Art Peslak, none of these persons was present when the alleged "promises" were supposedly made to Carr.  Carr may have regaled these individuals with stories about what Iron Mountain had allegedly "promised" him, but the specific testimony of Carr and Neebling, who *were* present when the alleged "promises" were made, speaks for itself and demonstrates unequivocally that no enforceable contract was ever made.

4

Finally, with respect to the alleged $2 million promise made in September 2003, Neebling states that "Varn told us that Watzke would work out *some kind of arrangement* to send Systrans the $2 million Iron Mountain had earlier promised Carr, and I would pass that money to Carr." Neebling Aff. ¶ 31 (emphasis added). Even if Varn made such a statement (which Plaintiffs vigorously deny), it simply does not create an enforceable contact.[6] See, e.g., Rhode Island Hosp. Trust Nat'l Bank v. Varadian, 419 Mass. 841, 850 (Mass. 1995); Mauldin v. Shaffer, 1977 U.S. Dist. LEXIS 13585, at *30 (M.D.N.C. Oct. 7, 1977) ("[i]f a person promises to *arrange* for the sale of a certain item, he has done little more than promise to try to do it. An attempt to form a contract is not a contract") (emphasis added).

For the foregoing reasons, and the reasons cited in Plaintiffs' previous memoranda and moving papers, Plaintiffs' motion for summary judgment should be granted.

Dated:  August 3, 2007

Respectfully submitted,

**IRON MOUNTAIN INCORPORATED;
IRON MOUNTAIN INFORMATION
MANAGEMENT, INC.; C. RICHARD
REESE; JOHN F. KENNY, JR.; GARRY
B. WATZKE; LARRY L. VARN; AND
CHARLES G. MOORE**

By their attorneys,

/s/ Ira K. Gross
Ira K. Gross (BBO# 212720)
*igross@sandw.com*
Kevin Colmey (Admitted *Pro Hac Vice*)
*kcolmey@sandw.com*
SULLIVAN & WORCESTER LLP
One Post Office Square
Boston, Massachusetts  02109
(617) 338-2800

---

[6] Notably, in his opposition papers, Carr fails to address many of the other reasons that his claim for breach of contract is defective, including the fact that he provided no consideration in exchange for the alleged $2 million promise. See Corporate Plaintiffs' Mem., p.12 n.17.

**<u>Certificate of Service</u>**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on August 3, 2007.

/s/ Kevin M. Colmey