# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IRON MOUNTAIN INCORPORATED, et al. </br></br>Plaintiffs and, </br>Counter-Defendants, </br></br>vs. </br></br>THOMAS CARR, </br></br>Defendant and </br>Counter-Plaintiff. | ) ) ) ) ) ) ) ) ) ) ) ) ) </br></br> Civil Action No. 05-10890-RCL |
| IRON MOUNTAIN INFORMATION MANAGEMENT, INC., </br></br>Plaintiff, </br></br>vs. </br></br>SYSTRANS FREIGHT SYSTEMS, INC., </br></br>Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) </br></br> Civil Action No. 05-10999-RCL </br>(Consolidated) |

**DEFENDANT THOMAS CARR'S MEMORANDUM IN OPPOSITION OF
PLAINTIFFS' MOTION IN LIMINE TO PRECLUDE EVIDENCE**

Defendant/Counterclaim-Plaintiff Thomas Carr ("Carr"), through counsel, respectfully opposes Plaintiffs' Motion in Limine to Preclude Evidence of the Alleged Promises on Which Plaintiffs have been Granted Summary Judgment and hereby submits this Memorandum in Opposition pursuant to this Court's request during the Pretrial Conference held on April 14, 2008. Carr states as follows:

## PRELIMINARY STATEMENT

Plaintiffs incorrectly presume that the partial summary judgment granted by this Court with respect to the individual Plaintiffs in this matter concerning the promise of employment and the promise of $25 to 45 in revenues should preclude any evidence relating to such promises during the trial of the remaining two promises. Plaintiffs' reasoning is illogical and otherwise flawed. Although the Court granted partial summary judgment, evidence of the various promises remains admissible. Iron Mountain, a corporate entity with annual earnings of nearly $3 billion, wrongfully used its financial clout and legal wherewithal to entice Carr into assisting Iron Mountain in its litigation against J. Peter Pierce ("Pierce"). Its senior officials, including Richard Reese ("Reese"), Chairman and CEO, John F. Kenny ("Kenny"), CFO, Garry B. Watzke ("Watzke"), Senior Vice President and General Counsel, and Larry L. Varn ("Varn"), counsel to Iron Mountain, made numerous promises to "take care of" Carr through employment, corporate earnings, and monetary payments. The very idea of there having been multiple meetings between a small time trucker from New Jersey and the top management of a Boston billion dollar corporations – and the ensuing testimony of Varn that the meetings were purely social is simply ridiculously incredible. Knowing their refusal to reduce their promises in writing might expose them to future legal claims, Iron Mountain executives continued to promise but refused to sign a contract. They have succeeded in their arguments, solely as a matter of law, that the promise for employment was subject to the statute of frauds and the promise of future revenues also required a writing as well as lacked sufficient terms to constitute an enforceable contract. Their shrewd tactics, however, do not render the evidence of such promises irrelevant or inadmissible.

Carr therefore requests that the Court deny Plaintiffs' Motion to the extent it would preclude relevant evidence, such as that which we aver will show Plaintiffs' pattern of making

promises to Carr to induce him to assist in their lawsuit against Pierce or Plaintiffs' general promises to "take care of" Carr, which later formed the basis for the promise of $2 million. Also, evidence of empty promises denied goes directly to the issue of credibility.

## ARGUMENT

### I. Plaintiffs Erroneously Describe the Ruling on Partial Summary Judgment

Plaintiffs' Motion identifies seven promises and declares that the partial summary judgment addressed all but two promises: the promise of $2 million and the promise to pay Carr's legal fees in connection with the Pierce litigation. (Pl.'s Mot. ¶ 3, 6). This is very misleading and otherwise simply not an accurate representation of what occurred. Judge Lindsay granted partial summary judgment on what boiled down to be four promises, with several other promises being part and parcel of the four. As counsel for Plaintiffs stated during the February 4, 2008 hearing, "I think we're down to the four [promises] that I enumerated." (Hearing Tr. 17:23-24). Those four promises were (1) a promise of employment to Carr, (2) a promise of annual revenues between $25 to 45 million for Systrans, (3) a promise of $2 million to Carr in consideration for his assistance in the Pierce litigation, and (4) a promise to pay Carr's legal fees in the Pierce litigation. As counsel for Plaintiffs stated himself, the other promises, including general promises to take care of Carr, to loan Carr $5 million, and to guarantee a loan to Carr by Paul Schwartz, were not independent promises but rather integrated with the other promises. (Hearing Tr. 17:4-9, 20-22).

Such evidence is relevant for a variety of reasons as discussed below. The only evidence that might possibly be precluded in light of partial summary judgment would be evidence introduced solely to prove the legal enforceability of the promises of employment or annual

3

revenues. The dependent promises were not the subject of the partial summary judgment and evidence of such promises should not be precluded. Additionally, evidence of the promises of employment or annual revenues should not be precluded where it is relevant for purposes other than to show the promises are legally enforceable. Fed. R. Evid. 402, 404, 406, & 608.

## II.     General Promises are Relevant To Prove $2 Million Promise

During the Hearing on summary judgment, Judge Lindsay stated on several occasions that a fact finder could understand that the "$2 million represents the kind of fulfillment – a specific and substantive fulfillment of the, 'I'll take care of you [promises].'" (Hearing Tr. 24:2-6; *see also* Hearing Tr. 22:12 - 24:14, 35:20 - 36:7). The promises that Iron Mountain repeatedly made to Carr formed the basis for the final promise of $2 million in fulfillment of the general promises. Therefore, no evidence relevant to proving general promises to Carr should be precluded because it tends to show the basis for the $2 million promise. Fed. R. Evid. 402.

## III.    Promise of Employment is Relevant to Prove $2 Million Promise

Likewise, the promise to employ Carr is relevant to prove the $2 million promise. The Court granted summary in favor of the Plaintiffs regarding the promise of employment on the basis of the statue of frauds. (Hearing Tr. 41:7 - 48:22). It does not follow that the promise did not exist. The promise is merely unenforceable. What the promise of employment does show, as do the general promises as discussed above, is that the Plaintiffs made promises to Carr that later boiled down to a promise for $2 million in compensation for his cooperation in the Pierce matter. Fed. R. Evid. 402. In addition, the promise of employment is yet another piece of evidence showing Plaintiffs' pattern of making empty promises to Carr, as discussed below.

4

Fed. R. Evid. 402, 404, & 406. Therefore, Carr requests that evidence of the promise of employment not be precluded to the extent it tends to prove the $2 million promise.

### IV.     The Evidence is Relevant to Show Plaintiffs' Pattern of Promises and Credibility

The general promises made to Carr are relevant to show Plaintiffs' pattern of making promises. Fed. R. Evid. 406. For instance, to encourage Carr to file suit against Pierce, John Kenny called Carr's wife, Judith Carr, promising that if Carr assisted with the lawsuit, nothing in their lives would financially change and that they would be taken care of. Top executives met with Carr on a regular basis and constantly reassured him that Iron Mountain would take care of him. Despite requests by Carr to put these promises in writing, the Plaintiffs reassured Carr that he would be compensated. The Plaintiffs were attempting revenge against Pierce for his activities competing with Iron Mountain, and they used Carr's knowledge of and relationship with Pierce in their efforts. The Plaintiffs knew full well that documents in writing could have harmed their efforts (which were nonetheless unsuccessful) against Pierce. When Plaintiffs' efforts against Pierce failed, Plaintiffs then recanted their promises to Carr, despite the fact that Carr had fully performed and Plaintiffs had received the full benefit of the bargain.

In addition, the promise of employment is relevant for purposes of showing Larry Varn's unscrupulous tactics in coaching Carr for his testimony in the Pierce litigation. This is relevant to explain Carr's prior testimony in the Pierce litigation. It also challenges the credibility of Varn as a witness due to his willingness to use linguistic trickery before a tribunal. Fed. R. Evid. 404 & 608.

Plaintiffs time and time again made promises to Carr that Iron Mountain would be there to catch him if he fell financially. They knew that a legal challenge to their promises would

5

prove difficult if the promises remained verbal, and while technically the claims were dismissed, the evidence is relevant in showing Plaintiffs' underlying character. Fed. R. Evid. 406. The number of meetings between Carr and Iron Mountain evidences the parties' relationship and a pattern that Iron Mountain developed of making promises to Carr. Fed. R. Evid. 406. Therefore, no evidence tending to show this pattern of promises should be precluded.

Finally, as a further example, Carr through counsel will introduce evidence from a witness who was called by Larry Varn and to whom Varn represented that because Iron Mountain was promising Carr's friend James Neebling and Systrans tens of millions of dollars in business that it was okay to continue to loan Carr money – he was going to be good for it. The facts related to the promise of revenues to Systrans has resulted in summary judgment in favor of the promisor – but Varn denies the conversation ever took place. In our opinion, Varn is not telling the truth, hence the evidence is directly relevant and admissible to the issue of the Varn's credibility. Varn, who will testify in these proceedings, persists in wanting to put his credibility to the test, and we should not disappoint him.

## CONCLUSION

For the foregoing reasons, Carr respectfully requests that this Court deny the Plaintiffs' Motion to Preclude Evidence of the Alleged Promises on Which Plaintiffs have been Granted Summary Judgment. Evidence regarding the promises will not be offered to prove the enforceability of the promises – obviously now moot – but rather to prove a pattern of broken promises and an impact on credibility of the Plaintiffs' chief witnesses.

Dated April 18, 2008

Respectfully submitted,


/s/ *Read K. McCaffrey*
Read K. McCaffrey (pro hac vice)
rmccaffrey@pattonboggs.com
Patton Boggs LLP
2550 M Street, NW
Washington, DC  20037
Telephone: (202) 457-6000

Counsel for Defendant and
Counterclaim-Plaintiff Thomas Carr

and

Counsel for Defendant Systrans Freight
Systems, Inc.

## Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on April 18, 2008.

/s/ *Read K. McCaffrey*_____